1  XAVIER BECERRA
   Attorney General of California
2  ANTHONY R. HAKL
   Acting Supervising Deputy Attorney General
3  JOHN D. ECHEVERRIA
   Deputy Attorney General
4  State Bar No. 268843
   PETER H. CHANG
5  Deputy Attorney General
   State Bar No. 241467
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5939
    Fax:  (415) 703-1234
8   E-mail:  Peter.Chang@doj.ca.gov
   *Attorneys for Defendant Xavier Becerra*

9

10          IN THE UNITED STATES DISTRICT COURT

11        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12                  SOUTHERN DIVISION

13

| | |
|---|---|
| 14<br><br>**STEVEN RUPP; STEVEN DEMBER; CHERYL JOHNSON; MICHAEL JONES; CHRISTOPHER SEIFERT; ALFONSO VALENCIA; TROY WILLIS; and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of the State of California; and DOES 1-10,**<br><br>Defendants. | 8:17-cv-00746-JLS-JDE<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:          December 15, 2017<br>Time:          2:30 p.m.<br>Courtroom:  10A<br>Judge:         The Honorable Josephine L. Staton<br>Trial Date:  N/A<br>Action Filed:      April 24, 2017 |

28

---

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

    I.    California's Prohibition of Assault Weapons .................................... 2

    II.    Registration of Assault Weapons ....................................................... 3

    III.    Plaintiffs' Allegations Relevant to Their Motion .......................... 4

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ....................................................................................................... 5

    I.    Plaintiffs Lack Standing to Assert Their Challenge to the Registration Requirements and the Issue Is Not Ripe for Judicial Review ................................................................................ 5

        A.    Plaintiffs' Claim of Injury Is Conjectural; They Have Suffered No "Actual" Injury in Fact and Are Unlikely to Suffer "Imminent" Injury ................................................ 6

        B.    Any Alleged Injury Is Not Fairly Traceable to the Date and Source Registration Requirement ..................................... 8

    II.    Plaintiffs Are Not Likely to Succeed on the Merits ........................... 9

        A.    The Registration Requirements Do Not Violate the Due Process Clause Because They Are Rationally Related to the Legislature's Public Safety Objectives ................................. 9

        B.    The Registration Requirements Do Not Violate the Takings Clause ...................................................................... 11

            1.    The AWCA Does Not Effect a Physical Taking Requiring Compensation ................................................. 13

            2.    Prohibition on Possession of Dangerous Property Under the State's Police Power Is Not a Physical Taking ........................................................................... 14

            3.    Injunctive Relief Is Inappropriate Because the Takings Clause Does Not Limit California's Power to Regulate Assault Weapons ................................... 15

        C.    The Registration Requirements Do Not Violate the Second Amendment ................................................................. 16

            1.    The Second Amendment Framework ............................. 16

            1.    Even If the AWCA Burdens the Second Amendment, It Satisfies Intermediate Scrutiny ............. 17

                a.    Intermediate Scrutiny Is the Appropriate Standard of Scrutiny in this Case ....................... 19

                b.    The AWCA and the Registration Requirements Satisfy Intermediate Scrutiny ....... 20

    III.    Plaintiffs Are Not Likely to Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief ......................................... 22

i

# TABLE OF CONTENTS
(continued)

**Page**

IV.    In the Absence of Any Constitutional Violation, Plaintiffs Cannot Meet Their Burden to Demonstrate That the Balance of Equities and the Public Interest Tip in Their Favor ...........................23

CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

**Page**

CASES

*Akins v. United States*
    82 Fed. Cl. 619 (2008) .............................................................. 14, 15

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011)......................................................4, 9

*Am.-Arab Anti-Discrimination Comm. v. Thornburgh*
    970 F.2d 501 (9th Cir. 1992) .........................................................9

*Bauer v. Becerra*
    858 F.3d 1216 (9th Cir. 2017)......................................................19

*Chevron USA, Inc. v. Cayetano*
    224 F.3d 1030 (9th Cir. 2000)................................................. 13, 14

*Clapper v. Amnesty Int'l. USA*
    568 U.S. 398 (2013)........................................................................8

*District of Columbia v. Heller*
    554 U.S. 570 (2008)...........................................................3, 17, 19

*Eastern Enterprises v. Apfel*
    524 U.S. 498 (1998).....................................................................11

*Everard's Breweries v. Day*
    265 U.S. 545 (1924).....................................................................14

*Fed. Trade Comm'n v. Affordable Media, LLC*
    179 F.3d 1228 (9th Cir. 1999)......................................................24

*Fesjian v. Jefferson*
    399 A.2d 861 (D.C. Ct. App. 1979) .............................................15

*First English Evangelical Lutheran Church of Glendale v. County of
    Los Angeles*
    482 U.S. 304 (1987).....................................................................15

*Friedman v. City of Highland Park*
    784 F.3d 406 (7th Cir. 2015)................................................. 16, 20

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
  528 U.S. 167 (2000).................................................................................5

*Fyock v. Sunnyvale*
  779 F.3d 991 (9th Cir. 2015)...........................................................*passim*

*Goldie's Bookstore, Inc. v. Superior Ct.*
  739 F.2d 466 (9th Cir. 1984)........................................................................23

*Graham v. Connor*
  490 U.S. 386 (1989)........................................................................11

*Gun South, Inc. v. Brady*
  877 F.2d 858 (11th Cir. 1989)........................................................................15

*Hein v. Freedom From Religion Found., Inc.*
  551 U.S. 587 (2007)........................................................................5

*Heller v. District of Columbia*
  670 F.3d 1244 (D.C. Cir. 2011) ..............................................................16, 20

*Hufford v. McEnaney*
  249 F.3d 1142 (9th Cir. 2001)........................................................................11

*Jackson v. City & Cty. of San Francisco*
  746 F.3d 953 (9th Cir. 2014)..............................................................19, 20

*Kaiser Dev. Co. v. City and County of Honolulu*
  913 F.2d 573 (9th Cir. 1990)........................................................................14

*Kelo v. City of New London*
  545 U.S. 469 (2005)..............................................................13, 14

*Kolbe v. Hogan*
  849 F.3d 114 (4th Cir. 2017)..............................................16, 17, 20, 21

*Levald, Inc. v. City of Palm Desert*
  998 F.2d 680 (1993)........................................................................9

*Lingle v. Chevron U.S.A., Inc.*
  544 U.S. 528 (2005)...........................................................*passim*

iv

1

## <u>TABLE OF AUTHORITIES</u>
**(continued)**

2

<u>Page</u>

3   *Lujan v. Defenders of Wildlife*

4      504 U.S. 555 (1992)...............................................................5, 8

5   *Maryland v. King*

6      133 S. Ct. 1 (2012)......................................................................23

7   *MHC Fin. Ltd. P'ship v. City of San Rafael*
       714 F.3d 1118 (9th Cir. 2013)...................................................10

8

9   *Mont. Envtl. Information Ctr. v. Stone-Manning*
       766 F.3d 1184 (9th Cir. 2014).................................................5, 7

