UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| STEVEN RUPP, et al.,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California, and DOES 1-10,<br><br>                    Defendants. | CASE NO. 8:17-cv-00746-JLS-JDE<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION TO DISMISS (Doc. 17); (2) DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (Doc. 24); AND (3) DENYING PLAINTIFFS' MOTION FOR LEAVE AS MOOT (Doc. 41)** |
| --- | --- |

## I.      <u>INTRODUCTION</u>

Plaintiffs' lawsuit challenges certain provisions in California's Assault Weapons Control Act, alleging they violate the Due Process Clause, the Takings Clause, and the Second Amendment of the Constitution.  There are presently three motions before the Court.  First, Defendant Xavier Becerra, in his capacity as Attorney General of the State of California, moves to dismiss Plaintiffs' Due Process Clause and Takings Clause Claims.  Second, Plaintiffs move for a preliminary injunction.  Third, after full briefing and oral

argument on these motions, Plaintiffs filed a Motion for Leave to file a supplemental declaration of Dennis Martin in support of their Motion for Preliminary Injunction. Having fully considered the papers and arguments of the parties, the Court GRANTS Defendant's Motion to Dismiss, DENIES Plaintiffs' Motion for Preliminary Injunction, and DENIES AS MOOT Plaintiffs' Motion for Leave.

## II.   **BACKGROUND**

### A. **The Assault Weapons Control Act**

In 2016, the California State Legislature amended California Penal Code section 30515, the section of the Assault Weapons Control Act (AWCA) that defines prohibited assault weapons by their features.  (FAC ¶ 37, Doc. 16.)  The AWCA, originally passed in 1989, made it a felony offense to manufacture assault weapons within the State of California, or to possess, sell, transfer, or import such weapons into the state without a permit.  (Mem re: MTD at 3; Cal. Penal Code §§ 30600, 30605.)  At the time of its passage, the AWCA included a list of specific assault weapons identified by their make and model.[1]  Cal. Penal Code § 30510.  The legislature found that each of these firearms "has such a high rate of fire and capacity for firepower that its function as a legitimate sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure human beings."  Cal. Penal Code § 30505(a).  Since the AWCA's passage, state legislators have amended the definition of "assault weapon" on a number of occasions, to prohibit the proliferation of "copycat" weapons that were functionally similar to the banned weapons.  (FAC ¶ 30; Mem. re: MTD at 4.)

In particular, the AWCA was amended in 1999 to allow legislators to define a new class of restricted weapons according to their features rather than by model.  Cal. Penal

---

[1] There are two lists of assault weapons, one created when the law was passed in 1989 and another added when the law was amended in 2000.  Plaintiffs refer to the first list as "Category 1" weapons and the second as "Category 2."  (FAC ¶¶ 23-29).  Category 1 weapons are listed in California Penal Code section 30510, and Category 2 are listed in the California Code of Regulations, title 11, section 5499.

Code § 30515.  (FAC ¶ 30.)  This new category ("Category 3") was intended to allow "more flexib[ility] in response to technological developments in the manufacture of semiautomatic weapons."  California Bill Analysis, S.B. 880 Assem., 6/14/2016 at 4.[2] Section 30515 describes combinations of features that bring a weapon within the definition of an "assault weapon."  The features at issue in this case are the pistol grip, thumbhole stock, flash suppressor, and telescoping stock.  (FAC ¶ 8.)

Under the 1999 amendments, one feature that, when combined with one or more of the above-listed features, rendered the weapon an "assault weapon" was "the capacity to accept a detachable magazine."  (FAC ¶ 34; S.B. 880 Hearing at 4.)  Under the amendments, if a magazine required a "tool" for detachment, it was not considered detachable.  In response to this definition, firearms manufacturers developed a product called a "magazine lock" that required the use of a bullet to depress a button to release the magazine.  (FAC ¶ 35; MTD at 4-5.)  The button, which Defendant refers to as a "bullet button," enabled the magazine to be "removed and replaced in seconds" while not being technically "detachable."  (MTD at 5.)  The legislature described the difference between a standard detachable ammunition magazine and a magazine lock with a bullet button feature as a "loophole."  S.B. 880 Hearing at 3, 4.

S.B. 880 was proposed in response to a December 2015 mass shooting in San Bernardino, where two assailants used weapons equipped with the bullet button magazine locks to shoot 36 people in less than four minutes.  S.B. 880 Hearing at 8.  The bill amends the definition of assault weapons pursuant to section 30515 so that, rather than referring to

_____

[2] The California Supreme Court upheld these amendments in the face of Equal Protection, separation of powers, and Due Process (vagueness) challenges. *Kasler v. Lockyer*, 23 Cal. 4th 472 (2000).  The Ninth Circuit also upheld the law, finding that the Second Amendment did not provide an individual right to possess a weapon; it dismissed constitutional claims based on the Equal Protection and Takings Clauses and the First Amendment.  *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002).  In *District of Columbia v. Heller,* the Supreme Court largely overruled *Silveira's* Second Amendment analysis, but did not address *Silveira's* Takings analysis.  554 U.S. 570.

weapons "with the capacity to accept a detachable magazine," it refers to a weapon "that does not have a fixed magazine" in combination with other features.[3]  Cal. Penal Code § 30515; S.B. 880 Hearing at 1.  A fixed magazine is defined as "an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action."  Cal. Penal Code § 30515(b).  In particular, a weapon is an assault weapon if it does not have a fixed magazine and has one of the following features: a pistol grip that protrudes conspicuously beneath the action of the weapon; a thumbhole stock; a folding or telescoping stock; a grenade or flare launcher; a flash suppressor; or a forward pistol grip.  Cal. Penal Code § 30515(a)(2)(A)-(F).  By its plain language, the statute does not include weapons with (a) a fixed magazine that have the enumerated features, or (b) weapons with the capacity to accept a detachable magazine that lack any of the enumerated features.

The law provides that a person who, between January 1, 2001 and December 31, 2016, lawfully acquired and possessed a weapon now described by the statute must either: (1) register the weapon prior to July 1, 2018 (Cal. Penal Code §§ 30680, 30900(b)(1)) (the "registration option"); (2) sell the weapon either out of state or to a licensed gun dealer within the state (Cal. Penal Code § 31055); (3) modify the weapon to fix the magazine or remove the enumerated features; or (4) store the weapon outside of the state.  According to the statute, in order to exercise the registration option, an owner must provide "the date the firearm was acquired" and "the name and address of the individual from whom, or business from which, the firearm was acquired." (The "date-and-source requirement[4]") Cal. Penal Code §§ 30680, 30900(b).  If the owner of such a weapon bequeaths it, the devisee has ninety days to render the weapon permanently inoperable, sell it to a licensed

---

[3] Plaintiffs refer to these newly-designated assault weapons as "Category 4" weapons. (FAC ¶ 38.)

