| | |
|---|---|
| 1 | C. D. Michel – SBN 144258<br>cmichel@michellawyers.com |
| 2 | Sean A. Brady – SBN 262007<br>sbrady@michellawyers.com |
| 3 | Matthew D. Cubeiro – SBN 291519<br>mcubeiro@michellawyers.com |
| 4 | MICHEL & ASSOCIATES, P.C.<br>180 East Ocean Boulevard, Suite 200 |
| 5 | Long Beach, CA 90802<br>Telephone: 562-216-4444 |
| 6 | Facsimile: 562-216-4445 |
| 7 | Attorneys for Plaintiffs |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| STEVEN RUPP, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California,<br><br>　　　　　Defendant. | Case No.: 8:17-cv-00746-JLS-JDE<br><br>**PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:　May 31, 2019<br>Hearing Time:　10:30 a.m.<br>Courtroom:　　10A<br>Judge:　　　　Josephine L. Staton<br><br>[Filed concurrently with Notice of Motion for Summary Judgment, Memorandum of Points and Authorities, Request for Judicial Notice, Declarations of Sean A. Brady, Steven Rupp, Steven Dember, Cheryl Johnson, Christopher Seifert, Alfonso Valencia, Troy Willis, Michael Jones, Dennis Martin, and Richard Travis] |

1

STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

Plaintiffs Steven Rupp, Steven Dember, Cheryl Johnson, Michael Jones, Christopher Seifert, Alfonso Valencia, Troy Willis, Dennis Martin, and the California Rifle & Pistol Association, Incorporated, ("Plaintiffs") respectfully submit the following Statement of Uncontroverted Facts and Conclusions of Law pursuant to Local Rule 56-1.

## I. STATEMENT OF UNCONTROVERTED FACTS

| No. | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 1 | All individual plaintiffs are residents of the State of California. | Willis Decl. ¶ 1; Dember Decl. ¶ 1; Martin Decl. ¶ 1; Rupp Decl. ¶ 1; Valencia Decl. ¶ 1; Johnson Decl. ¶ 1; Seifert Decl. ¶ 1; Jones Decl. ¶ 1. |
| 2 | All individual plaintiffs are law-abiding and are not prohibited from owning firearms under the laws of the United States or the State of California. | Willis Decl. ¶ 2; Dember Decl. ¶ 2; Martin Decl. ¶ 2; Rupp Decl. ¶ 2; Valencia Decl. ¶ 2; Johnson Decl. ¶ 2; Seifert Decl. ¶ 2; Jones Decl. ¶ 2. |
| 3 | All individual plaintiffs have never been found by any law enforcement agency, any court, or any other government agency to be irresponsible, unsafe, or negligent with firearms in any manner. | Willis Decl. ¶ 2; Dember Decl. ¶ 2; Martin Decl. ¶ 2; Rupp Decl. ¶ 2; Valencia Decl. ¶ 2; Johnson Decl. ¶ 2; Seifert Decl. ¶ 2; Jones Decl. ¶ 2. |
| 4 | Plaintiff Troy Willis is a retired reserve officer for the Indio Police Department. | Willis Decl. ¶ 2. |
| 5 | Plaintiffs Willis and Christopher Seifert each lawfully own a semiautomatic, centerfire rifle with a detachable magazine equipped with one or more prohibited features under the AWCA. | Willis Decl. ¶ 3; Seifert Decl. ¶ 3. |

| No. | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 6 | Plaintiff Dennis Martin lawfully owns a semiautomatic, centerfire rifle with a non-fixed magazine that he registered with the California Department of Justice as an "assault weapon." | Martin Decl. ¶ 3. |
| 7 | Plaintiff Martin is prohibited under the AWCA and its related regulations from replacing his firearm's "bullet button" with a standard magazine release, and but for these restrictions would immediately do so. | Martin Decl. ¶ 4. |
| 8 | Plaintiffs Willis, Martin, and Seifert are each prohibited under the AWCA from engaging in certain activities with their registered "assault weapons" that are otherwise lawful with any other firearm not classified as an "assault weapon," and but for these restrictions Plaintiffs Willis, Martin, . . ., and . . . would engage in such activities. | Willis Decl. ¶ 5; Martin Decl. ¶ 5; Seifert Decl. ¶ 4. |
| 9 | Plaintiff Steven Rupp and Michael Jones each own a semiautomatic, centerfire rifle with a non-fixed magazine that they were forced to modify to ensure it was no longer considered an "assault weapon" and therefore lawful to possess in the State of California. | Rupp Decl. ¶ 3; Jones Decl. ¶ 3. |
| 10 | Plaintiffs Rupp and Seifert each lawfully own a frame or "lower receiver" of a firearm that they | Seifert Decl. ¶ 5; Rupp Decl. ¶ 4. |

