1  C. D. Michel – SBN 144258
   cmichel@michellawyers.com
2  Sean A. Brady – SBN 262007
   sbrady@michellawyers.com
3  Matthew D. Cubeiro – SBN 291519
4  mcubeiro@michellawyers.com
   MICHEL & ASSOCIATES, P.C.
5  180 East Ocean Boulevard, Suite 200
   Long Beach, CA 90802
6  Telephone: 562-216-4444
7  Facsimile: 562-216-4445

8  Attorneys for Plaintiffs

9

10                   **UNITED STATES DISTRICT COURT**

11                   **CENTRAL DISTRICT OF CALIFORNIA**

12                         **SOUTHERN DIVISION**

13

14 | STEVEN RUPP, et al., | Case No.: 8:17-cv-00746-JLS-JDE |
15 | Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS LUCY P. ALLEN UNDER FEDERAL RULE OF EVIDENCE 702** |
16 | vs. | |
17 | XAVIER BECERRA, in his official capacity as Attorney General of the State of California, | |
18 | | |
19 | | |
20 | Defendant. | |
21 | | Hearing Date:  July 5, 2019 |
22 | | Hearing Time: 10:30 a.m.
Judge:         Josephine L. Staton
Courtroom:     10A |

1
MEMO. OF POINTS & AUTHORITIES ISO MOT. TO EXCLUDE TESTIMONY

Plaintiffs submit this memorandum in support of their motion to exclude the testimony of Defendant's expert witness Lucy Allen pursuant to Rule 702 of the Federal Rules of Evidence. Plaintiffs contend that per the evidentiary standards for the admissibility of expert witness testimony under Rule 702 and elucidated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Ms. Allen's testimony is not admissible.

## STATEMENT OF FACTS

The State offers the report of Lucy Allen as expert opinion in support of its Motion for Summary Judgment. In her report, Allen describes the scope of her assignment as follows:

> I have been asked by the Office of the Attorney General of California to analyze the use of assault weapons (as defined under California law), including assault rifles, in public mass shootings. [FN] In addition, I have been asked to analyze the use of large-capacity magazines (magazines capable of holding more than ten rounds) in public mass shootings, particularly as they are used in conjunction with assault weapons in such mass shootings.
>
> [FN]: It is my understanding that the primary provisions of California law that are relevant to this case are: California Penal Code sections 30510 and 30515, and California Code of Regulations, title 11, section 5499. See, for example, California Department of Justice: "What is considered an assault weapon under California law?" and "What are AK and AR-15 series weapons?" https://oag.ca.gov/firearms/regagunfaqs, accessed October 25, 2018.

Declaration of Sean A. Brady ("Brady Decl."), Ex. 1 at p. 1.

In her deposition, she confirmed that her assignment was limited to the statement above, and she did nothing else. Brady Decl., Ex. 2, at p. 7:8-11.

In performing her assigned tasks, Allen and her team analyzed a body of data gathered by the publication Mother Jones and another body of data gathered by the Citizens Crime Commission of New York City. Brady Decl., Ex. 1 at p. 4. They then combined those two data sets "and searched news stories on each mass shooting to obtain additional details on the types of weapons used." *Id.* at 5. They then

"compared the details on the weapons used in each shooting to the list of prohibited firearms and features specified in California law to identify, based on this publicly available information, which mass shootings involved the use of Assault Weapons or more specifically Assault Rifles," and which involved the use of "large capacity magazines." *Id*.

Based on this analysis, Allen says that her and her team found that: (1) "assault rifles" are often used in public mass shootings; (2) casualties are higher in public mass shootings when an "assault rifle" is used; (3) "large capacity magazines" are often used in public mass shootings; and (4) casualties are higher in public mass shootings when a "large capacity magazine" is used. *Id*.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides for the admissibility of expert testimony in the federal courts, and sets the following standards:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Although Rule 702 allows courts discretion to admit expert testimony, such testimony is nevertheless inadmissible if it fails to meet two key requirements: (1) it must be based on the special knowledge of the expert; and (2) it must be helpful to the finder of fact. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-91 (1993); *Andrews v. Metro North Commuter R. Co.*, 882 F.2d 705, 708 (2nd Cir. 1989) ("For an expert's testimony to be admissible … it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to

lay matters which a jury is capable of understanding and deciding without the expert's help."

