C. D. Michel – SBN 144258
cmichel@michellawyers.com
Sean A. Brady – SBN 262007
sbrady@michellawyers.com
Matthew D. Cubeiro – SBN 291519
mcubeiro@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 East Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: 562-216-4444
Facsimile: 562-216-4445

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| STEVEN RUPP, et al., <br><br>　　　　　　Plaintiffs, <br><br>　vs. <br><br>ROB BONTA, in his official capacity as Attorney General of the State of California, <br><br>　　　　　　Defendant. | Case No.: 8:17-cv-00746-JLS-JDE <br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS RYAN BUSSE UNDER FEDERAL RULE OF EVIDENCE 702** <br><br>Hearing Date:　April 28, 2023 <br>Hearing Time:　10:30 a.m. <br>Courtroom:　　8A <br>Judge:　　　　Hon. Josephine L. Staton |

1

MEMO. OF POINTS & AUTHORITIES ISO MOT. TO EXCLUDE TESTIMONY

# INTRODUCTION

The purpose of expert witness testimony is to assist the fact finder with understanding complicated technical issues that are beyond the ordinary fact finder's ability to understand. To be properly admissible, an expert witness's opinion must be based in something more than mere speculation and have a foundation in genuine knowledge about a complex factual issue that is material to the case.

Ryan Busse's testimony does none of these things. His reports are essentially a mishmash of anecdotal assertions about firearm industry trade practices that have nothing to do with the only question that this Court must resolve post *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ("*Bruen*"): whether the State can show a well-subscribed regulatory tradition from the Founding Era that is sufficiently analogous to the challenged statutes. It is evident that Busse's testimony does nothing to help answer that question. Because not a word of Busse's reports is tailored to help the State meet its burden under *Bruen*, and because his patent bias makes his testimony unreliable, Plaintiffs request that the Court find Busse's testimony inadmissible under Federal Rule of Evidence 702.

## I. LEGAL STANDARD UNDER FEDERAL RULE OF EVIDENCE 702

An expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Under *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 589-91 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), courts must act as "gatekeepers" to exclude unreliable expert testimony. This requires courts to consider whether:

> (a) [t]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) [t]he testimony is based on sufficient facts or data; (c) [t]he testimony is the product of reliable principles and methods; and (d) [t]he expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

2
MEMO. OF POINTS & AUTHORITIES ISO MOT. TO EXCLUDE TESTIMONY

1  This list is not exhaustive. *Daubert*, 509 U.S. at 594-95; *Kumho*, 526 U.S. at 150-51.
2  And no single factor is necessarily determinative. *Kumho*, 526 U.S. at 150-51; *see*
3  *also* Fed. R. Evid. 702, advisory committee's note to 2000 amendment.

4      Not all opinions of an expert are necessarily "expert opinions." *See United*
5  *States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991). Opinions outside the expert's
6  expertise are inadmissible. *See Watkins v. Schriver*, 52 F.3d 769, 711 (8th Cir. 1995)
7  (affirming exclusion of neurologist's testimony "that the [plaintiff's neck] injury was
8  more consistent with being thrown into a wall than with a stumble into the corner").

9      Nor do impressive professional qualifications suffice; the expert must have
10 sufficient specialized knowledge to assist the trier of fact in deciding the specific
11 issues in the case. *See Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 162-163 (4th
12 Cir. 2012). Moreover, an expert's suitability for testimony depends on the facts of
13 the case. That a person is qualified to opine on one subject as an expert has no
14 bearing on that person's qualification to opine on another unrelated subject. *See*
15 *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999).

16     Under the standards for admissibility of expert witness testimony set forth in
17 Rule 702 and explained in *Daubert* and its progeny, Busse's testimony is
18 inadmissible. He does not possess the requisite specialized knowledge, he has not
19 reliably applied any principles or methods to the facts of the case, and his opinions
20 are, therefore, not the product of reliable principles and methods nor are they based
21 on sufficient facts or data that are relevant to resolution of this case. Accordingly,
22 this Court should exercise its broad discretion to reject his testimony.

23 **II.    ARGUMENT**

24     **A.    Busse's Testimony Does Not Help the Court Apply *Bruen***

25     *Bruen* reiterated that *District of Columbia v. Heller*, 554 U.S. 570 (2008)
26 rejected the public-safety-interest-balancing approach to analyzing Second
27 Amendment challenges that wrongly proliferated in *Heller's* wake. *Bruen* directs
28 courts to solely determine whether a challenged law implicates the constitutional

text protecting the peoples' right to *keep* and *bear* arms and, if it does, to find the law unconstitutional if the government cannot prove that there is a well-subscribed historical tradition of firearm regulation that is sufficiently analogous to the challenged law at issue. *Bruen*, 142 S. Ct. at 2132-2133. Busse's testimony is silent on regulatory tradition from any era.

The "admissibility of expert opinion generally turns on preliminary questions of law determined by the trial judge, including inter alia, whether the testimony is relevant and reliable, and whether its probative value is substantially outweighed by risk of unfair prejudice, confusion of issues, or undue consumption of time." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). While *Bruen*'s inquiry depends on facts about what laws were in place at the relevant time period, whether there exists a historical canon of analogous laws to the one being challenged is essentially a legal determination for the Court to decide. "The job of judges is not to resolve historical questions in the abstract; it is to resolve legal questions presented in particular cases or controversies...Courts are thus entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S. Ct. at n.6. Regardless, whether a legal or factual question, Busse's expert opinions do not aid the Court with resolution of the relevant issues because his report does not address historical *regulations* at all.

