C. D. Michel – SBN 144258
cmichel@michellawyers.com
Sean A. Brady – SBN 262007
sbrady@michellawyers.com
Matthew D. Cubeiro – SBN 291519
mcubeiro@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 East Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: 562-216-4444
Facsimile: 562-216-4445

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| STEVEN RUPP, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>　　　　　　　Defendant. | Case No.:  8:17-cv-00746-JLS-JDE<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS LOUIS KLAREVAS UNDER FEDERAL RULE OF EVIDENCE 702**<br><br>Hearing Date:　　April 28, 2023<br>Hearing Time:　　10:30 a.m.<br>Courtroom:　　　8A<br>Judge:　　　　　Hon. Josephine L. Staton |

# INTRODUCTION

The purpose of expert witness testimony is to assist the fact finder with understanding complicated, technical issues that are beyond the ordinary fact finder's ability to understand. To be admissible, an expert witness's opinion must be based in something more than mere speculation and have a foundation in genuine knowledge about a complex factual issue that is material to the case.

Louis' Klarevas's report supporting the State meets none of these standards. It has nothing to do with the only question that this Court must resolve post *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ("*Bruen*"): whether the State can show a well-subscribed regulatory tradition from the Founding Era that is sufficiently analogous to the challenged statutes. Because Klarevas's testimony does nothing to inform that question, it is irrelevant and thus not helpful to this Court. Even if it were relevant, Klarevas's testimony is not the product of reliable principles or methods. Plaintiffs thus request that the Court find his testimony inadmissible under Federal Rule of Evidence 702.

## I.   LEGAL STANDARD UNDER FEDERAL RULE OF EVIDENCE 702

An expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-91 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), courts must act as "gatekeepers" to exclude unreliable expert testimony. This requires courts to consider whether:

> (a) [t]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) [t]he testimony is based on sufficient facts or data; (c) [t]he testimony is the product of reliable principles and methods; and (d) [t]he expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This list is not exhaustive. *Daubert*, 509 U.S. at 594-95; *Kumho*, 526 U.S. at 150-51. And no single factor is necessarily determinative. *Kumho*, 526

U.S. at 150-51; *see also* Fed. R. Evid. 702, advisory committee's note to 2000 amendment.

What's more, not all opinions of an expert are necessarily "expert opinions." *See United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991). The expert must have sufficient specialized knowledge to assist the trier of fact in deciding the specific issues in the case. *See Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 162-163 (4th Cir. 2012). Opinions outside the expert's expertise are inadmissible. *See Watkins v. Schriver*, 52 F.3d 769, 711 (8th Cir. 1995) (affirming exclusion of neurologist's testimony "that the [plaintiff's neck] injury was more consistent with being thrown into a wall than with a stumble into the corner"); *see, e.g.*, *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, No. C-95-20091, 1997 U.S. Dist. LEXIS 23572 (N.D. Cal. Jan. 3, 1997) (striking expert testimony beyond the scope of the expert's knowledge). And an expert's suitability for testimony depends on the facts of the case; being qualified to opine on one subject has no bearing on that person's qualification to opine on another unrelated subject. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999); *see, e.g.*, *Burke v. Pitney Bowes Inc. Long Term Disability Plan*, 640 F. Supp. 2d 1160 (N.D. Cal. 2009). In short, an impressive resume is not enough to qualify someone to serve as an expert in any given matter. *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002). ("It is well settled that bare qualifications alone cannot establish the admissibility of . . . expert testimony.").

## II. ARGUMENT

Under the standards for admissibility of expert witness testimony set forth in Rule 702 and explained in *Daubert* and its progeny, Klarevas' testimony is inadmissible. He does not offer any specialized knowledge relevant to the subject matter at issue. *Daubert*, 509 U.S. at 591. ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). He has not reliably applied any principles or methods to the facts of the case. His opinions are thus

neither the product of reliable principles and methods nor are they based on sufficient facts or data. *See* Fed. R. Evid. 702. This Court should thus exercise its broad discretion to reject his testimony entirely. *Bruen* reiterated that *District of Columbia v. Heller*, 554 U.S. 570 (2008) rejected the public-safety-interest-balancing approach to analyzing Second Amendment challenges that wrongly proliferated in lower courts post-*Heller*. *Bruen*, 142 S. Ct. at 2127. *Bruen* directs courts to determine only whether a challenged law implicates the Second Amendment's text and, if it does, to find the law unconstitutional if the government cannot prove that there is an enduring tradition in American history of state regulation that is sufficiently analogous to the challenged law at issue. *Bruen*, 142 S. Ct. at 2118.

