C. D. Michel – SBN 144258
cmichel@michellawyers.com
Sean A. Brady – SBN 262007
sbrady@michellawyers.com
Matthew D. Cubeiro – SBN 291519
mcubeiro@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 East Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: 562-216-4444
Facsimile: 562-216-4445

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| STEVEN RUPP, et al.,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>　　　　　　Defendant. | Case No.: 8:17-cv-00746-JLS-JDE<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS LUCY ALLEN UNDER FEDERAL RULE OF EVIDENCE 702**<br><br>Hearing Date:　April 28, 2023<br>Hearing Time:　10:30 a.m.<br>Courtroom:　8A<br>Judge:　Hon. Josephine L. Staton |

1

MEMO. OF POINTS & AUTHORITIES ISO MOT. TO EXCLUDE TESTIMONY

# INTRODUCTION

The purpose of expert witness testimony is to assist the fact finder with understanding complicated, technical issues that are beyond the ordinary fact finder's ability to understand. To be admissible, an expert witness's opinion must be based in something more than mere speculation and have a foundation in genuine knowledge about a complex factual issue that is material to the case.

Lucy Allen's recent report supporting the State as well as her two previous reports submitted in this matter, meet none of these standards. She offers testimony that is not germane to the only question that this Court must resolve post *New York State Rifle & Pistol Assn. v. Bruen*, 142 S. Ct. 2111 (2022) ("*Bruen*"): whether the State can show a well-subscribed regulatory tradition from the Founding Era that is sufficiently analogous to the challenged statute. Because Allen's testimony does nothing to inform any of those questions, it is irrelevant and thus not helpful to this Court. Even if it were relevant, Allen's testimony is not the product of reliable principles or methods. Plaintiffs thus request that the Court find Allen's report, as well as her previous reports in this matter containing effectively the same material, inadmissible under Federal Rule of Evidence 702.

## I.     LEGAL STANDARD UNDER FEDERAL RULE OF EVIDENCE 702

An expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-91 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), courts must act as "gatekeepers" to exclude unreliable expert testimony. This requires courts to consider whether:

> (a) [t]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) [t]he testimony is based on sufficient facts or data; (c) [t]he testimony is the product of reliable principles and methods; and (d) [t]he expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This list is not exhaustive. *Daubert*, 509 U.S. at 594-95; *Kumho*, 526 U.S. at 150-51. And no single factor is necessarily determinative. *Kumho*, 526 U.S. at 150-51; *see also* Fed. R. Evid. 702, advisory committee's note to 2000 amendment.

What's more, not all opinions of an expert are necessarily "expert opinions." *See United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991). The expert must have sufficient specialized knowledge to assist the trier of fact in deciding the specific issues in the case. *See Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 162-163 (4th Cir. 2012). Opinions outside the expert's expertise are inadmissible. *See Watkins v. Schriver*, 52 F.3d 769, 711 (8th Cir. 1995) (affirming exclusion of neurologist's testimony "that the [plaintiff's neck] injury was more consistent with being thrown into a wall than with a stumble into the corner"); *see, e.g.*, *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, No. C-95-20091, 1997 U.S. Dist. LEXIS 23572 (N.D. Cal. Jan. 3, 1997) (striking expert testimony beyond the scope of the expert's knowledge). And an expert's suitability for testimony depends on the facts of the case; being qualified to opine on one subject has no bearing on that person's qualification to opine on another unrelated subject. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999); *see, e.g.*, *Burke v. Pitney Bowes Inc. Long Term Disability Plan*, 640 F. Supp. 2d 1160 (N.D. Cal. 2009). In short, an impressive resume is not enough to qualify someone to serve as an expert in any given matter. *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002). ("It is well settled that bare qualifications alone cannot establish the admissibility of . . . expert testimony.").

II. ARGUMENT

    A. **Allen's Testimony Does Not Help the Court Apply *Bruen***

Under the standards for admissibility of expert witness testimony set forth in Rule 702 and explained in *Daubert* and its progeny, Allen's testimony is inadmissible. She does not offer any specialized knowledge relevant to the subject

MEMO. OF POINTS & AUTHORITIES ISO MOT. TO EXCLUDE TESTIMONY

matter at issue. *Daubert*, 509 U.S. at 591. ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). She has not reliably applied any principles or methods to the facts of the case. Her opinions are thus neither the product of reliable principles and methods nor are they based on sufficient facts or data. *See* Fed. R. Evid. 702. This Court should thus exercise its broad discretion to reject Allen's testimony entirely. *Bruen* reiterated that *District of Columbia v. Heller*, 554 U.S. 570 (2008) rejected the public-safety-interest-balancing approach to analyzing Second Amendment challenges that wrongly proliferated in lower courts post-*Heller*. *Bruen*, 142 S. Ct. at 2127. *Bruen* directs courts to determine only whether a challenged law implicates the Second Amendment's text and, if it does, to find the law unconstitutional if the government cannot prove that there is an enduring tradition in American history of state regulation that is sufficiently analogous to the challenged law at issue. *Bruen*, 142 S. Ct. at 2118.

While application of the *Bruen* test may depend on facts about what laws were in place during the relevant time period, whether there exists a historical canon of sufficiently analogous laws to the one being challenged is essentially a legal determination for courts to decide. The "admissibility of expert opinion generally turns on preliminary questions of law determined by the trial judge, including inter alia, whether the testimony is relevant and reliable, and whether its probative value is substantially outweighed by risk of unfair prejudice, confusion of issues, or undue consumption of time." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). Regardless of whether a legal or factual question, Allen's opinions do not aid the Court in resolving the relevant issues because her report does not address historical *regulations* at all, let alone ones from the relevant historical eras.