10

11  *Mugler v. Kansas*
       123 U.S. 623 (1887)...................................................................14

12

13  *N.Y.S. Rifle & Pistol Ass'n v. Cuomo*
       804 F.3d 242 (2d Cir. 2015)................................................16, 20

14  *Nunez v. City of Los Angeles*

15     147 F.3d 867 (9th Cir. 1998)......................................................11

16  *Penn Central Transp. Co. v. City of New York*

17     438 U.S. 104 (1978)...................................................................12

18  *Ruckelshaus v. Monsanto Co.*

19     467 U.S. 986 (1984)...................................................................23

20  *Silveira v. Lockyer*
       312 F.3d 1052 (9th Cir. 2002).............................................2, 3, 12

21

22  *Silvester v. Harris*
       843 F.3d 816 (9th Cir. 2016)......................................16, 17, 19, 20

23

24  *Thomas v. Anchorage Equal Rights Comm'n*
       220 F.3d 1134 (9th Cir. 2000).................................................5, 9

25  *Tracy Rifle & Pistol LLC v. Harris*

26     118 F. Supp. 3d 1182 (E.D. Cal. 2015) ......................................23

27  *Turner Broad. Sys., Inc. v. FCC*

28     520 U.S. 180 (1997)...................................................................20

v

# TABLE OF AUTHORITIES
### (continued)

**Page**

*United States v. Chovan*
735 F.3d 1127 (9th Cir. 2013)........................................................20

*Wash. Legal Foundation v. Legal Found. of Wash.*
271 F.3d 835 (9th Cir. 2001).........................................................15

*Winter v. Natural Res. Def. Council, Inc.*
555 U.S. 7 (2008)........................................................................4, 23

**STATUTES**

California Code of Regulations Title 11
§ 5478.................................................................................12, 13

California Penal Code
§ 27545.......................................................................................6
§ 28215.......................................................................................7
§ 30505.......................................................................................1
§ 30510.......................................................................................3
§ 30515.......................................................................................3
§ 30605.................................................................................12, 13
§ 30680.................................................................................12, 13
§ 30800......................................................................................14
§ 30900.................................................................................*passim*
§ 30915.................................................................................12, 13
§ 31055.....................................................................................12

**INTRODUCTION**

In response to mass shootings and other forms of escalating gun violence, the Legislature enacted the Roberti-Roos Assault Weapons Control Act (AWCA) in 1989 to prohibit the possession, sale, transportation, or importation of assault weapons. The Legislature found that an assault weapon "has such a high rate of fire and capacity for firepower that its function as a legitimate sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure human beings." Cal. Pen. Code § 30505. California has modified the AWCA over the years to close loopholes exploited by gun manufacturers and others. With the most recent modification in 2016, a person who lawfully possesses a weapon previously permitted but now prohibited may register to maintain possession of it. To register an assault weapon, a registrant must provide the "date the firearm was acquired" and the "name and address of the individual from whom, or business from which, the firearm was acquired." *Id*. § 30900(b)

Plaintiffs seek to enjoin the enforcement of these requirements. They assert that, as applied to individuals who do not have the required date and source information on hand, the requirements violate the Due Process Clause, the Takings Clause, and the Second Amendment. Plaintiffs are not entitled to injunctive relief.

As an initial matter, plaintiffs lack standing to challenge the registration requirements. The one named plaintiff who challenges those requirements has not attempted to register his assault weapon and does not allege that he made any efforts to obtain the necessary information, which in most circumstance may be obtained with reasonable diligence. Plaintiffs, therefore, bring only a hypothetical claim and fail to demonstrate any injury in fact fairly traceable to the defendant. The Court should deny the motion on this ground alone.

Even assuming plaintiffs have standing, they cannot establish that they are likely to succeed on the merits. The registration requirements do not violate due process because they are rationally related to the State's compelling public-safety

1

objectives.  The requirements help ensure that the firearm to be registered is lawfully possessed by the registrant and is eligible to be registered.

The registration requirements also do not constitute a constitutional taking requiring compensation because plaintiffs are free to sell their firearms, store their firearms elsewhere, or modify their firearms so that they are no longer prohibited.

Nor do the registration requirements violate the Second Amendment.  The date and source requirements are reasonable, common-sense measures to facilitate the effective enforcement of the AWCA, which itself is constitutional under the Second Amendment.  Even if assault weapons are protected by the Second Amendment (they are not), the AWCA easily satisfies intermediate scrutiny because assault weapons are most useful in the military and are used disproportionally in mass shootings and the killing of law enforcement personnel.

Finally, plaintiffs' motion is unsubstantiated by any cognizable evidence of injury that they would suffer in the absence of injunctive relief.  On the contrary, an injunction against the enforcement of the date and source registration requirements could harm California's ability to effectively enforce its prohibition of assault weapons and the corresponding harm to the public interest could be considerable. Accordingly, the law, balance of equities, and public interest all weigh against issuing a preliminary injunction.

## BACKGROUND

## I.   CALIFORNIA'S PROHIBITION OF ASSAULT WEAPONS[1]

The California Legislature passed the AWCA in 1989 in response to a proliferation of shootings that involved semiautomatic weapons.  *See Silveira v. Lockyer*, 312 F.3d 1052, 1057 (9th Cir. 2002) (citing 1989 Cal. Stat. ch. 19, § 3, at 64, codified at former Cal. Penal Code § 12275 et seq.), *abrogated on other*

---

[1] Defendant presented a more thorough description of the AWCA, as well as the history and evolution of the AWCA, in his pending Partial Motion to Dismiss. Dkt. No. 17 at 2-6.  Defendant incorporates herein his motion and supporting papers by reference to reduce the duplicate recitation of relevant facts.

2

*grounds by District of Columbia v. Heller*, 554 U.S. 570 (2008) (*Heller*).  As originally enacted, the AWCA prohibited specific makes and models of assault weapons.  Cal. Pen. Code §§ 30510.  After gun manufacturers began to produce "copycat" weapons, the Legislature amended the AWCA in 1999 to close the loophole by prohibiting assault weapons defined by their features; specifically, it defined assault weapons as weapons that have the capacity to accept a detachable magazine (defined by regulation as a magazine that can be removed without the use of tool) in addition to one of several militaristic features.  *See Silveira*, 312 F.3d at 1058; *see also* Request for Judicial Notice ISO Partial Mtn. to Dismiss, Exh. 1 (Dkt. 18-1) (S.B. 880 Report) at 4-5.  In response, gun manufacturers developed the "bullet button" that allowed shooters to use the tip of a bullet as a "tool," thereby rendering meaningless the distinction between a magazine that is detachable within the meaning of the law and one that can be readily detached without a tool.  S.B. 880 Report at 5.  To close the "bullet button" loophole, the Legislature amended the AWCA in 2016 to define assault weapons as a semiautomatic rifle without a fixed magazine and one or more of the militaristic features.  Cal. Pen. Code § 30515(a)(1), (b).  This is the statutory amendment at issue in this case.