[4] Throughout this Order, the Court will refer to the option for a weapon owner to register and keep the weapon as the "registration option."  The requirement that the date and source of acquisition be provided to the government if an owner chooses to exercise the registration option will be referred to as the "date-and-source requirement."

gun dealer, obtain a permit for the weapon, or remove it from the state.  Cal. Penal Code § 30915.

### B.  The Litigation

Plaintiffs brought suit challenging the AWCA, claiming that the law violates the Second Amendment, the Due Process Clause, and the Takings Clause.  (FAC ¶¶ 68-116.)  Plaintiffs are eight individuals[5] and one association, the California Rifle & Pistol Association.  (*Id.* ¶¶ 48-59.)  Of the Individual Plaintiffs, some already own weapons that fall within the definition of assault weapons, and others seek to acquire such weapons.  One of the Individual Plaintiffs, Dennis Martin, owns an assault weapon.  (*Id.* ¶ 56.)  He states that he "will not be able to meet the AWCA's registration requirements because he does not know and has no readily available source to discover: (1) the exact date he acquired the rifle; or (2) the name or address of the individual or business from whom he acquired the rifle."  (*Id.* ¶ 56.)  Martin is the only Individual Plaintiff who asserts such a barrier to meeting the date-and-source requirement.  The California Rifle & Pistol Association has "some . . . members who already legally possess rifles" and who also "do not know and do not have any readily available source to discover" the information necessary to meet the date-and-source requirement.  (*Id.* ¶ 60.)

Plaintiffs object to both the 2016 amendments and the AWCA as a whole.  They seek declaratory relief that the code sections prohibiting possession of semiautomatic firearms are unconstitutional, and injunctive relief enjoining enforcement of the date-and-source requirement.  The code sections at issue are section 30510(a) (defining what Plaintiffs refer to as "Category 1" and "Category 2" rifles, those defined by model); section 30515(a)(1)(A-C) and (E-F) (defining the additional features which, in combination with a non-fixed magazine, render a weapon an "assault weapon"); section 30515(a)(3) (defining weapon by length); section 30520 ("duties of Attorney General,"

---

[5] The FAC names a ninth individual, Douglas Grassey, whom the parties have since stipulated to dismiss.  (*See* Stipulation, Doc. 23; Order Dismissing Grassey, Doc. 26.)

allowing the California Attorney General to designate and/or describe weapons); section 30600 (prohibiting the manufacture, distribution, transportation, importation, sale, gift, or loan of assault weapons); section 30605 (penalties for possession); section 30900(b)(3) (registration option including required provision of date and source of acquisition); section 30925 (required actions for those bringing an assault weapon into the state); and section 30945 (conditions for possessing a registered assault weapon).  The suit also challenges California Code of Regulations, title 11, section 5499, which lists the assault weapons defined by Penal Code section 30510(f).  The prayer for relief asks the Court to declare the code sections "unconstitutional facially and to the extent they apply to 'assault weapons' or, alternatively, to the extent they prohibit any semi-automatic, centerfire rifle with a detachable magazine having a 'pistol grip,' 'flash suppressor,' 'thumbhole stock,' or 'telescoping' stock, or any semi-automatic, centerfire rifle that is over 26 inches in overall length."  These features are defined in the statute and in regulations as follows:

- A "pistol grip that protrudes conspicuously beneath the action of the weapon," Cal. Penal Code section 30515(a)(1)(A), "allows for a pistol style grasp in which the web of the trigger hand (between the thumb and index finger) can be placed beneath or below the top of the exposed portion of the trigger while firing."  Cal. Code Regs. tit. 11, § 5471(z).  Plaintiffs describe this feature as one that "allows for a more comfortable and stable grip, which in turn promotes accuracy when shooting." (FAC ¶ 9.)  Moreover, it "lessens recoil" and "minimizes the chance that a rifle will slip out of the user's hand while firing, further increasing safety, improving accuracy, and preventing stray shots."  (*Id.*)

- A thumbhole stock is "a stock with a hole that allows the thumb of the trigger hand to penetrate into or through the stock while firing."  Cal. Code Regs. tit. 11, § 5471 (qq).  Plaintiffs state that a thumbhole stock "makes it easier for a user to have a more comfortable and stable grip, which provides for greater accuracy and decreases the risk of dropping the weapon or firing stray shots."  (FAC ¶ 10.)

6

- A flash suppressor is "any device attached to the end of the barrel, that is designed, intended, or functions to perceptibly reduce or redirect muzzle flash from the shooter's field of vision." Cal. Code Regs. tit. 11, § 5471(r). Plaintiffs write that a function of this device "is to reduce recoil and muzzle (tip of the barrel) movement, making the rifle less painful for the user to operate and increasing accuracy." (FAC ¶ 11.)

- A telescoping stock is one that "is shortened or lengthened by allowing one section to telescope into another portion." Cal. Code Regs. tit. 11, § 571(oo). Plaintiffs describe its purpose as "fit[ting] the particular user's arm length, making it easier, thus safer, to shoot." (FAC ¶ 12.)

Plaintiffs make no allegations about the definition, safety, accuracy, or functional differences between a detachable, fixed, or bullet button magazine.

Defendant moves to dismiss Plaintiffs' Due Process and Takings claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (MTD at 2.) Plaintiffs seek a preliminary injunction of enforcement of the date-and-source requirement. (PI Mem. at 1, Doc. 24-1.) The Court held oral argument on both motions.

## III.   **MOTION TO DISMISS**

In their Motion for Preliminary Injunction, Plaintiffs argue that an injunction is proper because they have demonstrated a likelihood of success on the merits for all three causes of action. (PI Mem. at 14-27.) Defendant moves to dismiss two of these causes of action. (Mem. re MTD at 32.) Because resolution of the Motion to Dismiss disposes of some of the proffered grounds for issuing an injunction, the Court addresses the Motion to Dismiss first.