| No. | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
|  | wish to assemble into fully functioning semiautomatic, centerfire rifles with a detachable magazine and either a pistol grip, flash suppressor, or adjustable stock, or in a configuration that has an overall length of less than 30 inches but more than 26 inches. |  |
| 11 | Plaintiffs Rupp and Seifert are concerned that if multiple intruders attack them while at home, they will be required to immediately reassemble their firearm into such a configuration to effectively protect themselves and others in their home. | Rupp Decl. ¶ 6; Seifert Decl. ¶ 7. |
| 12 | Plaintiffs Rupp and Seifert believe that not being able to immediately assemble their frames or "lower receivers" into such a configuration will impact their ability to effectively defend themselves and others in their home. | Rupp Decl. ¶ 7; Seifert Decl. ¶ 8. |
| 13 | Plaintiffs Alfonso Valencia, Steven Dember, and Cheryl Johnson each would like to acquire a semiautomatic, centerfire rifle with a detachable magazine having one or more of the features that is prohibited by the AWCA to keep in their home for self-defense and other lawful purposes, including hunting, training, and recreation. | Valencia Decl. ¶ 3; Johnson Decl. ¶ 3; Dember Decl. ¶ 3. |

| No. | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 14 | All individual Plaintiffs will be continuously and irreparably harmed by the ongoing deprivation of their individual, fundamental right to possess and use commonly possessed firearms for lawful purposes, including in-home self-defense, without risking criminal prosecution. | Willis Decl. ¶ 6; Martin Decl. ¶ 6; Rupp Decl. ¶ 8; Seifert Decl. ¶ 9; Jones Decl. ¶ 5. |
| 15 | All individual Plaintiffs would like to acquire new semiautomatic, centerfire rifles with a detachable magazine, having one or more of the features that is prohibited by the AWCA, and were it not for the AWCA and fear of prosecution for violating it, would do so. | Willis Decl. ¶ 7; Dember Decl. ¶¶ 3-4; Martin Decl. ¶ 7; Rupp Decl. ¶ 9; Valencia Decl. ¶¶ 3-4; Johnson Decl. ¶¶ 3-4; Seifert Decl. ¶ 10; Jones Decl. ¶ 6. |
| 16 | All individual Plaintiffs who lawfully own "assault weapons" or firearms they were forced to modify in accordance with the AWCA acquired their firearm for use in their home for self-defense and other lawful purposes such as hunting, training, and recreation. | Willis Decl. ¶ 4; Rupp Decl. ¶ 5; Seifert Decl. ¶ 6; Jones Decl. ¶ 4. |
| 17 | Richard Travis is the Executive Director for Plaintiff California Rifle & Pistol Association, Incorporated ("CRPA") | Travis Decl. ¶ 1. |
| 18 | Plaintiff CRPA is a non-profit membership and donor-supported organization classified under IRC section 501(c)(4) and incorporated under the laws of California with its headquarters in | Travis Decl. ¶ 1. |