Furthermore, "Rule 702 embodies the twin concerns of reliability … and helpfulness." The test for reliability is the soundness of the expert's methodology, not the accuracy of the conclusions. Reliable testimony must also be helpful, and the trial judge "may exclude testimony that falls short of achieving either end." *Stillwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007).  The burden is on the party offering the proposed expert opinion to prove by a preponderance of the evidence that the testimony satisfied the requirements for admissibility. *See Daubert*, 509 U.S. at 592 n.10. Moreover, an expert's suitability for testimony in a case depends on the facts of the particular case; just because an expert may be qualified to opine on one subject does not have any bearing on that expert's suitability to opine on another unrelated subject. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999).

Consequently, not all opinions that happen to be held by an expert are "expert opinions." *See United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991). As such, opinions that fall outside the expert's area of expertise are inadmissible. *See Watkins v. Schriver*, 52 F.3d 769, 711 (8th Cir. 1995) (affirming exclusion of a neurologist's testimony "that the [plaintiff's neck] injury was more consistent with being thrown into a wall than with a stumble into the corner").  Impressive professional qualifications alone are insufficient; the expert must have sufficient specialized knowledge to assist the trier of fact in deciding the issues in the case. *See Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 162-163 (4th Cir. 2012).

To summarize, expert witness opinion is admissible where 1) it is based on specialized knowledge of a scientific or technical nature, 2) it is helpful to the trier of fact, 3) the expert is qualified to give the opinion because the expert has sufficient knowledge, skill, experience, or education, and 4) the opinion is reliable because it is

based on facts and data, is the product of reliable principles and methods, and such methods have been properly applied to the facts.

## ARGUMENT

**I. Allen's Analysis Is Unreliable and Should Be Disregarded by this Court because She Is Not Qualified to Determine Whether a Rifle Meets the AWCA's "Assault Weapon" Definition**

There is little doubt that Ms. Allen is a well-educated person with an extensive background in data analysis as an economic consultant. Brady Decl., Ex. 2, at p. 8:22; Brady Decl., Ex. 1, at p. 1.  Unfortunately for the State, impressive professional qualifications alone are insufficient to qualify a witness as an expert; the expert must have sufficient specialized knowledge in the specific matter being considered to assist the trier of fact in deciding the issues in the case. *See Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 162-163 (4th Cir. 2012).  Allen does not meet this standard.

Nowhere in her report does Allen claim to be an expert on the technical aspects of firearms.  And, in her deposition, she freely admits that her knowledge on that subject is limited. Brady Decl., Ex. 2, at p. 33:13-16.  She cannot say whether anyone on her team assisting her had any technical firearms knowledge. Brady Decl., Ex. 2, at p. 10:1-6. When describing her own personal experience with firearms, which consisted of approximately six total occasions, Allen could not even confirm whether what she was shooting was a rifle or shotgun. Brady Decl., Ex. 2, at p. 11:15-17.

Yet, they undertook an assignment purporting to confirm that rifles used in public mass shootings met the AWCA's definition of "assault weapon," which depends in large part on knowing firearm technicalities, i.e., what pistol grips, flash suppressors, or adjustable stocks are, or whether the make and model rifle is the one listed in the AWCA or a slight variant thereof that is not an "assault weapon." According to the State's very own expert, Michael Mersereau, there is an "expertise needed to determine whether a weapon is actually an assault weapon;" one that even

5

plenty of police officers enforcing that law lack. Brady Decl., Ex. 3 and Ex. 4. Neither Allen nor any member of her team have demonstrated that they possess that expertise.

Accordingly, this Court should exclude the testimony of Lucy Allen as an expert in this matter for lacking the requisite special knowledge to independently verify whether an "assault weapon" was used in a public mass shooting.

**II. Allen's Analysis Is Unreliable and Should Be Disregarded by this Court because Her Methodology Omits Relevant Data, While Conflating Irrelevant Data, Both of which Make it Appear "Assault Rifle" Use Has More of an Impact on Mass Shootings than They Actually Do**

One of Allen's conclusions is that casualties are higher in *public* mass shootings when an "assault rifle" is used. There are two problems with her methodology in reaching that conclusion. First, she does not provide a reasonable justification for limiting her analysis to "public" mass shootings, rather than considering *all* mass shootings. Second, she counts victims shot with a non-"assault rifle" among the victims of "assault rifle" shootings.