Busse begins his initial report with a summary of his background. Essentially, after a career in the firearm industry, he had a change of heart about civilian firearm ownership and now advises gun control advocacy groups. *See* Supplemental Expert Report and Declaration of Ryan Busse, Declaration of Sean A. Brady ("Brady Decl.") Ex. 1 at 2, ¶ 3. Next, Busse states a handful of conclusory opinions about firearm features and industry practices without establishing any basis for them beyond his career experience working for an arms maker. *Id*., passim. None has anything to do with establishing a historical regulatory tradition per *Bruen*'s mandate, so whether Busse is qualified or not on those topics, it isn't relevant here

Even if Busse's testimony were relevant at all to *Bruen*, it should still be excluded because it is misleading. For example, Busse states that "the .223 which is the most common AR-15 cartridge, fires bullets at more than 3000FPS (feet per second) vs a rimfire cartridge that propels bullets at around 1100FPS." Brady Decl., Ex. 1 at 5, ¶ 11. But Busse leaves out that the law at issue has no effect on .223 cartridges, just certain configurations of rifles. Comparing any centerfire cartridge with one of the weakest rimfire cartridges available (.22LR) to make the point that the former is somehow extremely powerful is blatant deception; especially when the centerfire cartridge being considered (.223) is actually one of the weaker centerfire rifle cartridges. As J. Buford Boone III explains in his own expert rebuttal report, "It is notable that the .223/5.56 is on the lower end of terminal performance potential of the vast calibers available in centerfire rifles. In fact, the .223/5.56 is below the allowable minimum cartridges for deer hunting in some states." Expert Witness Rebuttal Report of J. Buford Boone III, Brady Decl., Ex. 2 at 10:20-23.

Indeed, a handful of states ban .223 for deer hunting because they feel it will too often wound a deer without killing it, which would be unethical. Colorado, for example, requires big game cartridges be .24 caliber or larger, and 70 grains or more (55 grains is the typical weight for .223 rounds).[1] Likewise, in defending their .23 caliber minimum, Virginia argued that " 'The caliber regulation is necessary because "the use of rifles of a caliber less than .23 to dispatch deer would result in an unacceptable number of crippled wounded and/or lost deer.' " *Thompson v. Va. Dep't of Game & Inland Fisheries*, No. 1:06CV00065, 2007 U.S. Dist. LEXIS 23521, at *12-13 (W.D. Va. Mar. 30, 2007). While California allows .223 for hunting deer, according to the Department of Fish and Wildlife it requires that it be

---

[1] https://cpw.state.co.us/Documents/RulesRegs/Regulations/Ch02.pdf, at p. 5. (Last accessed March 24, 2023).

nonlead versions with a "soft nose or expanding projectile".² Comparing .223 in terms of its power to .22LR ammunition, which in the hunting context is appropriate only for very small animals like squirrels, is the quintessential apples and oranges scenario, which puts Mr. Busse's intellectual dishonesty, and thus reliability, on vivid display. Mr. Busse also opines at length about various banned features under California law, without stopping to note that those features do not make bullets fly faster or hit harder. Brady Decl., Ex. 1 at 6-11, ¶¶ 13-23.

Having worked in the gun industry, Busse certainly knows all of this. His effort to mislead this Court is because of his demonstrated bias against Second Amendment rights. Just earlier this week, Mr. Busse had the following exchange on Twitter:³



It is of course Mr. Busse's prerogative to believe that *Heller*, *McDonald*, and *Bruen* were wrongly decided if he prefers to believe that the Second Amendment

---

² https://wildlife.ca.gov/COQA/tag/deer-hunting, (Last accessed March 24, 2023).

³ https://twitter.com/ryandbusse/status/1638252652067713042 , (last accessed March 23, 2023.) Archived version also available here: https://web.archive.org/web/20230321192346/https:/twitter.com/ryandbusse/status/1638252652067713042

only protects a "militia right" and not an individual one. But that is not what the Supreme Court has decided. Mr. Busse has not offered any testimony about our nation's historical tradition of firearm regulation, which is all that is relevant to the *Bruen* analysis. That is enough to disqualify his testimony. But even if he had, his credibility would certainly be in doubt given his open antipathy to the preexisting individual right the Second Amendment protects.

## CONCLUSION

Busse's career in the firearm industry does not change the fact that the substance of his opinions has nothing to do with whether there is a well-subscribed historical regulatory tradition analogous to the magazine restrictions that Plaintiffs challenge in this suit. Indeed, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Thus, Busse's opinion does not help the Court understand any material issues and should be rejected because it falls below Rule 702's standards for admissibility.

Dated: March 24, 2023

**MICHEL & ASSOCIATES, P.C.**

*/s/ Sean A. Brady*
Sean A. Brady
Email: sbrady@michellawyers.com
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE
## IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

Case Name: *Rupp, et al. v. Bonta*
Case No.: 8:17-cv-00746-JLS-JDE

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, CA 90802. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS RYAN BUSSE UNDER FEDERAL RULE OF EVIDENCE 702**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Xavier Becerra
Attorney General of California
Anna Ferrari
Deputy Attorney General
Email: anna.ferrari@doj.ca.gov
Christina R.B. Lopez
Email: christina.lopez@doj.ca.gov
John D. Echeverria
Email: john.echeverria@doj.ca.gov
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 24, 2023, at Long Beach, CA.

*Laura Palmerin*