The "admissibility of expert opinion generally turns on preliminary questions of law determined by the trial judge, including inter alia, whether the testimony is relevant and reliable, and whether its probative value is substantially outweighed by risk of unfair prejudice, confusion of issues, or undue consumption of time." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). While application of the *Bruen* test may depend on facts about what laws were in place during the relevant time periods, whether there exists a historical canon of sufficiently analogous laws to the one being challenged is essentially a legal determination for courts to decide. "The job of judges is not to resolve historical questions in the abstract; it is to resolve legal questions presented in particular cases or controversies...Courts are thus entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S. Ct. at n.6.

Regardless of whether a legal or factual question, Klarevas's opinions do not aid the Court in resolving the relevant issues because his report does not address historical *regulations* at all, let alone ones from the relevant historical eras.

Klarevas explains in his report that "I have been asked by the Office of the Attorney General for the State of California to prepare an expert report and

declaration addressing the relationship between assault weapons and mass shootings, including how restrictions on assault weapons impact mass shooting violence." Supplemental Expert Report and Declaration of Louis Klarevas, Declaration of Sean A. Brady ("Brady Decl.") Ex. 1 at ¶ 1. He summarizes his conclusions in ¶ 12 as follows:

> (1) in terms of individual acts of intentional criminal violence, mass shootings presently pose the deadliest threat to the safety of American society in the post-9/11 era, and the problem is growing nationwide; (2) mass shootings involving assault weapons, on average, have resulted in a substantially larger loss of life than similar incidents that did not involve assault weapons; (3) mass shootings resulting in double-digit fatalities are relatively modern phenomena in American history, largely related to the use of large-capacity magazines and assault weapons; (4) assault weapons are used by private citizens with a far greater frequency to perpetrate mass shootings than to stop mass shootings; and (5) jurisdictions that restrict the possession of assault weapons experience fewer mass shooting incidents and fatalities, per capita, than jurisdictions that do not restrict assault weapons. Based on these findings, it is my opinion that restrictions on assault weapons have the potential to save lives by reducing the frequency and lethality of mass shootings.

Regardless of the veracity of any of those conclusions, none informs any part of the *Bruen* analysis. It is thus inadmissible as expert opinion because it is irrelevant and thus does not aid the Court in resolving this matter.

His conclusions that restrictions on "assault weapons" (and sometimes certain magazines, which are not the subject of this case) can reduce mass shootings are mere policy argument that has no bearing on the applicable analysis. "The Second Amendment does not exist to protect the right to bear down pillows and foam baseball bats. *It protects guns and every gun is dangerous.* 'If *Heller* tells us anything, it is that firearms cannot be categorically prohibited just because they are dangerous.' … '[T]he relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." *Duncan III*, 366 F. Supp. 3d at 1146 (quoting *Caetano*, 577 U.S. at 418 (Alito, J., concurring))

(double emphasis added). the Supreme Court has explained that while "judicial deference to legislative interest balancing is understandable—and, elsewhere, appropriate—it is not deference that the Constitution demands here." *Bruen*, 142 S. Ct. at 2131.

## CONCLUSION

None of the opinions Klarevas offers helps this Court with the task before it on remand and should thus be excluded under Federal Rule of Evidence 702.

Dated: March 24, 2023                              **MICHEL & ASSOCIATES, P.C.**

*/s/ Sean A. Brady*
Sean A. Brady
Email: sbrady@michellawyers.com
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE
## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

Case Name: *Rupp, et al. v. Bonta*
Case No.: 8:17-cv-00746-JLS-JDE

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS LOUIS KLAREVAS UNDER FEDERAL RULE OF EVIDENCE 702**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Xavier Becerra
Attorney General of California
Anna Ferrari
Deputy Attorney General
Email: anna.ferrari@doj.ca.gov
Christina R.B. Lopez
Email: christina.lopez@doj.ca.gov
John D. Echeverria
Email: john.echeverria@doj.ca.gov
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct.

Executed March 24, 2023.

_____
Laura Palmerin

CERTIFICATE OF SERVICE