Allen describes her most recent report in this matter as "report[ing] the results of my analyses with respect to the following issues: "(a) the number of rounds of ammunition fired by individuals using a gun in self-defense; and (b) the outcomes

when assault weapons (as defined under California law) and large-capacity magazines (magazines capable of holding more than ten rounds) are used in public mass shootings, including the associated number of casualties." Supplemental Expert Report and Declaration of Lucy P. Allen, Declaration of Sean A. Brady ("Brady Decl.") Ex. 1 at 2, ¶ 2. Allen's conclusion as to the first issue is that individuals rarely discharge over ten rounds in self-defense and thus magazines with a capacity of over ten rounds are rarely "used" for self-defense. *Id*. at 6, ¶ 9. This is of course irrelevant to the *Bruen* analysis, which eschews such interest balancing arguments. "The Second Amendment 'is the very *product* of an interest balancing by the people'…It is this balance—struck by the traditions of the American people—that demands our unqualified deference." *Bruen*, 142 S. Ct. at 2131. Allen's conclusion as to the second issue is that the average number of fatalities when a mass shooter uses a magazine over ten rounds is higher than in mass shootings when the shooter does not use one, but this is even less relevant here because magazines are not at issue in this case. Regardless of the veracity of either conclusion, both are irrelevant and thus inadmissible as expert opinion because neither issue informs either prong of the *Bruen* analysis.

  As to the first issue Allen raises, the Second Amendment does not merely protect arms that are actually *used* in defensive incidents commonly. Rather, it "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582. That protection is absent only where government presents solid evidence of a sufficiently analogous historical regulatory tradition to the restriction at issue. *Bruen*, 142 S. Ct. at 2132. Nothing in Allen's testimony speaks to any such regulatory tradition.

  But even assuming that "assault weapons" are more deadly, it is irrelevant. "The Second Amendment does not exist to protect the right to bear down pillows and foam baseball bats. *It protects guns and every gun is dangerous.* 'If *Heller* tells us anything, it is that firearms cannot be categorically prohibited just because they

are dangerous.' … '[T]he relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." *Duncan III*, 366 F. Supp. 3d at 1146 (quoting *Caetano*, 577 U.S. at 418 (Alito, J., concurring)) (double emphasis added). And whether rifles that the State calls "assault weapons" increase the lethality of mass shootings says nothing about whether there has historically been a sufficient regulatory tradition of banning such rifles. In any event, whether an item is an "arm" enjoying Second Amendment protection is a question for courts, not supposed experts, to decide.

Even assuming Allen's opinions are relevant here, they are nevertheless inadmissible because they are not the product of reliable principles or methods. Fed. R. Evid. 702. She concedes various limitations of her analysis that compel that conclusion.

First, Allen issues an important caveat about the data that informs her report's findings on issue No. 1. She states, "[t]he number of rounds commonly needed by individuals to defend themselves cannot be practically or ethically determined with controlled scientific experiments and there is no source that systematically tracks or maintains data on the number of rounds fired by individuals in self-defense. Due to these limitations, I have analyzed available data sources to estimate the number of rounds fired by individuals to defend themselves." Brady Decl., Ex. 1 at 6, ¶ 9. Allen's acknowledgement of the data limitations inherent to the question she opines on is commendable, but it a concession that her conclusions are not based on "reliable principles and methods" and are thus unhelpful to this Court.

Next, Allen explains that the two core data sets she used for her conclusions are a collection of media pieces about defensive gun use incidents created by the National Rifle Association, and a 200-item sample of media pieces about defensive gun uses taken from a broader 4,800 item collection sourced from Factiva, which is essentially a searchable journalism database. *Id*. at 6-16, ¶¶9-22. These are not reliable methods for determining the number of rounds discharged in self-defense

incidents. First, there was no investigation into the accuracy or completeness of the media stories in that database. The quality of the data is simply unknown, and moreover, unknowable. Second, Allen tailored her Factiva search inquiry to only capture defensive firearm uses that occurred inside a home and thus did not capture public defensive firearm uses. So there is an admitted selection bias in one of her core data sets that does not reflect the universe of self-defense firearm use. *Id*. at 10, ¶ 16.

Allen's previously submitted report in this matter raises essentially the same issues as her most recent report. Neither report thus contemplates issues relevant to *Bruen*'s analysis. They are both, therefore, also irrelevant and, for that reason alone should not be admitted at this stage, in light of the scope of remand. Those reports are also both products of the same unreliable principles and methods as her current report and should not be admitted for that separate reason.

## CONCLUSION

Lucy Allen's opinions are irrelevant under *Bruen*. Her report and previous reports, therefore, do not help the Court understand any material issues, nor are they based on sufficient principles and methods. Her opinions should thus be deemed inadmissible for failing to meet Rule 702's standards.

Dated: March 24, 2023         **MICHEL & ASSOCIATES, P.C.**

*/s/ Sean A. Brady*
Sean A. Brady
Email: sbrady@michellawyers.com
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE
## IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

Case Name: *Rupp, et al. v. Bonta*
Case No.: 8:17-cv-00746-JLS-JDE

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS LUCY ALLEN UNDER FEDERAL RULE OF EVIDENCE 702**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Xavier Becerra
Attorney General of California
Anna Ferrari
Deputy Attorney General
Email: anna.ferrari@doj.ca.gov
Christina R.B. Lopez
Email: christina.lopez@doj.ca.gov
John D. Echeverria
Email: john.echeverria@doj.ca.gov
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct.

Executed March 24, 2023.

*Laura Palmerin* (signature)
Laura Palmerin