## II.   REGISTRATION OF ASSAULT WEAPONS

With each amendment of the AWCA, owners whose weapons were not previously prohibited, but would be prohibited under the amended law, could register to maintain possession of the weapons.  *See* Cal. Pen. Code § 30900 et seq.  When the AWCA was amended in 2016, it permitted owners to register their assault weapons if they acquired those weapons between January 1, 2001 and December 31, 2016, and they were in lawful possession of those weapons.  *Id.* § 30900(b)(1).  To register their weapons, owners must submit a registration application electronically.  *Id.* § 30900(b)(2).  The registration must contain, among other information, the "date the firearm was acquired" and the "name and address

of the individual from whom, or business from which, the firearm was acquired."
*Id.* § 30900(b)(3).

### III.   PLAINTIFFS' ALLEGATIONS RELEVANT TO THEIR MOTION

One of the named plaintiffs, Dennis Martin (Martin), and the California Rifle & Pistol Association (CRPA) make allegations relevant to this motion.  First, plaintiff Martin alleges that he will not be able to meet the registration requirements because he does not know and has no "readily available source" to discover the date and source information of his weapon.  Pls.' 1st Am. Compl. for Declaratory and Inj. Relief (FAC) (Dkt. No. 16) ¶ 56; Decl. of Dennis Martin ISO Motion for Prelim. Inj. (Dkt. No. 24-5) (Martin Decl.) ¶ 5.  Second, the CRPA alleges that it has members who do not know and have no "readily available source" to discover the date and source information of their weapons.  FAC ¶ 60; Decl. of Richard Travis ISO Motion for Prelim. Inj. (Dkt. No. 24-2) (Travis Decl.) ¶ 5.

### LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Plaintiffs requesting a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.  *Id.* at 22.  Alternatively, plaintiffs may demonstrate that "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiffs' favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (quotation omitted).  Even under this alternative standard, plaintiffs must still establish that there is a likelihood of irreparable injury and that the injunction is in the public interest.  *Id.* at 1135.

# ARGUMENT

## I.  PLAINTIFFS LACK STANDING TO ASSERT THEIR CHALLENGE TO THE REGISTRATION REQUIREMENTS AND THE ISSUE IS NOT RIPE FOR JUDICIAL REVIEW

Plaintiffs may not seek a preliminary injunction against the registration requirements of the AWCA because there is presently no "case or controversy" regarding the registration requirements.  Plaintiffs have not identified a single individual whose application to register an assault weapon was denied for not having the date and source information.

Article III standing "enforces the Constitution's case-or-controversy requirement."  *Hein v. Freedom From Religion Found., Inc*., 551 U.S. 587, 597-98 (2007).  "No principle is more fundamental to the judiciary's proper role in our system of government" than that jurisdictional requirement.  *Id*. (quotation omitted).  The requisite elements of Article III standing are well established: "[A] plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180-81 (2000).  Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing these elements.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Ripeness is closely related to standing.  "A dispute is ripe in the constitutional sense if it 'present[s] concrete legal issues, presented in actual cases, not abstractions.'"  *Mont. Envtl. Information Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (quotation omitted).  "[I]n many cases, ripeness coincides squarely with standing's injury in fact prong."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) ("The constitutional component of the ripeness inquiry is often treated under the rubric of standing . . . .

5

1  Indeed, because the focus of our ripeness inquiry is primarily temporal in

2  scope, ripeness can be characterized as standing on a timeline.").

3  As explained below, plaintiffs fail the standing and ripeness requirements

4  because they have suffered no "actual or imminent" injury in fact, and any injury

5  would not be fairly traceable to the challenged registration requirement.

6  **A.  Plaintiffs' Claim of Injury Is Conjectural; They Have Suffered**
   **No "Actual" Injury in Fact and Are Unlikely to Suffer**
7  **"Imminent" Injury**

8  Plaintiffs have not suffered any "actual or imminent" injury due to the date

9  and source information registration requirement.  Plaintiffs have not alleged that the

10  California Department of Justice (DOJ) has rejected any registration application for

11  failing to provide the date and source information.  *See* FAC ¶¶ 56, 60.  Nor could

12  they.  Martin, the only named plaintiff to allege that he does not have the relevant

13  date and source information for his assault weapon, does not allege to have ever

14  attempt to register his weapon.  *See id.* ¶ 56.  Therefore, there has been no actual

15  injury to plaintiffs.

16  There is also no imminent injury.  Plaintiffs claim that it is "impossible" for an

17  individual to obtain the date and source information on his or her firearm.  Pls.'

18  Memo. of Points & Authorities ISO Pls.' Mot. for Preliminary Injunction (Pls.'

19  Memo.) at 8-9.  This premise is incorrect.  In particular, most firearms owners may,

20  with reasonable diligence, ascertain the date and source information of their

21  firearms to register them.  *See* Graham Declaration in Support of the Opposition to

22  Motion to Preliminary Injunction (Graham Decl.) ¶¶ 19-23.  An owner may provide

23  the serial number of his weapon to the manufacturer, who should be able to provide

24  information on the initial sale or transfer of the weapon.  *Id.* ¶ 23.  If the initial sale

25  or transfer was to a dealer or wholesaler, the owner may contact the dealer for

26  records of the transaction from the dealer to the owner or a different buyer.  *Id.*

27  ¶ 21.  With limited exceptions, a firearms dealer must be involved in any firearms

28  transaction, *see* Cal. Pen. Code § 27545, and since dealers are required to maintain

6

records of all transactions, including the date and source information,[2] there should be a chain of records of sale that the owner can obtain.[3]  In some cases, the DOJ may be able to assist the registrant in obtaining the date and source information.  Graham Decl. ¶ 20.[4]

In short, while the circumstances of each purchase and owner may vary, in most instances the date and source information is readily available if the owner exercises basic, reasonable diligence.  Plaintiffs' motion is based on threadbare allegations regarding one particular owner of an assault weapon, Martin, who did not even attempt to register his weapon and provided no details regarding what efforts, if any, he made to ascertain the date and source information.  For this reason, plaintiffs lack standing to seek a preliminary injunction of the registration requirements of date and source information.

Plaintiff CRPA lacks standing for the same reason.  An association does not have standing to bring suit on behalf of its members when its members would not otherwise have standing to sue in their own right.  *See Mont. Envtl. Info. Ctr.*, 766 F.3d at 1188–89.  Because the CRPA does not allege that any of its members have attempted and failed to register their assault weapons due to the date and source requirement, it similarly lacks standing.

---

[2] Under state law, licensed firearms dealers must maintain state records of firearms transactions for three years.  Cal. Pen. Code § 28215(c)(2).  Under federal law, licensed firearms dealers must retain the firearms transaction record (ATF Form 4473) for at least 20 years.  Graham Decl., Exh. 2 at 3.  Both the state firearms transaction record and the ATF Form 4473 require information on the date that the firearm was acquired and the name and address of the seller of the firearm.  *See id.*; Graham Decl. ¶ 22.

[3] In another example, if an owner does not have the date and source information, but recalls that he or she purchased the weapon from a particular sporting goods chain, such as Walmart or Big 5, he or she should be able to contact the corporate office of the chain to obtain the date and source information.