### A. **Legal Standard**

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Furthermore, courts must draw all reasonable inferences in the light most

favorable to the non-moving party.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Although a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  Thus, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[,]" and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Discussion

At the outset, the parties disagree as to the nature of Plaintiffs' challenge. Defendant asserts that Plaintiffs bring a facial challenge.  (Mem. re MTD at 8.)  Plaintiffs allege that the AWCA's "definition of 'assault weapon' . . . violates the Due Process Clause" because it is not rationally related to a legitimate government purpose.  (FAC ¶ 108.)  They claim that the date-and-source requirement in particular violates the due process rights of plaintiffs who "cannot provide historical details of acquisition that they were under no obligation to keep or record at the time."  (*Id.* ¶ 112.)  Plaintiffs challenge the law's conditions for devisees of assault weapons as violative of the Takings Clause. Moreover, they assert that the date-and-source requirement implicates the Takings Clause for weapons owners who have no way of obtaining the required information.  (*Id.* ¶¶ 114-116.)  At oral argument, counsel for Plaintiffs argued that the Takings Clause and

Due Process challenges were as-applied challenges to the date-and-source requirement and conditions for devisees, and that Plaintiffs also asserted a facial challenge because the statute limits the possessory options of the owner.  The Court concludes that Plaintiffs have indeed brought both facial and as-applied challenges: the FAC contains assertions both that the law on its face violates the Constitution, and that the application of the 2016 amendments to a subset of Plaintiffs is unconstitutional.  Accordingly, the Court will address standing and ripeness for the as-applied challenges before turning to the merits of the facial challenges.

### 1. <u>Standing and Ripeness of As-Applied Challenges</u>

The Court concludes that Plaintiffs' as-applied challenges to the date-and-source requirement and conditions on possession for devisees are not ripe.  An as-applied Takings Clause claim is not ripe where a plaintiff "has not yet obtained a final decision regarding the application of the . . . ordinance and . . . regulations to [his] property."  *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985).  The same applies to a Due Process claim.  *Id*. at 199 (explaining that "even if viewed as a question of due process, respondent's claim is premature").  The FAC does not include allegations of a single person who tried to register his or her weapon and thereafter was denied a permit.  Nor does the FAC include facts that would support Plaintiffs' assertion that any such attempt "to register [the] weapons would be futile."  (MTD Opp. at 16, Doc. 21.)  Plaintiffs make a number of conclusory assertions in their FAC, including that Martin "has no readily available source to discover" the required information and that many members of the California Rifle & Pistol Association are in the same position.  (FAC ¶¶ 56, 60.)  These assertions are insufficient to show that an attempt to register is an unnecessary "exercise[] in futility" for purposes of standing.  *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002).[6]

---

[6] After oral argument and the submission of the matter for decision, Plaintiffs requested leave to file a Supplemental Martin Declaration to support their Motion for Preliminary

1    Accordingly, the Court concludes that the as-applied challenges brought pursuant to

2   the Due Process and Takings Clauses are not ripe for review.  The Court considers these

3   claims only to the extent they amount to facial attacks.

4                    **2.    Due Process Claim**

5    Plaintiffs argue that the AWCA and the 2016 amendments cannot survive

6   rationality review required by the Due Process Clause because they are arbitrary and do

7   not further any permissible governmental objective.  (FAC ¶ 86.)  Moreover, they argue

8   that the date-and-source requirement retroactively criminalizes conduct that was legal

9   when it was undertaken and should be analyzed with heightened scrutiny.  (*Id.* ¶ 87; Opp.

10  at 28-29.)  Defendants move to dismiss the Due Process claim, contending that the

11  amendments survive rationality review and accordingly are not arbitrary.  (Mem. re: MTD

12  at 18.)  Further, they argue that the legislation does not create retroactive liability.  (Reply

13  at 13, Doc. 33.)

14                   **a.  Rationality Review Standard**

15   "[A] regulation that fails to serve any legitimate government objective may be so

16  arbitrary or irrational that it runs afoul of the Due Process Clause."  *Lingle v. Chevron*

17  *U.S.A. Inc.*, 544 U.S. 528, 542 (2005).  A statute may be unconstitutional on substantive

18  due process grounds if its "provisions are clearly arbitrary and unreasonable, having no

19  substantial relation to the public health, safety, morals, or general welfare."  *Vill. of Euclid,*

20  *Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926); *see also Kim v. United States*, 121

21  F.3d 1269, 1273 (9th Cir. 1997).  "Legislative acts that do not impinge on fundamental

22  rights or employ suspect classifications are presumed valid, and this presumption is

23  overcome only by a 'clear showing of arbitrariness and irrationality.'"  *Kawaoka v. City of*

24  _____

25
26  Injunction.  It is both too little and too late.  First, there is no valid reason for Plaintiffs' failure to
    include such facts in connection with their motion.  Second, although some of the facts alleged
27  therein relate to Martin's attempts to find the required information for registration, those facts are
    still insufficient to show ripeness.  Finally, as to the Motion to Dismiss, it would be improper for
28  the Court to consider facts extraneous to the FAC.

*Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994) (quoting *Hodel v. Indiana*, 452 U.S. 314, 331-32 (1981)) (applying rationality review to claimed property right).  There is no requirement that the statute "actually advance its stated purposes." *Id*.  A legislative act "does not violate substantive due process as long as it advances any legitimate public purpose . . . and if it is 'at least fairly debatable' that the [legislative choice] was rationally related to legitimate governmental interests," it must be upheld.  *Id*. (quoting *Christensen v. Yolo County Bd. of Supervisors*, 995 F.2d 161, 165 (9th Cir. 1993)).

If the law survives rationality review, then Plaintiffs cannot, as a matter of law, state a Due Process claim.  Accordingly, the Court will determine whether the AWCA survives rationality review by determining whether the legislature had a legitimate government objective in enacting the AWCA, and whether the legislature could have believed at the time of enactment that the statute would promote that objective.[7]

### b. <u>Legitimate Government Objective</u>

The Court concludes that the legislature has articulated a legitimate government objective for the AWCA.  It is beyond question that promoting public safety and reducing incidents of gun violence are legitimate government objectives, as the Ninth Circuit, like many other circuits, has found these interests not merely legitimate but substantial or compelling.  *See, e.g.*, *Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015); *Silvester v. Harris*, 843 F.3d 816, 827 (9th Cir. 2016), *cert. denied sub nom. Silvester v. Becerra*, 138 S.Ct. 945 (2018); *Kolbe v. Hogan*, 849 F.3d 114, 139 (4th Cir. 2017); *N.Y.S. Rifle and Pistol Ass'n, Inc. v. Cuomo,* 804 F.3d 242, 261 (2d Cir. 2015) (holding it "beyond cavil" that such interests are compelling).