| No. | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
|  | Fullerton, California. |  |
| 19 | Founded in 1875, CRPA seeks to defend the Second Amendment and advance laws that protect the rights of individual citizens. | Travis Decl. ¶ 2. |
| 20 | Plaintiff CRPA Works to preserve the constitutional and statutory rights of gun ownership, including the right to self-defense, the right to hunt, and the right to keep and bear arms. | Travis Decl. ¶ 2. |
| 21 | Plaintiff CRPA is dedicated to promoting the shooting sports, providing education, training, and organized competition for adult and junior shooters. | Travis Decl. ¶ 2. |
| 22 | Plaintiff CRPA's members include law enforcement officers, prosecutors, professionals, firearms experts, and members of the public. | Travis Decl. ¶ 2. |
| 23 | Plaintiff CRPA works to preserve the constitutional rights of all law-abiding individuals, including the fundamental right to keep and bear commonly owned firearms for the core lawful purpose of self-defense. | Travis Decl. ¶ 3. |
| 24 | Plaintiff CRPA has members who own semiautomatic, centerfire rifles with non-fixed magazines that were forced to register their firearm as an "assault weapon" with the California Department of | Travis Decl. ¶ 4. |

| No. | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
|  | Justice before July 1, 2018. |  |
| 25 | Plaintiff CRPA has members who are prohibited under the AWCA and its related regulations from replacing their firearm's "bullet button" with a standard magazine release, and but for those restrictions would do so. | Travis Decl. ¶ 4. |
| 26 | Plaintiff CRPA also has members who lawfully own semiautomatic, centerfire rifles with detachable magazines with one or more prohibited features under the AWCA, or firearms specifically identified by their make and model as "assault weapons" under the AWCA. | Travis Decl. ¶ 5. |
| 27 | Plaintiff CRPA has members who lawfully own firearms classified as "assault weapons" who are prohibited under the AWCA and related regulations from engaging in certain activities that are otherwise lawful with any other firearm not classified as an "assault weapon," and but for those restrictions would engage in such activities with their firearms. | Travis Decl. ¶ 6. |
| 28 | Plaintiff CRPA has members who, but for the AWCA and its related regulations, would acquire, transfer, and/or possess firearms classified as "assault weapons," and are continuously and irreparably harmed by the ongoing deprivation of their | Travis Decl. ¶ 7. |

| No. | Uncontroverted Facts | Supporting Evidence |
|-----|---------------------|---------------------|
|     | individual, fundamental right to possess and use commonly possessed firearms for lawful purposes, including in-home self-defense, without risking criminal prosecution. |  |
| 29  | Millions of rifles that are prohibited by the AWCA are in the hands of the American people. | Brady Decl., Ex. 2 [Expert Report W. English]; Ex. 7 [Depo. Tr. B. Graham] at 21:13-21, 25:9-15, 28:3-6; Exs. 11-25; Ex. 8 [DOJ Resp. to Seifert's Reqs. for Admission, Set One] at 4; Ex. 10 [DOJ Second Suppl. Resp. to Willis Interrogs., Set One] at 8. |
| 30  | Americans typically choose rifles prohibited by the AWCA for self-defense. | Brady Decl., Ex. 1 [Expert Report of J. B. Boone] at 5; Ex. 2 [Expert Report of W. English] at 4; Ex. 3 [Expert Report of S. Helsley] at 11-12; Exs. 28-29; 35-37. |
| 31  | Americans typically choose rifles prohibited by the AWCA for hunting. | Brady Decl., Ex. 2 [Expert Report of W. English] at 4, 7; Ex. 3 [Expert Report of S. Helsley] at 11-12; Ex. 30-33. |
| 32  | Americans typically choose rifles prohibited by the AWCA for competition. | Brady Decl., Ex. 2 [Expert Report of W. English] at 4; Ex. 3 Expert Report of S. Helsley] at 6; Ex. 22. |
| 33  | Americans typically choose rifles prohibited by the AWCA for target shooting. | Brady Decl., Ex. 2 [Expert Report of W. English] at 4; Ex. 3 [Expert Report of S. Helsley] at 11-12; Ex. 22. |
| 34  | The American public has had access to and has commonly owned semi-automatic, centerfire rifles with detachable magazines for more than a century. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 3-6. |