**A.    Allen artificially restricted her analysis to *public* mass shootings**

Allen omits private mass shootings from those she analyzed based on her uncorroborated assumption that the California Legislature's intent in enacting the AWCA was to prevent public, but apparently not other, mass shootings. Brady Decl., Ex. 2, at p. 38:20-25. In doing so, Allen has restricted her data to a subset of mass shootings that could give a skewed view of the impact "assault rifles" might have in a mass shooting. Because it is possible to manipulate conclusions by defining beforehand what data and criteria are relevant for conducting the analysis, a person analyzing a phenomenon like mass shootings needs to have an analytical-based justification for omitting significant amounts of seemingly relevant data. Because Allen has failed to provide a convincing reason beyond her belief of what California is interested in here, her conclusions are unreliable and should thus be disregarded.

### B. Allen commingles casualties from non "assault rifles" in her figures for casualties from "assault rifles," inflating the latter, while lowering the former.

Allen summarizes her findings in a table in her report. Brady Decl., Ex. 1, at p. 7. She breaks down the mass shootings she analyzed into categories based on "Weapon Used" and then averages the fatalities for each respective category. *Id*. The "Assault Rifle" category shows the highest average of fatalities and injuries. *Id*. But, in her deposition, Allen admitted that she included in the "assault rifle" category victims who were shot by a non-"assault rifle" as long as the shooter used an "assault rifle" at some point during the shooting. Not only does this approach artificially inflate the number of "assault rifle" casualties, it simultaneously artificially reduces the number of non-"assault rifle" casualties by keeping them in the "assault rifle" category. This double impact dooms Allen's entire analysis. Without segregating out which weapon caused an individual death, the entirety of Allen's findings on the average number of casualties associated with each category of weapon in mass shootings are irreparably contaminated and unreliable.

To illustrate the problem, the Aurora theater shooter used an "assault rifle," a shotgun, and a handgun. Brady Decl., Ex. 1, at Appendix B pg. 2 and C pg. 5. Despite some victims in that shooting possibly having been injured or killed by a shotgun or handgun, Allen nevertheless counted them as "assault rifle" victims. This problem is not an isolated incident, but rather widespread in Allen's analysis. Of the 27 shootings involving an "assault rifle" that Allen analyzed, 19 of them involved the shooter using other non-"assault rifle" firearms. *Id.* at Appendix B and C.

Allen's testimony on the subject of "assault rifle" use and resulting casualties is therefore unreliable and should be disregarded by this Court.

///

///

MEMO. OF POINTS & AUTHORITIES ISO MOT. TO EXCLUDE TESTIMONY

### III. Allen's Analysis of "Large Capacity Magazines" Is Irrelevant and Should Be Disregarded by this Court as Unhelpful

Nowhere in her report does Allen explain why her analysis on so-called "large capacity magazines" is relevant to this matter. Plaintiffs here do not even raise any issue concerning such magazines in this matter. Allen does not assert that such magazines are uniquely used in "assault rifles." Nor does she claim that such magazines are necessary to operate "assault rifles." To the contrary, her own report includes an analysis of a category of non-"assault rifles" used in mass shootings having such magazines. Brady Decl., Ex. 1, at p. 7. Accordingly, any analysis concerning these magazines is irrelevant to this matter and thus unhelpful to this Court and should be disregarded.

### CONCLUSION

For the foregoing reasons, Lucy Allen should be disqualified as an expert in this matter.

Dated: May 28, 2019  **MICHEL & ASSOCIATES, P.C.**

*/s/ Sean A. Brady*
Sean A. Brady
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE
## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

Case Name: *Rupp, et al. v. Becerra*
Case No.: 8:17-cv-00746-JLS-JDE

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS LUCY P. ALLEN UNDER FEDERAL RULE OF EVIDENCE 702**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Xavier Becerra
Attorney General of California
Peter H. Chang
Deputy Attorney General
E-mail: peter.chang@doj.ca.gov
John D. Echeverria
Deputy Attorney General
E-mail: john.echeverria@doj.ca.gov
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 28, 2019.

*/s/ Laura Palmerin*
Laura Palmerin