[4] Furthermore, had Martin attempted to apply for registration or contacted the DOJ for assistance, as some have done, he would have known that the DOJ has not required exact date information where it is unavailable.  The DOJ accepts the "best-estimate" acquisition date on registration applications.  Declaration of Patrick Plant in Support of Opposition to Motion for Preliminary Injunction at ¶ 4.

### B.   Any Alleged Injury Is Not Fairly Traceable to the Date and Source Registration Requirement

Plaintiffs lack standing also because their alleged injury is not "fairly traceable to the defendant's allegedly unlawful conduct." *Lujan*, 504 U.S. at 590. Specifically, plaintiffs have not established that Martin's alleged injury is fairly traceable to the date and source information requirement of section 30900(b). While Martin alleges that he does not have that information on hand, he does not allege that he made any good faith effort to obtain that information. As described above, the required information may be obtained with reasonable diligence by registrants. There is no allegation that Martin took *any* steps to obtain the information. Neither the FAC nor Martin's declaration state (1) what information he possesses relating to the circumstances of his acquisition of his assault weapon, (2) if he attempted to obtain the date and source information, (3) if so, how he did attempt to obtain that information, and (4) whether he could obtain the date and source information sufficient to register his assault weapon with reasonable diligence. *See* FAC ¶ 56; Martin Decl. (Dkt. No. 24-5) ¶¶ 6-7.[5]

Plaintiffs cannot create a "case or controversy" regarding the registration requirements when they made little or no attempt to obtain the required information. *See Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 416 (2013) (standing cannot be based on "fears of hypothetical harm that is not certainly impending."). Therefore, plaintiffs have failed to meet their burden to establish that the alleged injury is due to the registration requirement.

---

[5] Curiously, Martin's declaration suggests that he may know the seller from whom he acquired his assault weapon but not the address. *See* Martin Decl. ¶ 7. If that is the case, then it should be a simple matter to ascertain the address of the seller. Furthermore, it is unclear from his declaration whether he has some records of his purchase, but that those records do not contain the date and source information, or that he was not able to locate any records of purchase.

1    For lack of a justiciable controversy at this time, the Court should deny

2    plaintiffs' motion for preliminary injunction.[6]

3    ## II.    PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS

4    Plaintiffs cannot meet their burden to establish that they are likely to succeed

5    on the merits.  *See Alliance for the Wild Rockies*, 632 F.3d at 1134-35.  The

6    registration requirements do not violate the Due Process Clause, the Takings

7    Clause, or the Second Amendment.

8    ### A.    The Registration Requirements Do Not Violate the Due Process
         Clause Because They Are Rationally Related to the
9         Legislature's Public Safety Objectives

10   Plaintiffs' due process claim is without merit.  Their contention that the date

11   and source registration requirements arbitrarily deprive owners who do not have

12   that information of their assault weapons fails.  The AWCA and its registration

13   requirements are rationally related to the Legislature's public-safety objectives,

14   which are not just legitimate, but compelling.  *See Fyock v. Sunnyvale*, 779 F.3d

15   991, 1000 (9th Cir. 2015).

16   While a regulation that fails to serve *any* legitimate governmental objective

17   may be so arbitrary or irrational that it runs afoul of the Due Process Clause, the

18   AWCA's date and source registration requirements survive a due process challenge

19   as a matter of law.  Regulations "survive a substantive due process challenge if they

20   were *designed to* accomplish an objective within the government's police power,

21   and if a rational relationship existed between the provisions and purposes" of the

22   regulation.  *Levald*, 998 F.2d at 690 (emphasis in original and quotation omitted).

23   The "threshold for a rationality review challenge asks only 'whether the enacting

24   _____

        [6] Even assuming plaintiffs have standing, the Court should decline to
25   exercise jurisdiction on prudential grounds. The pending motion is not fit for
     judicial review because there is a dearth of facts for this Court to analyze. *See*
26   *Thomas*, 220 F.3d at 1141 ("The manner in which the [issue] is presented here,
     devoid of any specific factual context, renders this case unfit for judicial
27   resolution."); *Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501,
     511 (9th Cir. 1992) (courts "should not be forced to decide . . . constitutional
28   questions in a vacuum" (quotation omitted)).

9

body *could* have rationally believed at the time of enactment that the law would promote its objective.'" *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1130-31 (9th Cir. 2013) (emphasis added and quotation omitted).

The Legislature has clearly legitimate reasons to require the date and source information. The information serves important state interests because it helps the DOJ to ascertain that the weapon to be registered is eligible to be registered.

First, section 30900(b)(3) requires registrants to provide the "date the firearm was acquired" because only weapons that were acquired between January 1, 2001 and December 31, 2016 are eligible to be registered. Since the DOJ does not have ownership information on most long guns in California, registrants must self-report the acquisition date of the firearm so that the DOJ may determine whether the firearm was acquired during the permitted time frame and eligible to be registered. Graham Decl. ¶ 26. The date of acquisition further helps to establish that the firearm is lawfully possessed by the registrant. *Id.* For example, if an applicant reported that he or she purchased the firearm in 2015, and the DOJ does not have a corresponding record in its firearms database, then the DOJ would question whether the registrant has lawful possession of the firearm. *Id.*

Second, section 30900(b)(3) requires registrants to provide the name and address of the seller of the assault weapon also to assist the DOJ in determining whether the registrant is in lawful possession of the weapon. Graham Decl. ¶ 27. It might permit the DOJ to verify the registrant's information with any information the DOJ has on file for the transaction, the firearm, and the seller. *Id.* It might permit the DOJ to confirm that the firearm was obtained from the identified seller. *Id.* And it might also permit the DOJ to track down the seller, if necessary, to determine whether the seller was in lawful possession of the firearm at the time of the sale. *Id.*

Plaintiffs are also incorrect to contend that section 30900(b) is a retroactive law.  Pls.' Memo. at 9-10.  Section 30900(b) is not retroactive, as it does not punish individuals for the past possession of assault weapons.  Indeed, it provides those individual with an opportunity to maintain possess of those weapons.  Rather, the law requires certain information to be provided *at the time* that an individual seeks to register assault weapons.  Cal. Pen. Code § 30900(b).[7]  The mere fact that Martin does not now recall information regarding the assault weapon he seeks to register does not make section 30900 retroactive.

In light of the rational relationship between the requirement for date and source information and its purposes, plaintiffs' due process challenge fails.[8]

## B. The Registration Requirements Do Not Violate the Takings Clause

Plaintiffs' takings claim is without merit.  The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation."  *Lingle v. Chevron U.S.A., Inc*., 544 U.S. 528, 536 (2005).  Its purpose is to prohibit the "[g]overnment from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a

---

[7] Plaintiffs cite *Eastern Enterprises v. Apfel*, 524 U.S. 498, 502 (1998), for the contention that "retroactive laws change the legal consequences of transactions long closed."  Pls.' Memo. at 10.  But in that case, the Supreme Court ruled that the law was retroactive because it "created liability for events occurring 35 years ago." 524 U.S. at 502.  Section 30900(b) does not punish individuals for past action.