---

[7] The Ninth Circuit has upheld district court 12(b)(6) dismissals based on findings that the law at issue survives rationality review.  *See, e.g., Taylor v. Rancho Santa Barbara*, 206 F.3d 932, 937-38 (9th Cir. 2000); *Kahawaiolaa v. Norton*, 386 F.3d 1271 (9th Cir. 2004); *Nat'l Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F.3d 1043 (9th Cir. 2000).

In enacting the AWCA, the legislature found that the firearms categorized as assault weapons have "such a high rate of fire and capacity for firepower that [their] function as . . . legitimate sports or recreational firearm[s] is substantially outweighed by the danger that [they] can be used to kill and injure human beings."  Cal. Penal Code section 30505(a).  The AWCA's legislative history shows that the 2016 amendments were directly motivated by the 2015 mass shooting in San Bernardino, where the shooters used weapons with "bullet buttons" intended to circumvent prior iterations of the AWCA.  California Bill Analysis, S.B. 880 Assem. at 8.[8]  These legislative findings support that the legislature had a legitimate government objective to promote public safety when enacting and amending the AWCA.

Accordingly, as a matter of law, the requirement that the legislature have a legitimate government objective is met.

### c.  <u>Rational Relationship</u>

Having found that a legitimate government objective exists, the Court then determines whether it is at least "fairly debatable" that the legislation promotes that objective.  *Kawaoka*, 17 F.3d at 1234.

Plaintiffs assert that there are two arbitrary and therefore irrational features of the law: the definition of assault weapons, and the date-and-source requirement.  They contend that the multi-part definition that defines weapons by model *or* by feature "prohibit[s] rifles with a fixed magazine due to their maker's marks, regardless of their features, while permitting effectively identical rifles with non-fixed magazines, as long as they do not have the prohibited features."  (FAC ¶ 86.)  As outlined above in the descriptions of the

---

[8] The Court takes judicial notice of the legislative history pursuant to Federal Rule of Evidence 201.  *See Zephyr v. Saxon Mortg. Servs., Inc.*, 873 F. Supp. 2d 1223, 1226 (E.D. Cal. 2012).  In ruling on a 12(b)(6) motion, a court "'may take judicial notice of matters of public record' without converting a motion to dismiss into a motion for summary judgment."  *Id.* (quoting *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001)).

weapons, Plaintiffs allege that the features "improve accuracy," reduce recoil, or make the weapons more comfortable to use.  They contend that the features do not increase the rate of fire or capacity for firepower.  (*Id*. ¶¶ 13-14.)  From these allegations of fact, they make the following conclusions: the features "facilitat[e] the rifle's safe and effective operation when used for a lawful purpose such a self-defense," rifles with these features "are no more dangerous or susceptible to use for criminal purposes than those without them," (*Id.* ¶¶ 13-14, 17), none of the features make the rifles more dangerous or "raise[] their likelihood of use in crimes," and the features "enhance public safety by making rifles safer, more accurate, and more effective for use in self-defense," (*Id*. ¶ 81).  Plaintiffs conclude, therefore, that the features in question make the weapons safe for the lawful purpose of self-defense.

However, the legislature concluded that the accuracy and ease of use afforded by these features, far from making the weapons safer, made them *more* dangerous.  For example, in passing Senate Bill 880, the bill's supporters described the detachable magazine as "what made [the] weapon such an effective tool of mass murder."  California Bill Analysis, S.B. 880 Assem. at 6.  The AWCA describes the firearms categorized as assault weapons as having "such a high rate of fire and capacity for firepower that [their] function as . . . legitimate sports or recreational firearm[s] is substantially outweighed by the danger that [they] can be used to kill and injure human beings."  Cal. Penal Code section 30505(a).  The Court concludes that it is at least "fairly debatable" that restricting features that make such weapons more accurate and easier to use would promote the legitimate government purpose of public safety.  Plaintiffs may disagree with the legislature's conclusions, but that disagreement does not make the law irrational.

Further, that the features-based definition does not include all of the combinations of features present in every weapon on the Category 1 and 2 lists says nothing about the relative safety of the weapons.  Plaintiffs argue that the inconsistency between categories renders the law fatally arbitrary, but offer no facts as to why one configuration or

1   combination of features is necessarily safer than another.  Therein lies the problem;

2   Plaintiffs address the features in isolation, yet the features are prohibited only *in*

3   *combination* with a non-fixed magazine.  Without facts about safety concerns as to

4   combined features or why one combination is safer than another, Plaintiffs' conclusion is

5   without support.  Moreover, the legislature is permitted to reform its gun control regime

6   incrementally; the lists need not have identical coverage to be rational.  "[A] legislature

7   traditionally has been allowed to take reform 'one step at a time, addressing itself to the

8   phase of the problem which seems most acute to the legislative mind.'"  *McDonald v. Bd.*

9   *of Election Comm'rs of Chicago*, 394 U.S. 802, 809 (1969) (quoting *Williamson v. Lee*

10  *Optical of Oklahoma, Inc.*, 348 U.S. 483, 489 (1955)).  *See also F.C.C. v. Beach*

11  *Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (holding that "a legislative choice is not subject

12  to courtroom fact-finding and may be based on rational speculation unsupported by

13  evidence or empirical data").

14       The Court's conclusion that the AWCA survives rationality review comports with

15  widespread judicial consensus that restrictions on semi-automatic weapons bear a rational

16  relationship to the objective of public safety.  *See, e.g., Kasler v. Lockyer*, 23 Cal. 4th 472,

17  491 (2000); *Richmond Boro Gun Club, Inc. v. City of New York*, 97 F.3d 681, 688 (2d Cir.

18  1996); *Olympic Arms v. Magaw*, 91 F. Supp. 2d 1061, 1075 (E.D. Mich. 2000); *Coalition*

19  *of New Jersey Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 686 (D.N.J. 1999)

20  (explaining that the "rational link between public safety and a law proscribing possession

21  of assault weapons is so obvious that it would seem to merit little discussion"); *Benjamin*

22  *v. Bailey*, 234 Conn. 455, 479-80 (1995); *Robertson v. City and County of Denver*, 874

23  P.2d 325, 333 (Colo. 1994) (severing provision found unconstitutionally vague and

24  upholding remainder of ordinance on rationality review).