8
STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW

| No. | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 35 | The AR-15 has been available to the American public since at least 1959. | Brady Decl., Ex. 2 [Expert Report of W. English] at 3; Ex. 3 [Expert Report of S. Helsley] at 6. |
| 36 | The popularity of AR-15 type rifles has increased since its inception. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 11-12. |
| | **Pistol Grips** | |
| 37 | Rifles commonly come standard with a pistol grip. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 7; [Expert Report of W. English] at 3. |
| 38 | Pistol grips for rifles are commonly available aftermarket. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 11; Ex. 44. |
| 39 | Pistol grips do not affect a rifle's rate of fire. | Brady Decl.; Ex. 3 [Expert Report of S. Helsley] at 7-9. |
| 40 | [*SUF 40 intentionally left blank.*] | |
| 41 | Pistol grips do not affect a rifle's capacity to accept ammunition. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 7-9. |
| 42 | Pistol grips do not affect the power of the projectile a rifle discharge. | Brady Decl., Ex. 1 [Expert Report of J. B. Boone] at 5-7; Ex. 3 [Expert Report of S. Helsley] at 7-9. |
| 43 | Pistol grips are not dangerous per se. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 6-9. |
| 44 | The purpose of a pistol grip is to position the "trigger finger" for optimum trigger control and help absorb recoil. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 7. |
| 45 | Pistol grips allow a rifle to be used with one hand. | Brady Decl., Ex. 1 [Expert Report of J. B. Boone] at 12. |
| 46 | Pistol grips can accommodate a disabled person. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 9. |

| No. | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| | **Adjustable Stocks** | |
| 47 | Rifles commonly come standard with an adjustable stock. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 10; [Expert Report of W. English] at 3. |
| 48 | Adjustable stocks for rifles are commonly available aftermarket. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 9; Ex. 45. |
| 49 | A "telescoping stock" allows the user of the rifle to adjust the length of a rifle a couple of inches as conditions dictate and has no material effect on the concealability of the rifle. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 10; Ex. 7 [Depo. Tr. B. Graham] at 81:2-19. |
| 50 | The purpose of a telescoping stock is to allow the user of a rifle to make it a comfortable length for that user's body type or as conditions dictate. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 10; [Depo. Tr. B. Graham] at 94:1-4; 95:19-21. |
| 51 | People of different body sizes may need different length stocks to properly hold a rifle. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 9; Ex. 6 [Depo. Tr. M. Mersereau] at 37:2-11; [Depo. Tr. B. Graham] at 95:19-21. |
| 52 | What clothing a person is wearing may affect what length stock that person needs to properly hold a rifle. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 9; [Depo. Tr. B. Graham] at 94:1-4. |
| | **Flash Suppressors** | |
| 53 | Rifles commonly come standard with a flash suppressor. | Brady Decl., Ex. 2 [Expert Report of W. English] at 3; Ex. 3 [Expert Report of S. Helsley] at 10-11. |
| 54 | Flash suppressors for rifles are commonly available aftermarket. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 11; Ex. 46. |

| No. | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 55 | Flash suppressors do not hide the flash from those in the direct line of fire, but rather from the shooter. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 10; Ex. 5 [Expert Report of B. Graham] at 22, 28; Ex. 6 [Depo. Tr. M. Mersereau] at 56:14-18; Ex. 7 [Depo. Tr. B. Graham] at 103:15-20. |
| 56 | Flash suppressors only have an effect in low-light conditions. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 10; Ex. 6 [Depo. Tr. M. Mersereau] at 56:3-6; [Depo. Tr. B. Graham] at 103:21-24. |
| | **Features Generally** | |
| 57 | None of the features is inherently dangerous. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 6; Ex. 7 [Depo. Tr. B. Graham] at 108:2-16. |
| 58 | None of the features becomes inherently dangerous when used in conjunction with any of the other features. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 6; Ex. 7 [Depo. Tr. B. Graham] at 108:2-16. |
| 59 | The features increase accuracy of the rifle. | Brady Decl., Ex. 1 [Expert Report of J. B. Boone] at 8-12; Ex. 3 [Expert Report of S. Helsley] at 6-11, 12; Ex. 4 [Expert Report of M. Mersereau] at 8-11; Ex. 5 [Expert Report of B. Graham] at 19, 22, 26, 28; [Depo. Tr. B. Graham] at 119-123; 124:1-6. |
| 60 | The features increase user control of the rifle. | Brady Decl., Ex. 1 [Expert Report of J. B. Boone] at 8-12; Ex. 3 [Expert Report of S. Helsley] at 6-11, 12; Ex. 4 [Expert Report of M. Mersereau] at 8-11; Ex. 5 [Expert Report of B. Graham] at 19, 22, 26, 28; Ex. 6 [Depo. Tr. M. Mersereau] at 36:7-37:11; Ex. 7 [Depo. Tr. B. Graham] at 107:6-14, 108:2-16; [Depo. Tr. B. Graham] at 119-123; 124:1-6. |