[8] Plaintiffs' substantive due process claim also fails because they have no constitutional right to possess assault weapons under the Second Amendment, as discussed in Section II.C, *infra*.  *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) ("To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property.").  Furthermore, because plaintiffs' substantive due process claim turns on their right to possess assault weapons, it is preempted by their Second Amendment claim.  Where an explicit source of constitutional protection (*i.e.*, the Second Amendment) is asserted, the claim must be analyzed under that source rather than the more generalized notion of "substantive due process" under the Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Hufford v. McEnaney*, 249 F.3d 1142, (9th Cir. 2001).

1   whole." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978)

2   (internal quotations and citations omitted).

3       Plaintiffs assert that, for persons who are unable to register because they do

4   not possess the date and source information of their assault weapons, the AWCA

5   works a physical taking that requires government compensation.  Pls.' Memo. at 11.

6   Fatal to plaintiffs' claim is that they allege no economic loss caused by the alleged

7   inability to register weapons under the AWCA.  Individuals who do not register to

8   maintain possession of their weapons remain free to sell their weapons out of state

9   or to a licensed gun dealer within the state.  Cal. Pen. Code §§ 30680, 31055.  They

10  may store and use the weapons out of the state.  *Id.* § 30915.  And they may keep

11  their weapons if they permanently affix the magazines *or* remove the military

12  feature or features of the weapons.  *See id.* § 30605; Cal. Code Regs. Tit. 11,

13  § 5478(a).

14      A similar challenge to the AWCA under the Takings Clause was previously

15  raised and rejected by the Ninth Circuit in *Silveira*.  In that case, the plaintiffs

16  contended that the AWCA violated the Takings Clause because it reduced the value

17  of their assault weapons.  *Silveira*, 312 F.3d at 1092.[9]  The Ninth Circuit described

18  the claim as one it can "dispose of readily" because "[i]t is well established . . . that

19  a government may enact regulations pursuant to its broad powers to promote the

20  general welfare that diminish the value of private property, yet do not constitute a

21  taking requiring compensation, so long as a reasonable use of the regulated property

22  exists."  *Silveira*, 312 F.3d at 1092 (citing *Am. Sav. & Loan Ass'n v. Cnty. of Marin*,

23  653 F.2d 364, 368 (9th Cir. 1981) ("If the regulation is a valid exercise of the police

24  power, it is not a taking if a reasonable use of the property remains.")).  This Court

25  should similarly reject plaintiffs' takings claim.

26

27                [9] Unlike the plaintiffs in *Silveira*, plaintiffs here do not even allege that the

28  AWCA reduced the value of their assault weapons.

### 1.   The AWCA Does Not Effect a Physical Taking Requiring Compensation

The paradigmatic taking that requires just compensation is a direct government appropriation or physical invasion of private property. *Lingle*, 544 U.S. at 537. "In a physical taking, the government acts pursuant to its eminent domain power to take private property for 'public use.'" *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1034 (9th Cir. 2000). The AWCA does not require direct government appropriation or physical invasion of any individual's assault weapon even if that individual is unable to register under section 30900(b). There is no taking of private property for a "public use," and, therefore, no physical taking as a matter of law.

Plaintiffs' physical takings claim fails because the AWCA does not require them to surrender their assault weapons to the government. Plaintiffs argue that the AWCA effects a taking for individuals who cannot register their assault weapons because it requires "physical surrender . . . and transfer of title." Pls.' Memo. at 12 (citation omitted). The AWCA, however, does not compel anyone to physically transfer his or her weapon to anyone else. Even if there are persons who are unable to register their weapons, they may keep their weapons if they permanently affix the magazines *or* remove the military feature or features of the weapons. *See id.* § 30605; Cal. Code Regs. Tit. 11, § 5478(a). Individuals who do not register to maintain possession of their weapons may store and use the weapons out of the state. *Id.* § 30915. And, should they choose to do so, individuals could sell their weapons out of state or to a licensed gun dealer within the state. Cal. Pen. Code §§ 30680, 31055. Thus, even the lack of a registration opportunity would not constitute a physical taking.

Cases cited by plaintiffs are inapposite. For example, plaintiffs cite *Kelo v. City of New London*, 545 U.S. 469 (2005), for the proposition that there may be a physical taking of real property even if the owner of the property had an option to

1  sell the property to a private third party.  Pls.' Memo. at 13.  In *Kelo*, however, the

2  Supreme Court actually held that a city may authorize a private party to exercise

3  eminent domain in the city's name and compel the sale of properties to the private

4  party without violating the Takings Clause if it serves a "public purpose."  *Id.* at

5  483-84.  *Kelo* thus defeats plaintiffs' argument.

6  　　　Plaintiffs further argue that any direct interference with or disturbance of

7  property rights alone is a physical taking.  Pls.' Memo. at 13.  However, "Supreme

8  Court cases unequivocally indicate that the government does not take an

9  individual's property unless it has denied him economically viable use of his

10  [property]."  *Kaiser Dev. Co. v. City and County of Honolulu*, 913 F.2d 573, 575

11  (9th Cir. 1990) (internal quotation marks and citation omitted).  Fatal to plaintiffs'

12  claim is that they do not allege any diminution in economic value to their assault

13  weapons caused by the AWCA.  Plaintiffs are free to sell their assault weapons at

14  market value.  No compensation from the State is thus necessary.

15
16  　　　**2.　　Prohibition on Possession of Dangerous Property Under
　　　　　　the State's Police Power Is Not a Physical Taking**

17  　　　In a physical taking, the government exercises its eminent domain power to

18  take private property for "public use."  S*ee Lingle*, 544 U.S. at 536; *Chevron USA,*

19  *Inc.*, 224 F.3d at 1034.  By contrast, where, as here, the government acts pursuant to

20  its police power to protect the safety, health, and general welfare of the public, a

21  prohibition on possession of property declared to be a public nuisance is not a

22  physical taking.  *See* Cal. Pen. Code § 30800(a)(1) (declaring possession of assault

23  weapons, unless expressly permitted by statute, to be public nuisance); *see also*

24  *Akins v. United States*, 82 Fed. Cl. 619, 622 (2008) ("Property seized and retained

25  pursuant to the police power is not taken for a 'public use' in the context of the

26  Takings Clause."); *Everard's Breweries v. Day*, 265 U.S. 545, 563 (1924); *Mugler*

27  *v. Kansas*, 123 U.S. 623, 668-69 (1887) ("A prohibition simply upon the use of

28  property for purposes that are declared, by valid legislation, to be injurious to the

14

1  health, morals, or safety of the community, cannot, in any just sense, be deemed a

2  taking or an appropriation of property for the public benefit.").

3      Recognizing this distinction, a number of courts have rejected Takings Clause

4  challenges to laws banning the possession of dangerous weapons. *See Akins*, 82

5  Fed. Cl. at 623-24 (restrictions on sale and possession of machine guns not a

6  taking); *Fesjian v. Jefferson*, 399 A.2d 861 (D.C. Ct. App. 1979) (ban on machine

7  guns not a taking); *cf. Gun South, Inc. v. Brady*, 877 F.2d 858, 869 (11th Cir. 1989)

8  (suspension on importation of assault weapons not a taking).