25       Accordingly, as a matter of law, the Court concludes that the AWCA survives

26  rationality review.  Therefore, Plaintiffs' claim that the statute violates the Due Process

27  clause as irrational or arbitrary fails.

28

### d.  Retroactive Liability

Finally, the Court concludes that Plaintiffs mischaracterize the date-and-source requirement as retroactive.  It does not criminalize *past* conduct, but creates future liability should an individual not comply with the regulation beginning in July 2018.  In the Ninth Circuit, courts apply a two-step framework to determine if a law has a retroactive effect: "[f]irst, we determine whether the statute or regulation clearly expresses that the law is to be applied retroactively . . . [i]f not, we consider whether application of the regulation would have a retroactive effect by 'attach[ing] new legal consequences to events completed before its enactment.'"  *Sacks v. S.E.C.*, 648 F.3d 945, 951 (9th Cir. 2011) (citations omitted).  The date-and-source requirement does not apply retroactively, as it gives owners until July 1, 2018 to comply with the law.  Moreover, the date-and-source requirement is triggered only if a weapons owner chooses to exercise the registration option.  Weapons owners are afforded a variety of ways to comply with the law: they may also store the weapon out of state, sell it, or modify it.  As to the second prong, the date-and-source requirement does not create a legal consequence for past ownership of a weapon, nor does it make it unlawful to have misplaced or failed to keep records of one's transactions.  Rather, it places a condition on *continued* possession of the weapon, and offers multiple avenues to avoid *prospective* criminal liability.  It cannot be said that the law creates retroactive liability.  Accordingly, no scrutiny more stringent than rationality review is due.

### e.  Conclusion as To Due Process Claim

Plaintiffs have failed to show that the law is impermissibly irrational, and the Court concludes that, as a matter of law, the AWCA survives rationality review.  Plaintiffs have also not shown that it retroactively criminalizes past conduct.  Accordingly, the Court DISMISSES Plaintiffs' Due Process Clause claim.

### 3. __Takings Clause Claim__

Plaintiffs argue that the AWCA enacts both a physical and regulatory taking.  (FAC ¶ 115.)  They assert that the law prevents them from bequeathing their weapons to family members and severely constrains their property rights in the weapons by forbidding their sale or transfer.  (*Id*. ¶¶ 114-15.)  Defendants argue that Plaintiffs' Taking Clause claim fails as a matter of law, because the law is a valid exercise of the state's police power. (Mem re: MTD at 13.)

The Takings Clause of the Fifth Amendment provides that "private property shall not 'be taken for public use, without just compensation.'"  *Lingle*, 544 U.S. at 536.  A physical taking occurs "[w]hen the government physically takes possession of an interest in property for some public purpose."  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002).  If there is no physical dispossession of property for a public purpose, a regulation may still function as a "regulatory" taking.  A regulatory takings challenge is governed by the *Penn Central* factors, "including the regulation's economic impact on the claimant, the extent to which it interferes with distinct investment-backed expectations, and the character of the government action."  *Lingle*, 544 U.S. at 528-29 (citing *Penn. Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)).  "If [an] ordinance is otherwise a valid exercise of the [government's] police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional."  *Goldblatt v. Town of Hempstead, N.Y.*, 369 U.S. 590, 592 (1962) (citations omitted).  However, "governmental action in the form of regulation [can] be so onerous as to constitute a taking which constitutionally requires compensation."  *Id*. at 594 (citation omitted).

In *Mugler v. Kansas*, the Supreme Court articulated a police power exception to the Takings Clause, holding that "[a] prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking."  123 U.S. 623, 668 (1887).

Courts have applied this principle to find that there is no taking where the government regulates the sale and manufacture of firearms, *Akins v. United States*, 82 Fed. Cl. 619, 623-24 (2008), and no taking where machine guns denied registration had to be sold, surrendered, or disposed of, *Fesjian v. Jefferson*, 399 A.2d 861, 866 (D.C. 1979).  *See also AmeriSource Corp. v. United States*, 525 F.3d 1149 (Fed. Cir. 2008) (no taking where government seized and retained prescription drugs pursuant to criminal investigation and they expired before being returned to owners).

The standard the Supreme Court created in *Lucas v. South Carolina Coastal Council* clarifies the line between compensable takings and restrictions on property that were exercises of police power:

> It seems to us that the property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers; "[a]s long recognized, some values are enjoyed under an implied limitation and must yield to the police power[]" . . .  In the case of land, however, we think the notion pressed by the Council that title is somehow held subject to the "implied limitation" that the State may subsequently eliminate all economically valuable use is inconsistent with the historical compact recorded in the Takings Clause that has become part of our constitutional culture.

505 U.S. 1003, 1027-28 (1992) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922)).  Thus, legislation pursuant to the police power is generally not a taking, but there are exceptions under certain limited circumstances, such as where *land* will no longer have any economically valuable use.

In *Silveira v. Lockyer*, the Ninth Circuit found that the "grandfather clause that permits [plaintiffs] to use the weapons in a number of reasonable ways so long as they register them with the state" was sufficient to show that the legislation was not "a

17

compensable taking."  312 F.3d 1052, 1092 (9th Cir. 2002), *abrogated on other grounds by District of Columbia v. Heller*, 554 U.S. 570 (2008).   The Ninth Circuit found as much even though plaintiffs alleged that the value of their weapons was reduced, which Plaintiffs do not allege here.  *Id.*  Plaintiffs do not dispute that this holding is binding authority on this Court.

The Court is persuaded that the AWCA represents an exercise of police power and is not a taking.  The AWCA does not compel conveyance of the guns for public use, but regulates possession of an object the legislature has found to be dangerous.  The law offers a number of options to lawful gun owners that do not result in the weapon being surrendered to the government.  (FAC ¶¶ 43, noting that Category 3 and 4 weapons may be modified or registered.)  Plaintiffs are not, in every case, physically dispossessed of their weapons, and they have not put forth sufficient facts to show that the options that permit retention of the weapons, such as modification, operate as takings.  Accordingly, Plaintiffs have not, as a matter of law, pleaded a facial takings claim.

Nor is the Court persuaded that the conditions placed upon devisees of weapons act as a taking.  As a preliminary matter, the statute does not *prohibit* bequeathment; rather, it places conditions upon what a devisee may do if she is bequeathed an assault weapon.  Moreover, a facial challenge to the statute based on bequeathment fails.  There are any number of weapons owners whose ability to bequeath their weapons would not be implicated: some devisees may live in states where they are able to possess the weapons, while other devisees may have been convicted of a felony and therefore could not inherit such a weapon irrespective of this legislation.  As a matter of law, then, Plaintiffs have not established that the law's enactment facially violates the Takings Clause.