| No. | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 61 | The State's designated expert witness, Blake Graham, opined that the features increase accuracy and the user's control of the rifle. | Brady Decl., Ex. 3 [Expert Report of B. Graham] at 19, 22, 26, 28; Ex. 7 [Depo. Tr. B. Graham] at 107:6-14, 108:2-16; [Depo. Tr. B. Graham] at 119-123; 124:1-6. |
| 62 | The State's designated expert witness, Michael Mersereau, opined that features increase accuracy and the user's control of the rifle. | Brady Decl., Ex. 4 [Expert Report of M. Mersereau] at 8-11; Ex. 6 [Depo. Tr. M. Mersereau] at 36:7-37:11. |
| | **"Assault Weapon" Laws** | |
| 63 | California's Assault Weapon Control Act was adopted in 1989 and was the first "assault weapon" law in the country. | Assemb. B. 357, 1989-1990 Reg. Sess. (Cal. 1989); Brady Decl., Ex. 48. |
| 64 | The federal "assault weapon" law took effect in 1994. | Req. Jud. Ntc., ¶ 8, Ex. 8. |
| 65 | Congress allowed the federal "assault weapon" law to expire in 2004. | Req. Jud. Ntc., ¶ 8, Ex. 8. |
| 66 | Federal law does not currently restrict "assault weapons." | Req. Jud. Ntc., ¶ 8, Ex. 8. |
| 67 | Currently, other than California, there are six states in the country with an "assault weapon" law, plus the District of Columbia. | Req. Jud. Ntc., Exs. 1-7. |
| 68 | Every "assault weapon" law in the country other than California's was originally adopted in the 1990s or later. | Req. Jud. Ntc., Exs. 1-7 (Conn. Gen. Stat. §§53-202a – 53-202k (first enacted in 1993); D.C. Code Ann. §§7-2501.01(3A), 7-2502.02 (a)(6) (enacted in 2008); Haw. Rev. Stat. Ann. §§ 134-1, 134-8 (first enacted in 1992); Md. Code Ann., Crim. Law §§ 4-301, 4-303 (first enacted in 2002); N.J. Stat. Ann. §§ 2C:39-1w, 2C:39-3 (first enacted in 1999); N.Y. Penal Law §§ 265.00(22), |

| No. | Uncontroverted Facts | Supporting Evidence |
|-----|---------------------|---------------------|
|     |                     | 265.02(7) (first enacted in 1998)). |
| 69  | The United States government, through the Director of Civilian Marksmanship, used to operate a program that would sell semiautomatic, centerfire rifles with detachable magazines directly to the public, including some rifles that would be considered "assault weapons" under the AWCA. | Brady Decl., Ex. 3 [Expert Report of S. Helsley] at 5; Exs. 16, 42, 43. |

Dated: April 26, 2019

**MICHEL & ASSOCIATES, P.C.**

*/s/ Sean A. Brady*
Sean A. Brady
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE
## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

Case Name: *Rupp, et al. v. Becerra*
Case No.: 8:17-cv-00746-JLS-JDE

IT IS HEREBY CERTIFIED THAT:

    I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

    I am not a party to the above-entitled action. I have caused service of:

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Xavier Becerra
Attorney General of California
Peter H. Chang
Deputy Attorney General
E-mail: peter.chang@doj.ca.gov
John D. Echeverria
Deputy Attorney General
E-mail: john.echeverria@doj.ca.gov
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

    I declare under penalty of perjury that the foregoing is true and correct.

Executed April 26, 2019.

                              */s/Christina Castron*
                              Christina Castron