9      Unlike in cases where the government has physically occupied or appropriated

10 private property for its own use (either directly or through agents), the AWCA is an

11 exercise of the State's police power to protect the public by gradually reducing the

12 number of assault weapons in circulation, not to transfer title to the government or

13 an agent of the government for use in service of the public good.  Accordingly, it

14 does not amount to a taking.

15
16
### 3.    Injunctive Relief Is Inappropriate Because the Takings Clause Does Not Limit California's Power to Regulate Assault Weapons

17     Plaintiffs' takings claim also fails because it seeks only an injunction.  The

18 Takings Clause does not limit the government's power to act, or replace the role of

19 the people in determining which social policies to pursue. *Wash. Legal Found. v.*

20 *Legal Found. of Wash.*, 271 F.3d 835, 856 (9th Cir. 2001).  Instead, it is merely a

21 conditional limitation that permits the government to do what it wants so long as it

22 pays compensation. *Id.*; *First English Evangelical Lutheran Church of Glendale v.*

23 *County of Los Angeles*, 482 U.S. 304, 315 (1987) (holding that the Takings Clause

24 is designed to secure compensation for a proper interference amounting to a taking,

25 not to limit governmental authority).

26     Should the Court find that the date and source registration requirements effect

27 a taking without compensation, the only remedy is monetary compensation, which

28 plaintiffs do not seek. *Lingle*, 544 U.S. at 536-37 (the Takings Clause "is designed

15

1   not to limit the governmental interference with property rights *per se*, but rather to

2   secure *compensation* in the event of otherwise proper interference amounting to a

3   taking." (emphasis in original and quotation omitted)).  The takings claim fails for

4   this additional reason.

5       **C.**    **The Registration Requirements Do Not Violate the Second**

6           **Amendment**

7         The registration requirements at issue in this case do not violate the Second

8   Amendment.  The date and source requirements are reasonable, common-sense

9   measures to facilitate the effective enforcement of the AWCA, as discussed in

10  Section II.A, *supra*, which itself is constitutional under the Second Amendment.

11  Contrary to plaintiffs' claim, they do not have a Second Amendment right to

12  possess assault weapons regulated by the AWCA.  *See* Pls.' Memo. at 15:10-13.

13  Every circuit court to have considered a prohibition on the possession of assault

14  weapons, such as those prohibited under the AWCA, has upheld such restrictions

15  under the Second Amendment.  *See Kolbe v. Hogan*, 849 F.3d 114, 130-41 (4th Cir.

16  2017) (en banc), *petition for cert. filed* (U.S. July 26, 2017) (No. 17-127); *N.Y.S.*

17  *Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 258-63 (2d Cir. 2015), *cert denied*

18  *sub nom*, *Shew v. Malloy*, 136 S. Ct. 2486 (2016) (*NYSRPA*); *Friedman v. City of*

19  *Highland Park*, 784 F.3d 406, 411-12 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 447

20  (2015); *Heller v. District of Columbia*, 670 F.3d 1244, 1260-64 (D.C. Cir. 2011)

21  (*Heller II*).  As in those cases, the AWCA comports with the requirements of the

22  Second Amendment, and thus the registration requirements implemented in

23  furtherance of the AWCA cannot violate the Second Amendment.

24      **1.**    **The Second Amendment Framework**

25        The Ninth Circuit uses a two-step inquiry for Second Amendment claims:

26  "first, the court asks whether the challenged law burdens conduct protected by the

27  Second Amendment; and if so, the court must then apply the appropriate level of

28  scrutiny."  *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016).  The first step

considers whether the challenged law burdens conduct protected by the Second Amendment, based on a "historical understanding of the scope of the right." *Id.* at 820 (quoting *Heller*, 554 U.S. at 625). "Importantly, the Second Amendment does not 'protect those weapons not typically possessed by law-abiding citizens for lawful purposes,'" and "longstanding prohibitions on the possession of 'dangerous and unusual weapons' have uniformly been recognized as falling outside the scope of the Second Amendment." *Fyock*, 779 F.3d at 997. If the law falls outside the historical scope of the Second Amendment, then that law "may be upheld without further analysis." *Silvester*, 843 F.3d at 821 (citation omitted). "If the regulation is subject to Second Amendment protection . . . the court then proceeds to the second step of the inquiry to determine the appropriate level of scrutiny to apply," and then to apply that level of scrutiny. *Silvester*, 843 F.3d at 821 (citation omitted).

### 1. Even If the AWCA Burdens the Second Amendment, It Satisfies Intermediate Scrutiny

The AWCA does not violate the Second Amendment because assault weapons are not protected by the Second Amendment. *See Kolbe*, 849 F.3d at 137 ("Whatever their other potential uses—including self-defense—the AR-15, other assault weapons, and large-capacity magazines . . . are unquestionably most useful in military service."). The Second Amendment protects only weapons "'in common use at the time' for lawful purposes like self-defense." *Heller*, 554 U.S. at 625. On the other hand, "dangerous and unusual" weapons most useful in military service, such as the "M-16 rifles and the like," fall outside the reach of the Second Amendment. *See Heller*, 554 U.S. at 627, *Fyock*, 779 F.3d at 997, *Kolbe*, 849 F.3d at 136. [10] Assault weapons are "like" the M-16 and "are most useful in military service." *Kolbe*, 849 F.3d at 142 (citing *Heller*, 554 U.S. at 627). They were

---

[10] To be precise, "'[a]lthough the *Heller* Court invoked Blackstone for the proposition that "dangerous and unusual" weapons have historically been prohibited, Blackstone referred to the crime of carrying "dangerous *or* unusual weapons.' See 4 Blackstone 148-49 (1769) (emphasis added)." *Kolbe*, 849 F.3d at 131 n.9.

17

developed for military use and are equipped with military-style features designed to serve specific combat needs and enhance the usefulness (and lethality) of the weapons. *See* Declaration of John D. Echeverria (Echeverria Decl.), Exh. 1 (Bureau of Alcohol Tobacco & Firearms, *Department of the Treasury Study on the Sporting Suitability of Modified Semiautomatic Assault Rifles* (1998)), at 1 (noting that semiautomatic assault rifles "had a military configuration that was designed for killing and disabling the enemy" including certain physical features, such as the "ability to accept a detachable magazine, folding/telescopic stocks, separate pistol grips, ability to accept a bayonet, [and] flash suppressors"); Echeverria Decl., Exh. 2 (Bureau of Alcohol Tobacco & Firearms, *Report and Recommendation on the Importability of Certain Semiautomatic Rifles* (1998)), at 6-7 (discussing the "military features and characteristics" of assault weapons, including folding/telescoping stocks, pistol grips, and flash suppressors). Although plaintiffs claim that the militaristic features of assault weapons make those weapons easier to use, *see* Pls.' Memo. at 16:4-8, "the features that characterize a semiautomatic weapon as an assault weapon are not merely cosmetic, but do serve specific, combat-functional ends." *See* Echeverria Decl., Exh. 3 (H.R. Rep. No. 103-489 (1994)), at 35.[11] Assault weapons, therefore, fall outside the protections of the Second Amendment. But even if assault weapons were within the historical scope