The Court further concludes that Plaintiffs' reliance on *Andrus v. Allard*, 444 U.S. 51 (1979), is misplaced.  In *Andrus*, the Supreme Court concluded that a prohibition on the sale of endangered bird parts did not violate the Takings Clause, noting that "[i]n this case, it is crucial that appellees retain the rights to . . . devise the protected birds."  *Id*. at 66.  But

while an owner of protected bird parts can do nothing to render those bird parts something other than what they are, the AWCA offers weapons owners an opportunity to modify their weapons so that they are no longer subject to the bequeathment regulations.  What is more, *Andrus* does not create a generally applicable rule about the centrality of bequeathment rights to a Takings Clause analysis: the Supreme Court clearly stated that the ability to devise the bird parts was crucial "[i]n this case."  *Id.*  It is far from clear that it is appropriate to analyze assault weapons in the same way as endangered bird parts.

Accordingly, the Court DISMISSES the Takings Clause claim.

### 4.  <u>Leave to Amend</u>

Plaintiffs request leave to amend in the event of dismissal.  Facial claims of violation of the Due Process and Takings Clause are dismissed as a matter of law, and amendment would therefore be futile.  The Court grants leave to amend only to the extent Plaintiffs can allege additional facts to show standing and ripeness of their as-applied challenges to the date-and-source requirement and conditions on devisees.  The Court advises Plaintiffs that such amendment would be futile if the new facts alleged in the proposed Supplemental Martin Declaration represent the universe of additional facts they intend to include.  Martin's bare assertion that he is unable to find the information through a review of his files and electronic correspondence does not plausibly support his conclusion that there is "no readily available source to discover" the information.  (Mot. for Leave Ex. A, Suppl. Decl. ¶¶ 6-7, 9, Doc. 41.)

## IV.   <u>MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiffs move to enjoin the date-and-source requirement for registration "until such time as [the] Court can fully adjudicate the many grave constitutional problems that this requirement creates."  (PI Mem. at 2.)  As the Court has already granted Defendant's motion to dismiss the Due Process and Takings Clause claims, the Court determines only whether Plaintiffs are entitled to a preliminary injunction based on their Second Amendment claims.

1

2        **A. <u>Legal Standard</u>**

3            "A preliminary injunction is an extraordinary and drastic remedy." *Munaf v.*

4    *Geren*, 553 U.S. 674, 676 (2008) (internal quotations marks omitted).  "The purpose of a

5    preliminary injunction is merely to preserve the relative positions of the parties until a trial

6    on the merits can be held." *Univ. of Tex v. Camenisch*, 451 U.S. 390, 395 (1981).  A

7    district court should issue a preliminary injunction only "upon a clear showing that the

8    plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22

9    (2008).  This requires the district court to make findings of fact and conclusions of law.

10   *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1157 (9th Cir. 2007); s*ee also*

11   *Hicks v. Neal*, No. C 12-2207 SI (PR), 2012 WL 3791399, at *3 (N.D. Cal. Aug. 31, 2012)

12   ("In other words, the movant has to demonstrate, not merely allege, his entitlement to a

13   preliminary injunction. . . . [A]llegations that may be sufficient for pleading purposes

14   simply are not enough to prove his entitlement to a preliminary injunction.").

15           "[T]he party seeking the injunction . . . bear[s] the burden of demonstrating the

16   various factors justifying preliminary injunctive relief . . . ." *Granny Goose Foods, Inc. v.*

17   *Bhd. of Teamsters*, 415 U.S. 423, 441 (1974).  "A plaintiff seeking a preliminary injunction

18   must establish that he is likely to succeed on the merits, that he is likely to suffer

19   irreparable harm in the absence of preliminary relief, that the balance of equities tips in his

20   favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. This

21   "requires the plaintiff to make a showing on all four prongs." *Alliance for the Wild*

22   *Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

23           **B. <u>Discussion</u>**

24           Plaintiffs contend that they have shown a likelihood of success on the merits on

25   their Second Amendment claim because the date-and-source requirement burdens the core

26   Second Amendment right and survives neither strict nor intermediate scrutiny.  (PI Mem.

27   at 22-26.)  They assert that Plaintiffs would suffer irreparable harm to their constitutional

28

1  rights if they are unable to retain their weapons.  (*Id*. at 27-28.)  Because constitutional

2  rights are implicated, they contend, an injunction is in the public interest.  (*Id*. at 29.)

3  Finally, they argue that the balance of the hardships tips in their favor because the

4  injunction would simply maintain the status quo.  (*Id*. at 30.)

5       Defendant disputes that Plaintiffs have standing to challenge the date-and-source

6  requirement, both because Plaintiffs have not presented sufficient evidence as to an actual

7  or imminent injury, and because the alleged injury is not "fairly traceable" to the date-and-

8  source requirement.  (PI Opp. at 13-15, Doc. 27.)  As to the likelihood of success on the

9  merits, Defendants counter that the date-and-source requirement for assault weapons does

10  not implicate the core Second Amendment right, and in any case survives intermediate

11  scrutiny.  (*Id*. at 23-29.)  They argue that because Plaintiffs lack standing, there is an

12  insufficient showing of irreparable harm.  (*Id*. at 30.)  Finally, Defendants assert that

13  neither the public interest nor the balance of equities support the requested injunction.  (*Id*.

14  at 30-31.)

15       **1.    Likelihood of Success on the Merits**

16       Plaintiffs argue that the regulation plainly burdens the Second Amendment right,

17  and that the regulation will discourage lawful owners from registering their weapons

18  because they lack some of the required information.  (PI Mem. at 26.)  Moreover, it might

19  mean that some lawful gun owners choose to dispossess themselves of their weapons

20  rather than attempt to register them, store them out of state, or modify them.  (*See* Martin

21  Decl., Doc. 24-5)  Defendants assert that the purpose of the date-and-source requirement is

22  to help the California Department of Justice ascertain that existing weapons of the type

23  banned by the AWCA are eligible to be registered and lawfully possessed.  (Graham Decl.

24  ¶¶ 26-28, Doc. 28.)