---

[11] Indeed, assault weapons are advertised to civilians as military-grade weapons. *See* Echeverria Decl., Exh. 4 (Violence Policy Center, *The Militarization of the U.S. Civilian Firearms Market* (2001)), at 1 ("Selling militarized firearms to civilians—i.e., weapons in the military inventory or weapons based on military designs—has been at the point of the industry's civilian design and marketing strategy since the 1980s."); *see, e.g.*, Echeverria Decl., Exh. 5 (Colt AR15A4 advertisement stating that "Colt's reliability, performance, and accuracy provide our Armed Forces the confidence required to accomplish any mission"); Echeverria Decl., Exh. 6 (Colt.com, About Colt Rifles) ("Colt rifles . . . are based on the same military standards and specifications as the United States issue Colt M16 rifle and M4 carbine.").

1  of the Second Amendment, the AWCA would nevertheless survive intermediate

2  scrutiny, the applicable level of scrutiny in this case.[12]

3  **a.   Intermediate Scrutiny Is the Appropriate Standard of**
   **Scrutiny in this Case**

4

5  In determining the appropriate level of scrutiny to apply to a Second

6  Amendment challenge, the Court must consider "(1) how close the challenged law

7  comes to the core of the Second Amendment right, and (2) the severity of the law's

8  burden on that right." *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 960-

9  61 (9th Cir. 2014).  If the law either does not come close to the core or otherwise

10 does not "substantially" burden the right, then intermediate scrutiny applies.  *Id.* at

11 961.  The core of the Second Amendment, as described in *Heller*, is "the right of

12 law-abiding, responsible citizens to use arms in defense of hearth and home."  *See*

13 *Bauer v. Becerra*, 858 F.3d 1216, 1221 (9th Cir. 2017) (quoting *Heller*, 554 U.S. at

14 635), *petition for cert. filed* (U.S. Nov. 9, 2017) (No. 17-719).  "A law that imposes

15 such a severe restriction on the fundamental right of self defense of the home that it

16 amounts to a destruction of the Second Amendment right is unconstitutional under

17 any level of scrutiny," whereas a "law that implicates the core of the Second

18 Amendment right and severely burdens that right warrants strict scrutiny.

19 Otherwise, intermediate scrutiny is appropriate."  *Id.* at 1222 (internal quotation

20 marks and citations omitted).

21 At most, the AWCA regulates the manner in which persons may exercise their

22 Second Amendment rights.  *See Jackson*, 746 F.3d at 961.  It does not prohibit an

23 entire category of firearms considered to be "the quintessential self-defense

24 _____

[12] Because the AWCA would survive constitutional scrutiny even if it
25 implicated the Second Amendment, for purposes of the Court's analysis, this Court
may assume, without deciding, that some Second Amendment protection is
26 warranted.  *See Fyock*, 779 F.3d at 997 (bypassing step one on preliminary
injunction motion because ban on large capacity magazines (LCMs) would survive
27 heightened scrutiny even if LCMs fell within the scope of the Second Amendment);
*Silvester*, 843 F.3d at 826–27 (assuming without deciding that waiting period laws
28 fall within the scope of the Second Amendment at step one and upholding them at
step two).

1   weapon," like the law at issue in *Heller*. *See* 544 U.S. at 629. Rather, it prohibits

2   only a particularly dangerous subset of firearms. Accordingly, all circuit courts that

3   have assess the constitutionality of state laws banning the possession of assault

4   weapons have concluded that intermediate scrutiny was appropriate. *See Kolbe*,

5   849 F.3d at 140-41; *N.Y.S. Rifle & Pistol Ass'n*, 804 F.3d at 269; *Heller II*, 670 F.3d

6   at 1263; *Friedman*, 784 F.3d at 410. As in those cases, and contrary to plaintiffs'

7   suggestion that some form of higher scrutiny should apply, *see* Pls.' Memo. at

8   17:23-18:2, intermediate scrutiny is the appropriate standard here.

9             **b.    The AWCA and the Registration Requirements**
              **Satisfy Intermediate Scrutiny**

10

11          The Ninth Circuit's test for intermediate scrutiny has two requirements:

12  "(1) the government's stated objective must be significant, substantial, or

13  important; and (2) there must be a 'reasonable fit' between the challenged

14  regulation and the asserted objective." *Silvester*, 843 F.3d at 821-22 (citation

15  omitted). Intermediate scrutiny does not require the fit between the challenged

16  regulation and the stated objective to be perfect, nor does it require that the

17  regulation be the least restrictive means of serving the interest. *Jackson*, 746 F.3d

18  at 969. Rather, the government "must be allowed a reasonable opportunity to

19  experiment with solutions to admittedly serious problems." *Id.* at 969-70 (quoting

20  *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 52 (1986)). In determining

21  whether a law survives intermediate scrutiny, courts "afford substantial deference to

22  the predictive judgments of the legislature." *Turner Broad. Sys., Inc. v. FCC*, 520

23  U.S. 180, 195 (1997). The AWCA easily passes scrutiny under this framework.

24          It is beyond question that California has an important—indeed, compelling—

25  interest in promoting public safety and preventing crime and gun violence. *See,*

26  *e.g.*, *Fyock*, 779 F.3d at 1000; *United States v. Chovan*, 735 F.3d 1127, 1135 (9th

27  Cir. 2013), *cert. denied*, 135 S. Ct. 187 (2014). The AWCA furthers that

28  compelling interest directly by prohibiting a particularly dangerous subclass of

firearms that pose an acute danger to the public and law enforcement.  The ability
to accept a detachable magazine enables a soldier to utilize, and rapidly reload,
large capacity magazines that can hold multiple rounds (*e.g.*, 20-30 rounds), folding
or telescoping stocks enhance the portability of the weapon and has a "predominant
advantage" "for military purposes," pistol grips "were designed to assist in
controlling machineguns during automatic fire," and flash suppressors "help
conceal [a] shooter's position, especially at night."  Echeverria Decl., Exh. 2 at 6-7.
The "net effect of these military combat features is a capability for lethality—more
wounds, more serious, in more victims—far beyond that of other firearms in
general, including other semiautomatic guns."  *Kolbe*, 849 F.3d at 1137 (citation
omitted).