25       **a.  Level of Scrutiny**

26       In *Heller*, the Supreme Court held that the Second Amendment conferred an

27  individual right to keep and bear arms.  554 U.S. at 595.  The Ninth Circuit applies the

28

following two-step inquiry to Second Amendment challenges: "(1) the court 'asks whether the challenged law burdens conduct protected by the Second Amendment,'; and (2) if so, what level of scrutiny should be applied." *Fyock*, 779 F.3d at 996 (quoting *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)).  Intermediate scrutiny is appropriate "if the regulation at issue does not implicate the core Second Amendment right *or* does not place a substantial burden on that right." *Id.* at 998-99 (quoting *Jackson v. City and County of S.F.*, 746 F.3d, 953, 964 (9th Cir. 2013)).

Assuming without deciding that individual ownership of semi-automatic weapons implicates a core Second Amendment right,[9] the Court must determine the appropriate level of scrutiny.  Every circuit to have encountered statewide bans on semi-automatic weapons designated as assault weapons has applied intermediate scrutiny.  *See Heller v. District of Columbia* (*Heller II*),  670 F.3d, 1244 1262 (D.C. Cir. 2011) (prohibition on possession of certain semiautomatic weapons merited intermediate scrutiny as it "left a person 'free to possess any otherwise lawful firearm'" (quoting *United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010))); *Kolbe*, 849 F.3d at 138 (4th Cir. 2017) (ban on certain military-style weapons and detachable magazines left "citizens free to protect themselves with a plethora of other firearms and ammunition"); *N.Y.S. Rifle and Pistol Ass'n, Inc.*, 804 F.3d at 260 (holding that a prohibition on some semiautomatic weapons identified by feature was not a ban on an entire class of arms therefore "[t]he burden imposed by the challenged legislation [was] real, but . . . not 'severe'"); *Friedman v. City of Highland Park, Illinois*, 784 F.3d 406, 411 (7th Cir. 2015) (applying intermediate scrutiny as the ban on assault weapons "leaves residents with many self-defense options").

---

[9] The Ninth Circuit has not specifically addressed this issue post-*Heller*, but other circuits have questioned whether bans on certain assault weapons implicate the Second Amendment. *See, e.g.*, *Heller II* 670 F.3d at 1262; *Kolbe*, 849 F.3d at 137.  However, those decisions came at summary judgment when the deciding district courts had a full factual record available for review.  At this stage and for the purposes of this Order, the Court will assume, without deciding, that the first step of the Ninth Circuit test is met.

1       The Court likewise concludes that intermediate scrutiny is appropriate in this

2  instance because, regardless of whether the regulation implicates the core Second

3  Amendment right, the date-and-source requirement does not place a substantial burden on

4  that right.  The date-and-source requirement simply regulates the manner in which persons

5  may exercise their Second Amendment rights; it does not eliminate them.  Should weapons

6  owners be unable to exercise the registration option and choose to dispossess themselves

7  of their assault weapons, they would remain free to choose any weapon that is *not*

8  restricted by the AWCA or another state law.  In other words, even if the date-and-source

9  requirement operated as an outright ban, Plaintiffs would be left with myriad options for

10  self-defense—including the handgun, the "quintessential" self-defense weapon per *Heller*.

11  Because even an outright ban on certain types of semiautomatic weapons does not

12  substantially burden the Second Amendment right, enacting a date-and-source requirement

13  as a condition of the grandfathering registration option falls far short of the substantial

14  burden necessary to trigger strict scrutiny.  Accordingly, the Court applies intermediate

15  scrutiny.

### b.  Application of Intermediate Scrutiny

17       The Ninth Circuit's test for intermediate scrutiny instructs that "(1) the

18  government's stated objective must be significant, substantial, or important; and (2) there

19  must be a 'reasonable fit' between the challenged regulation and the asserted objective."

20  *Silvester*, 843 F.3d at 821-22 (quoting *Chovan*, 735 F.3d at 1139).  The state need not

21  "show that [the regulation] is the least restrictive means of achieving its interest."  *Fyock*,

22  779 F.3d at 1000 (citation omitted).  Rather, the state is "required to show only that [the

23  regulation] promotes a 'substantial government interest that would be achieved less

24  effectively absent the regulation.'"  *Id*. (quoting *Colacurcio v. City of Kent*, 163 F.3d 545,

25  553 (9th Cir. 1998)).  The stated objective of the AWCA is to promote public safety and

26  prevent gun violence, and the date-and-source requirement in particular is aimed at

27  assisting the California Department of Justice to ascertain that existing weapons of the type

28

banned by the AWCA are eligible to be registered and lawfully possessed.  (Graham Decl. ¶¶ 26-28.)  As discussed above, it is beyond question that the government's interest in promoting public safety and reducing gun violence is important or substantial.  *See, e.g.*, *Fyock*, 779 F.3d at 1000; *Silvester*, 843 F.3d at 827; *Kolbe*, 849 F.3d at 139; *N.Y.S. Rifle and Pistol Ass'n, Inc.,* 804 F.3d at 261.

Plaintiffs argue that the regulation "not only is not reasonably tailored to further [these objectives], but actually impedes them" because it will discourage lawful gun owners who lack the date and source of their acquisition from registering their weapons. (PI Mem. at 26.)  This argument fails in its premise, namely, that the registration of weapons by owners who have no date or source information promotes safety more than it would be promoted by requiring the weapons owner to use one of the law's other available options (sale, out-of-state storage, or modification).  Plaintiffs describe a false choice between registration and being deprived of their weapons, when the legislature has made other options available.

Moreover, the government need only establish a *reasonable* fit, not narrow or close tailoring.  *Fyock*, 779 F.3d at 1000.  A reasonable fit is established if the government's objective will be achieved "less effectively absent the regulation." *Id*. (quoting *Colacurcio*, 163 F.3d at 553.  Requiring the date and source information helps California Department of Justice to more effectively determine whether a firearm is lawfully possessed, and the law's objective would be less effectively achieved without this requirement.  (Graham Decl. ¶¶ 26-28.)  Thus, Defendant has established a reasonable fit.

Accordingly, the Court concludes that Plaintiffs have not established a likelihood of success on the merits of this claim.

### 2.      Irreparable Injury

The Court also concludes that Plaintiffs have not demonstrated a likelihood of irreparable injury.  A plaintiff must support his request for a preliminary injunction with evidence that will "demonstrate, not merely allege, his entitlement to a preliminary

injunction . . . allegations that may be sufficient for pleading purposes simply are not enough to prove . . . entitlement to a preliminary injunction." *Hicks*, 2012 WL 3791399, at *3. The Court must tailor an injunction "to remedy the specific harm alleged . . . an overbroad preliminary injunction is an abuse of discretion." *Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007) (citing *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991)).