Assault weapons are used disproportionately in gun crime, particularly mass
shootings and the killing of law enforcement personnel.  Echeverria Decl., Exh. 7
(Christopher S. Koper et al., *Criminal Use of Assault Weapons and High-Capacity
Semiautomatic Firearms:  An Updated Examination of Local and National Sources*,
J. Urban Health (2017)), at 1 (noting that assault weapons and other high-capacity
semiautomatic weapons "account for 22 to 36% of crime guns, with some estimates
upwards of 40% for cases involving serious violence including murders of police"
and "appear to be used in a higher share of firearm mass murders (up to 57% in
total)"); Echeverria Decl., Exh. 8 (Mark Follman et al., *More than Half of Mass
Shooters Used Assault Weapons and High-Capacity Magazines*, Mother Jones,
Feb. 27, 2013 ("More than half of the killers we studied in our investigation of 62
mass shootings over the last three decades possessed [assault weapons], including
various semi-automatic rifles, guns with military features, and handguns using
magazines with more than 10 rounds."); Echeverria Decl., Exh. 9 (Violence Policy
Center, *'Officer Down'*: *Assault Weapons and the War on Law Enforcement*
(2003)) at 5 (noting that "from 1998 through 2001 one in five law enforcement
officers slain in the line of duty were killed with an assault weapon").  Assault

21

weapon rounds will penetrate the soft body armor worn by most law enforcement personnel.  Echeverria Decl., Exh.  10 (Nat'l Inst. of Justice, Selection and Application Guide 0101.06 to Ballistic-Resistant Body Armor (2014)), at 13.  Even in self-defense scenarios, assault weapons pose serious risks to bystanders.  *See* Echeverria Decl., Exh. 11 (Brady Center to Prevent Gun Violence, *Assault Weapons "Mass Produced Mayhem"* (Oct. 2008)), at 16 ("In addition to utilizing military features useful in combat, but which have no legitimate civilian purpose, assault weapons are exceedingly dangerous if used in self defense, because the bullets many of the weapons fire are designed to penetrate humans and will penetrate structures, and therefore pose a heightened risk of hitting innocent bystanders.").

Prior to its expiration, the federal assault weapons prohibition was effective in reducing the prevalence of assault weapons in gun crime.  Echeverria Decl., Exh. 7 ("the share of crime guns that were [assault weapons] fell 24% to 60%" and "crimes with [assault weapons] were becoming increasingly rare as the years passed"); Echeverria Decl., Exh. 12 (David S. Fallis, *Data Indicate Drop in High-Capacity Magazines During Federal Gun Ban*, Wash. Post, Jan. 10, 2013).  The AWCA, like the federal prohibition before it, advances the State's compelling interests in protecting citizens and law enforcement from gun violence, promoting public safety, and preventing crime; and thus the registration requirements are likewise constitutional under the Second Amendment.

## III.   PLAINTIFFS ARE NOT LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF

Plaintiffs' claims of injury are based on the alleged denial of their constitutional rights and the false premise that it is "impossible for owners who no longer have the date and source information to register their firearms.  Pls' Memo. at 8-9, 20.  However, owners of firearms in this State should, with reasonable diligence, be able to obtain the date and source information through the

1  manufacturer or licensed firearms dealer.  Even assuming plaintiffs will not be able

2  to register to maintain their possession of assault weapons, they will not have

3  suffered no injury because their constitutional claims fail and they would, thus, not

4  be deprived of their constitutional rights.  For these reasons, plaintiffs cannot

5  demonstrate that they will be injured, let alone irreparably so, in the absence of an

6  injunction.  *See Fyock*, 25 F. Supp. 3d at 1282; *Goldie's Bookstore, Inc. v. Superior*

7  *Ct.*, 739 F.2d 466, 472 (9th Cir. 1984).[13]

8      Furthermore, plaintiffs' lack of standing highlights their inability to

9  demonstrate that they are likely to suffer any harm.  Martin has not been denied an

10  opportunity to register.  He may register, but should simply do some diligence to

11  obtain the required information.  Martin has not shown that he is unable to obtain

12  the information.

### IV. IN THE ABSENCE OF ANY CONSTITUTIONAL VIOLATION, PLAINTIFFS CANNOT MEET THEIR BURDEN TO DEMONSTRATE THAT THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST TIP IN THEIR FAVOR

15      In exercising sound discretion, a district court "must balance the competing

16  claims of injury and consider the effect of granting or withholding the requested

17  relief," paying "particular regard for the public consequences in employing the

18  extraordinary remedy of injunction."  *Winter*, 555 U.S. at 24 (quotation marks and

19  citation omitted).  Plaintiffs have not established, and cannot establish, harm

20  sufficient to outweigh the fact that "[a]ny time a State is enjoined by a court from

21  effectuating statutes enacted by representatives of its people, it suffers a form of

22  irreparable injury."  *Maryland v. King*, 133 S. Ct. 1, 2 (2012) (quotation and

23  citation omitted).  Nor can they demonstrate that it is in the public interest to enjoin

24  a duly-enacted law designed to protect the public safety and reduce gun violence

---

25  [13] With respect to the takings claim in particular, plaintiffs do not explain
26  why monetary damages would not be an adequate remedy if they were to somehow prevail on their takings claim.  Thus, they have not demonstrated that they would suffer an irreparable injury from the purported taking.  *See Ruckelshaus v.*
27  *Monsanto Co.*, 467 U.S. 986, 1016 (1984) ("Equitable relief is not available to enjoin an alleged taking . . . when a suit for compensation can be brought against
28  the sovereign subsequent to the taking.").

and gun-related crime.  *See Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1193-94 (E.D. Cal. 2015) (finding that the "cost of being mistaken, on the issue of whether the injunction would have a detrimental effect on handgun crime, violence, and suicide, would be grave"); *see also Fed. Trade Comm'n v. Affordable Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999) (finding that, under Ninth Circuit precedents, public interest should be given "greater weight" than a private interest in a balance of hardships analysis).[14]

In addition, an injunction prohibiting the enforcement of the date and source information requirement of section 30900(b)(3) would cause a concrete harm against the state's law enforcement public-safety interests.  If the state is prohibited from obtaining information on when a registrant obtained his or her weapon, the state, in most cases, cannot determine if the weapon is eligible to be registered because only weapons acquired within a permitted timeframe may be registered.  And if the state is prohibited from obtaining information on the source of the weapon to be registered, there could be a loophole in which an illegally possessed weapon might be given legal status.  An injunction, therefore, could cause irreparable harm to California's firearms scheme and compromise public safety.

Accordingly, the law, the balance of harms, and the public interest all weigh decisively against a preliminary injunction.

---

[14] Plaintiffs assert that an injunction is in the public interest because "we are potentially talking about many thousands of people."  Pls' Memo. at 22.  But plaintiffs have identified only one (Martin) whose private interest is implicated.

24

1

## CONCLUSION

2     For the reasons provided above, plaintiffs' motion for preliminary injunction

3     should be denied.

4

5     Dated:  November 22, 2017                      Respectfully submitted,

6                                                    XAVIER BECERRA
                                                     Attorney General of California
7                                                    ANTHONY R. HAKL
                                                     Supervising Deputy Attorney General
8                                                    JOHN D. ECHEVERRIA
                                                     Deputy Attorney General
9
                                                     /s/ Peter H. Chang
10
                                                     PETER H. CHANG
11                                                   Deputy Attorney General
                                                     *Attorneys for Defendant Xavier*
12                                                   *Becerra*

13    SA2017106868
      21046960.docx
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28