The conclusions offered in the declarations of Martin and the California Rifle & Pistol Association do not "demonstrate" that Plaintiffs will experience irreparable harm stemming from the date-and-source requirement. Nor would they allow the Court to tailor an injunction to the specific injury alleged. Martin alleges that he has "no readily available source" to discover the date he acquired his weapon nor the name or address of the individual or business from whom he acquired it, but alleges no steps that he has taken to show that he engaged in due diligence to find the information. Similarly, Richard Travis's declaration on behalf of the California Rifle & Pistol Association alleges that his association has members who will not be able to meet the registration requirements because they "do not have any readily available source to discover" the required information. (Travis Decl. ¶ 5, Doc. 24-2.)   But the Court has no additional facts about any diligence on the part of these members in attempting to get this information, nor why such information is deemed not "readily available." Some members may have misplaced the information; others may have simply not looked through their records which may be in storage; perhaps some engaged in private party transfers. Clearly, the Court has to engage in speculation to determine the scope and source of the alleged harm. This is sufficient neither to justify the extraordinary remedy of injunctive relief nor to allow the Court to properly tailor an injunction. Further, the absence of any facts related to the other options weapons owners have to comply with the law prior to July 1, 2018, such as modifying the weapon, undermines Plaintiffs' position that the date-and-source requirement is the cause of any alleged irreparable harm.

As noted above, Plaintiffs sought to file a supplemental declaration of Dennis Martin ("Supplemental Martin Declaration"). (Motion, Doc. 41.) After reviewing the proposed supplement, the Court concludes that even if it were to consider the additional facts alleged, its determinations about likelihood of success on the merits and adequacy of showing of irreparable harm would not change. Martin alleges that after "reviewing [his] files and electronic correspondence" for one of his weapons, he was unable to locate any records related to his purchase. (Martin Supp'l Decl. ¶ 7.) As to another weapon acquired via a private party transaction, he states that he does "not know when that transaction occurred, the name of the seller, or the California licensed firearms dealer who processed the transaction," nor can he find the information "after reviewing [his] records and electronic correspondence." (*Id.* ¶ 9.) Martin concludes that he will "dispossess" himself of any weapons prior to the registration deadline. (*Id.* ¶ 11.) Martin includes no information about what, if any, burden would result from instead modifying the weapon. Accordingly, the alleged harm is not set forth with sufficient clarity to allow the Court to conclude that such harm stems from the date-and-source requirement. In fact, *no* facts have been alleged as to what it would mean to modify a weapon to either fix the magazine or remove a statutory feature, either as to any economic burden or fundamental change to the weapon. Moreover, as Defendant notes in its Opposition, Martin has not alleged facts to show that he engaged in due diligence such as contacting the California Department of Justice's Bureau of Firearms or the firearm's manufacturer. (Opp. at 4; *see also* Graham Decl. ¶¶ 20-23.) Even if it considered the additional facts presented in the proposed Supplemental Martin Declaration, the Court would conclude that Plaintiffs have not made an adequate showing on likelihood of success on the merits or irreparable injury. The Court therefore denies the Motion for Leave as moot.

### 3. <u>Balance of the Hardships</u>

Plaintiffs assert that the government will suffer no harm if it is enjoined from enforcing the date-and-source requirement until the issue has been heard on the merits.

1    Defendant, however, asserts the principle that "[a]ny time a State is enjoined by a court

2    from effectuating statutes enacted by representatives of its people, it suffers a form of

3    irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1301 (2012) (internal quotation

4    marks omitted).  In particular, they contend that an injunction would "cause a concrete

5    harm against the state's law enforcement public-safety interests," including the possibility

6    that "an illegally possessed weapon might be given legal status" thereby "compromis[ing]

7    public safety."  (PI Opp. at 31.)  Defendant also justifiably questions how many people

8    will actually be negatively affected by the date-and-source requirement; while Plaintiffs

9    argue that there are "potentially thousands" of affected individuals, after months of

10   litigation, they have specifically identified only one.  (*Id.*)

11        The Ninth Circuit instructs that when balancing the hardships "of the public interest

12   against a private interest, the public interest should receive greater weight."  *F.T.C. v.*

13   *Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) (internal quotation marks omitted).

14   The Court weighs the burden on Plaintiffs who may choose to dispossess themselves of

15   their weapons rather than selling them, storing them out of state, or modifying them,

16   against that on Defendant, who will be enjoined from enforcing a law intended to increase

17   public safety.  Taking into account the weighing suggested by *F.T.C.*, the Court concludes

18   that the balance tips in favor of Defendant.

19                    **4.   Public Interest**

20        Finally, because the objective of the AWCA is public safety, Plaintiffs fail to show

21   that an injunction would be in the public interest.  *See, e.g., Tracy Rifle & Pistol LLC v.*

22   *Harris*, 118 F. Supp. 3d 1182, 1193 (E.D. Cal. 2015), *aff'd,* 637 F. App'x 401 (9th Cir.

23   2016) (holding that "[t]he costs of being mistaken, on the issue of whether the injunction

24   would have a detrimental effect on handgun crime, violence, and suicide, would be

25   grave.")  Plaintiffs assert that the public interest lies in upholding the Constitution, and

26   contend that there is no possible risk to public safety because anyone who cannot fulfill the

27   date-and-source requirement already has the weapon at issue in their possession.  (PI Mem.

28

at 29.)  However, the point of requiring weapons owners to register or take other action with regards to the assault weapons the state has classified as dangerous is to *immediately* begin to enhance the regulatory regime, not to maintain the status quo.

Accordingly, Plaintiffs have not demonstrated the propriety of injunctive relief, and the Motion for Preliminary Injunction is DENIED.

## V.    <u>CONCLUSION</u>

Accordingly, the Court GRANTS Defendant's Motion to Dismiss, DENIES Plaintiffs' Motion for Preliminary Injunction, and DENIES AS MOOT Plaintiffs' Motion for Leave.  Plaintiffs may amend their complaint as to the Takings and Due Process Clause claims only to the extent that they can allege facts related to the ripeness and standing of an as-applied challenge and to the extent they can do so consistent with their obligations under Federal Rule of Civil Procedure 11.  Any amendments must be made with **twenty-one (21)** days of this order.

Dated:  May 09, 2018

_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE