ROB BONTA
Attorney General of California
P. PATTY LI
Supervising Deputy Attorney General
ANNA FERRARI
CHRISTINA R.B. LÓPEZ
Deputy Attorneys General
JOHN D. ECHEVERRIA
Deputy Attorney General
State Bar No. 268843
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3479
 Fax:  (415) 703-1234
 E-mail:  John.Echeverria@doj.ca.gov
*Attorneys for Defendant Rob Bonta,*
*in his official capacity*[1]

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| **STEVEN RUPP; STEVEN DEMBER; CHERYL JOHNSON; MICHAEL JONES; CHRISTOPHER SEIFERT; ALFONSO VALENCIA; TROY WILLIS; and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10,**<br><br>Defendants. | Case No. 8:17-cv-00746-JLS-JDE<br><br>**DEFENDANT'S COMBINED OPPOSITION TO PLAINTIFFS' MOTIONS TO EXCLUDE TESTIMONY UNDER FEDERAL RULE OF EVIDENCE 702**<br><br>**[DKT. 137–141]**<br><br>Date:       April 28, 2023<br>Time:       10:30 a.m.<br>Courtroom:  8A<br>Judge:      Hon. Josephine L. Staton<br>Trial Date: None set<br>Action Filed: April 24, 2017 |

---

[1] Rob Bonta succeeded former Attorney General Xavier Becerra as the Attorney General of the State of California.  Pursuant to Federal Rule of Civil Procedure 25(d), Attorney General Bonta, in his official capacity, is substituted as the defendant in this case.

1

# **TABLE OF CONTENTS**

2

**Page**

Introduction ...................................................................................................... 1

Background ....................................................................................................... 1

Legal Standard ................................................................................................. 4

Argument .......................................................................................................... 4

    I.     The Challenged Expert Witnesses Provide Testimony that Is Relevant under *Bruen*'s Text-and-History Standard. ........................... 5

          A.     Ryan Busse's Expert Testimony Concerning Assault-Weapon Features Is Relevant. ..................................................... 8

          B.     Professor John Donohue's Expert Testimony Concerning the Lethality of Assault Weapons in Mass Shootings Is Relevant. ......................................................................... 10

          C.     Professor Louis Klarevas's Expert Testimony Concerning Mass Shootings Is Relevant. ...................................... 11

          D.     Lucy Allen's Testimony Concerning Defensive Gun Use and Mass Shootings Is Relevant. ............................................. 13

    II.    The Challenged Expert Testimony Is Reliable and Otherwise Admissible. .......................................................................... 14

          A.     Plaintiffs' Various Arguments About Reliability, Bias, and Credibility Are Unavailing. ............................................. 15

               1.     Ryan Busse ....................................................... 15

               2.     Professor Donohue ....................................... 16

               3.     Professor Klarevas ....................................... 17

               4.     Lucy Allen ....................................................... 18

           B.     Professor Saul Cornell's Testimony About the History of Firearms Regulation Is Admissible. ........................................ 19

Conclusion ...................................................................................................... 22

Certificate of Compliance ............................................................................... 23

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*
    738 F.3d 960 (9th Cir. 2013) ............................................................... 15

*Barnes v. District of Columbia*
    289 F.R.D. 1 (D.D.C. 2012) ................................................................. 20

*Caetano v. Massachusetts*
    577 U.S. 411 (2016) ............................................................................. 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
    509 U.S. 579 (1993) ....................................................................... 4, 15

*Defense Distributed v. Bonta*
    2022 WL 15524977 (C.D. Cal. Oct. 21, 2022) ................................... 6

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*
    2023 WL 2655150 (D. Del. Mar. 27, 2023) .................................... 7, 8

*District of Columbia v. Heller*
    554 U.S. 570 (2008) ................................................................. 2, 9, 20

*Elosu v. Middlefork Ranch Inc.*
    26 F.4th 1017 (9th Cir. 2022) ................................................ 8, 15, 16

*Gen. Electric Co. v. Joiner*
    522 U.S. 136 (1997) ............................................................................. 18

*Hangarter v. Provident Life & Acc. Ins. Co.*
    373 F.3d 998 (9th Cir. 2004) ............................................................... 20

*In re Walt Disney Co. Deriv. Litig.*
    907 A.2d 693 (Del. Ch. 2005) ............................................................. 17

*Kumho Tire Co. v. Carmichael*
    526 U.S. 137 (1999) ............................................................................. 18

*Nat'l Rifle Ass'n v. Bondi*
    61 F.4th 1317 (11th Cir. 2023) ...................................................... 6, 11

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3
4

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
 142 S. Ct. 2111 (2022) .......................................................................*passim*

5
6

*Ocean State Tactical, LLC v. State of Rhode Island*
 2022 WL 17721175 (D.R.I. Dec. 14, 2022) ........................................ 6

7
8

*Or. Firearms Fed'n, Inc. v. Brown*
 2022 WL 17454829 (D. Or. Dec. 6, 2022) .................................... 6, 7, 8

9

*Primiano v. Cook*
 598 F.3d 558 (9th Cir. 2010) .......................................................... 4, 16

10
11

*Rupp v. Becerra*
 401 F. Supp. 3d 978 (C.D. Cal. 2019) ................................................*passim*

12
13

*SPS Techs., LLC v. Briles Aerospace, Inc.*
 2021 WL 4913509 (C.D. Cal. Sept. 8, 2021) ....................................*passim*

14
15

*United States v. Diaz*
 876 F.3d 1194 (9th Cir. 2017) .............................................................. 21

16
17

*Volk v. United States*
 57 F. Supp. 2d 888 (N.D. Cal. 1999) .................................................... 4

18

STATUTES AND REGULATIONS

19

Assault Weapons Control Act ...........................................................*passim*

20
21
22
23
24

California Penal Code
 § 30510(a) ............................................................................................ 1
 § 30515(a)(1)(A)–(C) ......................................................................... 1
 § 30515(a)(1)(E)–(F) .......................................................................... 1
 § 30515(a)(3) ....................................................................................... 2
 § 30600 ................................................................................................ 1
 § 30605 ................................................................................................ 1

25
26

California Code of Regulations, Title 11
 § 5499(a) .............................................................................................. 1

27
28

**TABLE OF AUTHORITIES**
(continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Consitution
    Second Amendment.....................................................................*passim*
    Fourteenth Amendment ...................................................................11

**COURT RULES**

Federal Rule of Evidence 702 .........................................................*passim*

**OTHER AUTHORITIES**

Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443 (2009)..............................................................18

Lori Ann Post & Maryann Mason, *The Perfect Gun Policy Study in a Not So Perfect Storm*, 112 Am. J. Pub. Health 1707 (2022)............................12

Louis Klarevas et al., *The Effect of Large-Capacity Magazine Bans on High-Fatality Mass Shootings*, 109 Am. J. of Pub. Health 1754 (2019)...............................................................................................12

RAND, Effects of Concealed-Carry Laws on Violent Crime, Jan. 10, 2023 .........................................................................................10

*The Blast Effect: This Is How Bullets from an AR-15 Blow the Body Apart*, Wash. Post, Mar. 27, 2023 ..................................................15

Zach Despart, *"He Has a Battle Rifle": Police Feared Uvalde Gunman's AR-15*, Tex. Tribune, Mar. 20, 2023 .................................17

iv

**INTRODUCTION**

The Court should deny the motions to exclude testimony of five of the Attorney General's expert witnesses.  In the course of supplemental expert discovery, the Attorney General served expert reports from twelve expert witnesses, and Plaintiffs seek to exclude under Federal Rule of Evidence 702 certain testimony of five of them:  Ryan Busse, Saul Cornell, John J. Donohue, Louis Klarevas, and Lucy P. Allen.  *See* Dkt. 137–141.  Plaintiffs do not contest the qualifications of these experts, but instead raise various challenges to the admissibility of their testimony, none of which are availing.  Contrary to Plaintiffs' arguments, these experts provide testimony that is relevant under the text-and-history standard for Second Amendment claims adopted in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022), and their testimony is reliable and otherwise admissible.  Most of Plaintiffs' arguments are premised on an overly narrow reading of *Bruen* and implicate questions of the credibility of the experts' testimony, but that is not an appropriate basis for a Rule 702 challenge.  The Court should deny Plaintiffs' motions in their entirety.

**BACKGROUND**

In this action, Plaintiffs assert a Second Amendment claim challenging certain provisions of California's Assault Weapons Control Act ("AWCA") prohibiting the manufacture, distribution, transportation, importation, sale, and possession of rifles designated as "assault weapons."  *See* Cal. Penal Code §§ 30600, 30605.  Plaintiffs challenge the AWCA's restrictions applicable to rifles that qualify as assault weapons under the following provisions:

- California Penal Code section 30510(a) and California Code of Regulations, title 11, section 5499(a), which identify certain rifles as assault weapons by make and model;

- California Penal Code section 30515(a)(1)(A)–(C) and (E)–(F), which defines a semiautomatic, centerfire rifle as an assault weapon if it is

1          equipped with a pistol grip beneath the action, a thumbhole stock, a

2          folding or telescoping stock, a flash suppressor, or a forward pistol grip;

3          and

4      &bull;   California Penal Code section 30515(a)(3), which defines a

5          semiautomatic, centerfire rifle as an assault weapon if it is less than 30

6          inches in length.  *See* 3d Am. Compl. ¶ 4 (Dkt. 56-1).

7        In July 2019, this Court granted the Attorney General's motion for summary

8 judgment, upholding the challenged provisions of the AWCA under the Ninth

9 Circuit's prior two-step framework for adjudicating Second Amendment claims.

10 Dkt. 108; *Rupp v. Becerra*, 401 F. Supp. 3d 978, 994 (C.D. Cal. 2019), *vacated and*

11 *remanded sub nom. Rupp v. Bonta*, 2022 WL 2382319 (9th Cir. June 28, 2022).[2]

12 The Court held at the first step that the challenged AWCA provisions do not burden

13 conduct protected by the Second Amendment because the regulated rifles are "like"

14 M16s that the Supreme Court has held may be banned in *District of Columbia v.*

15 *Heller*, 554 U.S. 570, 627 (2008).  *Rupp*, 401 F. Supp. 3d at 986.  Alternatively, the

16 Court held that the challenged provisions satisfy intermediate scrutiny.  *Id.* at 993.

17        While the appeal of this judgment was pending, the U.S. Supreme Court

18 issued its decision in *Bruen*, replacing the two-step framework with a standard

19 "rooted in the Second Amendment's text, as informed by history."  142 S. Ct. at

20 2127.  Following the issuance of *Bruen*, on June 28, 2022, the Ninth Circuit sua

21 sponte vacated this Court's prior judgment and remanded the case "for further

22 proceedings consistent with" *Bruen*.  *Rupp*, 2022 WL 2382319, at *1; 9th Cir.

23 No. 19-56004, Dkt. 71.  This Court then issued a Scheduling Order providing for

24 supplemental expert discovery.  Dkt. 131 at 2; Dkt. 134 at 2.  During the course of

25

26

27           [2] The Court also dismissed with prejudice Plaintiffs' claims under the Due

28 Process and Takings Clauses.  *Rupp*, 401 F. Supp. 3d at 984.

supplemental discovery, the parties designated several supplemental expert witnesses.

On January 6, 2023, the Attorney General served 11 supplemental expert reports of historians with expertise on 18th and 19th century firearms and firearms regulation (Saul Cornell, Brennan Rivas, and Michael Vorenberg); a historian with expertise on the history of murder in the United States (Randolph Roth); a political scientist who has focused his research on the history of firearms and weapons regulation in the United States (Robert Spitzer); a linguist who has used corpus linguistics to determine the original public meaning of the terms used in the Second Amendment at the time it was ratified (Dennis Baron); social scientists who have studied the effects of assault weapons in mass shootings and the efficacy of efforts to regulate them (John Donohue and Louis Klarevas); an economist who has studied the defensive use of firearms and the effects of assault weapons in mass shootings (Lucy Allen); a firearms industry expert with knowledge of the function and marketing of AR-platform rifles (Ryan Busse); and a retired Marine colonel who has extensive experience with the functionality and capabilities of certain small arms, including the M16 rifle, M4 carbine, and AR-platform rifle (Craig Tucker).

On February 3, 2023, Plaintiffs served five supplemental rebuttal expert reports.  In response, on February 24, 2023, the Attorney General served supplemental sur-rebuttal expert reports of several of his supplemental expert witnesses (Lucy Allen, Ryan Busse, Louis Klarevas, Randolph Roth, Craig Tucker, and Michael Vorenberg), as well as a sur-rebuttal report of a historian with expertise on firearms from the 17th, 18th, and 19th centuries (Kevin Sweeney).

Plaintiffs deposed only one of the Attorney General's supplemental expert witnesses, Col. (Ret.) Craig Tucker, and expert discovery closed on March 17, 2023.  Plaintiffs then filed five motions to exclude testimony.  Dkts. 137–141.

Under the current scheduling order, dispositive motions are due by May 26, 2023. Dkt. 134 at 2.

## LEGAL STANDARD

Federal Rule of Evidence 702 permits expert testimony from a witness who is "qualified as an expert by knowledge, skill, experience, training, or education." Expert witness testimony is admissible if it will assist the trier of fact in determining a fact at issue, is based on sufficient facts or data, and is the product of reliable principles and methods; and if the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. This inquiry is a "flexible one." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–94 (1993)). Under *Daubert*, the role of the district court is that of "a gatekeeper, not a fact finder." *Id.* at 565 (quotation marks omitted).

Though *Daubert* applies to proceedings not involving a jury, "the *Daubert* gatekeeping obligation is less pressing in connection with a bench trial." *Volk v. United States*, 57 F. Supp. 2d 888, 896 n.5 (N.D. Cal. 1999).

## ARGUMENT

Plaintiffs' motions to exclude certain testimony of five of the Attorney General's expert witnesses should be denied because the challenged testimony is relevant under the new *Bruen* standard, reliable, and otherwise admissible under the federal rules of evidence.[3]

---

[3] Plaintiffs do not seek to exclude the testimony of Robert Spitzer, Brennan Rivas, Michael Vorenberg, Dennis Baron, Randolph Roth, Kevin Sweeney, or Craig Tucker.

1

2

**I.      THE CHALLENGED EXPERT WITNESSES PROVIDE TESTIMONY THAT IS
RELEVANT UNDER *BRUEN*'S TEXT-AND-HISTORY STANDARD.**

3

4

5

6

7

The testimony of the Attorney General's expert witnesses is relevant under the
new *Bruen* standard.  Plaintiffs argue that the testimony of Ryan Busse, John
Donohue, Louis Klarevas, and Lucy Allen is not relevant to this case, now that the
Supreme Court has abrogated the two-step framework.[4]  But in so arguing,
Plaintiffs misstate what *Bruen* requires.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

In *Bruen*, the Supreme Court held that New York's "proper cause"
requirement for concealed-carry licenses violated the Second Amendment.  142 S.
Ct. at 2134–56.  The Court also announced a new standard for adjudicating Second
Amendment claims, one "centered on constitutional text and history."  *Id.* at 2128–
29.  Under this text-and-history approach, courts must first determine that "the
Second Amendment's plain text covers an individual's conduct," *id.* at 2129–30—
i.e., that the challenged regulation prevents law-abiding citizens from "keep[ing]"
or "bear[ing]" protected "Arms," U.S. Const. amend. II.  If it does, "the
Constitution presumptively protects that conduct," and "[t]he government must then
justify its regulation by demonstrating that it is consistent with the Nation's
historical tradition of firearm regulation."  *Bruen*, 142 S. Ct. at 2130.  To satisfy
this burden, the government must identify a "well-established and representative
historical *analogue*"—not a "historical *twin*" or "dead ringer"—to the challenged
law, which is "relevantly similar" according to "two metrics":  "how and why the
regulations burden a law-abiding citizen's right to armed self-defense."  *Id.* at 2133.

23

24

25

26

27

28

_____

[4] Plaintiffs do not appear to argue that the testimony of Saul Cornell is
irrelevant under *Bruen*.  *See* Mem. of P. & A. in Supp. of Pls.' Mot. to Exclude
Portions of the Testimony of Def.'s Expert Witness Saul Cornell under Fed. R.
Evid. 702 ("Cornell Mot.") (Dkt. 138-1).  There can be no doubt that his testimony
concerning the history of firearms regulation in the United States is relevant under
*Bruen*.

Thus, the historical comparator must have "impose[d] a comparable burden on the right of armed self-defense" that is also "comparably justified." *Id.*

Contrary to Plaintiffs' characterization of the decision, *Bruen* did not adopt a history-only test. Plaintiffs mistakenly argue in several of their motions that "the only question that this Court must resolve post [*Bruen* is] whether the State can show a well-subscribed regulatory tradition from the Founding Era that is sufficiently analogous to the challenged statutes."[5] That is not the test. *Bruen* requires the government to justify a challenged law with history and tradition only if the law is first determined to burden conduct covered by the "plain text" of the Second Amendment. *See Defense Distributed v. Bonta*, 2022 WL 15524977, at *5 (C.D. Cal. Oct. 21, 2022) ("Much as [the plaintiff] would like to move history and tradition forward in the course of relevant analysis under *Bruen*, its attempt does not survive a careful, and intellectually-honest, reading of that decision.").[6] In fact,

---

[5] Mem. of P. & A. in Supp. of Pls.' Mot. to Exclude the Testimony of Def.'s Expert Witness Ryan Busse under Fed. R. Evid. 702 ("Busse Mot.") (Dkt. 137-1) at 2; Mem. of P. & A. in Supp. of Pls.' Mot. to Exclude the Testimony of Def.'s Expert Witness Louis Klarevas under Fed. R. Evid. 702 ("Klarevas Mot.") (Dkt. 140-1) at 2; Mem. of P. & A. in Supp. of Pls.' Mot. to Exclude the Testimony of Def.'s Expert Witness Lucy Allen under Fed. R. Evid. 702 ("Allen Mot.") (Dkt. 141-1) at 2.

[6] Courts have generally acknowledged that *Bruen* requires distinct textual and historical analyses, respectively, in evaluating gun-safety laws under the Second Amendment. *See, e.g.*, *Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1321 (11th Cir. 2023) ("[W]e read *Bruen* as articulating two analytical steps."), *pet. for en banc reh'g filed*; *Ocean State Tactical, LLC v. State of Rhode Island*, 2022 WL 17721175, at *11–15 (D.R.I. Dec. 14, 2022) (holding at the textual stage of the *Bruen* analysis that large-capacity magazines are accessories and not protected "Arms"), *appeal docketed* No. 23-1072 (1st Cir. Jan. 18, 2023); *Or. Firearms Fed'n, Inc. v. Brown*, __ F. Supp. 3d __, 2022 WL 17454829, at *9 (D. Or. Dec. 6, 2022) (holding at the textual stage of the *Bruen* analysis that large-capacity magazines are not necessary to operate a firearm). And at the textual stage of the inquiry, courts have generally assigned the burden of persuasion to the party challenging a law under the Second Amendment. *See, e.g.*, *Ocean State Tactical,*

Plaintiffs acknowledge in one of their motions that *Bruen*'s text-and-history standard involves *two* distinct "questions," including a threshold inquiry into "whether the banned firearms are protected 'arms' under the Second Amendment." Mem. of P. & A. in Supp. of Pls.' Mot. to Exclude the Testimony of Def.'s Expert Witness John J. Donohue under Fed. R. Evid. 702 ("Donohue Mot.") (Dkt. 139-1) at 2.

In addition, although *Bruen* rejected "interest balancing," which took into account the public-safety rationale for a challenged law in assessing its tailoring, 142 S. Ct. at 2131, the *Bruen* standard does not require the courts to blind themselves to present-day justifications and realities. *Bruen* requires courts to account for contemporary public-safety rationales in at least two respects at the historical stage of the inquiry. First, *Bruen* requires a "more nuanced" approach when the law addresses "regulatory challenges posed by firearms today," including "unprecedented societal concerns or dramatic technological changes." *Id.* at 2131–32. Second, in comparing the challenged law to the historical analogues, courts are required to determine whether the burden imposed by the challenged law is "comparably justified." *Id.* at 2133; *see, e.g.*, *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, __ F. Supp. 3d __, 2023 WL 2655150, at *13 (D. Del. Mar. 27, 2023) (explaining that "pressing public safety concerns" posed by assault weapons are relevant under *Bruen* and do not translate into impermissible "means-ends scrutiny" and holding that restrictions on "assault long guns" are comparably justified "'to ensure the safety of Delawareans'" (citation omitted)),

---

*LLC*, 2022 WL 17721175, at *12 ("Although *it is their burden* to show that large-capacity magazines fall within the purview of the Second Amendment, *the plaintiffs* offer no expert opinion on the meaning of the word 'Arms.'" (emphasis added)); *Or. Firearms Fed'n*, 2022 WL 17454829, at *9 (holding that "*Plaintiffs have not shown*, at this stage, that magazines specifically capable of accepting more than ten rounds of ammunition are necessary to the use of firearms for self-defense" (emphasis added)).

1  *appeal filed*; *id.* at *13 n.16 (noting that "public safety concerns motivating the

2  challenged regulations are also relevant to determining whether the regulations

3  'implicat[e] unprecedented societal concerns or dramatic technological changes'"

4  (quoting *Bruen*, 142 S. Ct. at 2132)); *Or. Firearms Fed'n*, 2022 WL 17454829, at

5  *14 (noting that the court "may consider the public safety concerns of today" in

6  determining whether large-capacity magazine restrictions are "comparably

7  justified").  Thus, contemporary public-safety concerns remain relevant to

8  determining whether a challenged law warrants a "more nuanced" historical

9  analysis and is comparably justified.

10      The challenged expert testimony is relevant at both stages of the *Bruen*

11  analysis.  *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022)

12  ("Expert opinion testimony is relevant if the knowledge underlying it has a valid

13  connection to the pertinent inquiry." (citation and quotation marks omitted)).

14

15      **A.   Ryan Busse's Expert Testimony Concerning Assault-Weapon
         Features Is Relevant.**

16      Ryan Busse is an expert on the firearms industry and has extensive experience

17  with the firearms, parts, and accessories regulated under the AWCA.  Mr. Busse

18  spent nearly three decades building a career in the firearms industry.  Suppl. Expert

19  Report & Decl. of Ryan Busse ("Busse Report") (Dkt. 137-2, Ex. 1) ¶ 2.  During

20  that time, he "studied and built sales programs that relied on understanding the

21  technical nature of most firearms available in the U.S. market, including AR-

22  platform and other types of rifles," and "played an integral role in building one of

23  the largest firearms companies in the United States."  *Id.*  Plaintiffs acknowledge

24  Mr. Busse's extensive experience in the firearms industry, noting his "career

25  experience working for an arms maker."  Busse Mot. at 4.  His "specialized

26  knowledge and experience can serve as the requisite 'facts or data' on which [he]

27  render[s] an opinion."  *Elosu*, 26 F.4th at 1024.

28

1    Mr. Busse provides expert testimony about semiautomatic, centerfire rifles

2    and the features and accessories that can qualify them as assault weapons under the

3    AWCA.  Busse Report ¶¶ 11–21.  Mr. Busse explains that none of the prohibited

4    features, parts, or accessories—including a pistol grip on a rifle, a thumbhole stock,

5    a flash suppressor on the muzzle of a rifle, a forward pistol grip, or a shortened

6    barrel that would render the rifle less than 30 inches in length—is necessary to

7    operate a semiautomatic, centerfire rifle for self-defense.  *Id.* ¶¶ 12–15, 17–18, 21,

8    24.[7]  Plaintiffs do not argue that Mr. Busse's testimony should be excluded due to

9    inadequate qualifications.  Instead, they argue that his expert opinions are not

10   relevant under *Bruen*.  They are wrong.

11   Plaintiffs seek to exclude Mr. Busse's testimony because he does not address

12   the historical tradition of firearms regulation.  Busse Mot. at 3.  True, Mr. Busse

13   does not provide historical testimony, but he addresses several issues that remain

14   relevant under *Bruen*, including whether the regulated assault-weapon

15   configurations and accessories are covered by the Second Amendment.  *See Bruen*,

16   142 S. Ct. at 2134; *Heller*, 554 U.S. at 627.  This inquiry into whether a regulated

17   weapon, device, or accessory is protected by the Second Amendment occurs at the

18   textual stage of the *Bruen* standard.  In *Bruen*, before proceeding to the historical

19   analysis, the Court concluded that the handguns the plaintiffs wished to carry in

20   public "are weapons 'in common use' today for self-defense."  *Bruen*, 142 S. Ct.

21   2134 (citing *Heller*, 554 U.S. at 627, and *Caetano v. Massachusetts*, 577 U.S. 411,

22   411–12 (2016)).  As this Court has already observed, *Heller* identified the M16

23   "and the like," which "are most useful in military service," as weapons that fall

24   outside the scope of the Second Amendment.  *Rupp*, 401 F. Supp. 3d at 986–87

25   (quoting *Heller*, 554 U.S. at 627).  This analysis was not affected by *Bruen*.  *See*

26   ⸻⸻⸻⸻

27   [7] In addition to his supplemental opening expert report, Mr. Busse submitted
     a sur-rebuttal expert report.  Plaintiffs have only submitted Mr. Busse's opening
28   report for the Court's review and do not appear to challenge his sur-rebuttal report.

*Bruen*, 142 S. Ct. at 2154 (Alito, J., concurring) (noting that *Bruen* did not "decide anything about the kinds of weapons that people may possess").  Mr. Busse provides testimony regarding the attributes and functions of semiautomatic, centerfire rifles and the features and accessories that qualify such rifles as assault weapons under the AWCA, which is directly relevant to showing that those weapons and features are not protected "Arms" under the Second Amendment at the textual stage of the *Bruen* standard.[8]

> **B.   Professor John Donohue's Expert Testimony Concerning the Lethality of Assault Weapons in Mass Shootings Is Relevant.**

Professor John Donohue is a professor at Stanford Law School and an economist whose scholarship uses empirical analysis to analyze the impact of laws and public policy.  Suppl. Expert Report & Decl. of John J. Donohue ("Donohue Report") (Dkt. 139-2, Ex. 1) ¶¶ 1–6 & Ex. A.  He has published extensively on the efficacy of gun-safety measures.[9]  Professor Donohue previously submitted an expert report and declaration in this case, discussing the concentration of gun ownership in the United States, the dangers of assault weapons, and the rise in mass shootings.  *See* Dkt. 76-1 (Expert Report of John J. Donohue) ¶¶ 18–116; *Rupp*, 401 F. Supp. 3d at 989 (citing Professor Donohue's initial report).  In his supplemental report, Professor Donohue updates his opinions concerning mass shootings during the last two decades in the United States, including the significant increases in the number of such events, the number of fatalities, and the lethality of the weapons

---

[8] In his sur-rebuttal expert report, Mr. Busse also provides background on the militarized marketing of rifles that qualify as assault weapons under the AWCA, but, as noted, Plaintiffs do not appear to challenge the testimony contained in Mr. Busse's sur-rebuttal report.  *Supra* note 7.

[9] *See* RAND, Effects of Concealed-Carry Laws on Violent Crime, Jan. 10, 2023, https://www.rand.org/research/gun-policy/analysis/concealed-carry/violent-crime.html (citing numerous studies authored by Professor Donohue in concluding that right-to-carry laws increase overall homicides and firearm homicides).

used.  Donohue Report ¶¶ 14–27 & figs. 1, 2.  Professor Donohue's supplemental

report also contains an original econometric analysis of mass shooting data from

1982 through 2019, concluding that state and federal restrictions on assault

weapons and large-capacity magazines are associated with statistically significant

decreases in per capita rates of deaths and casualties from mass shootings, which he

further supports by discussing examples of comparable legislative reforms from

outside of the U.S.  *Id.* ¶¶ 28–31 & tbl, 1.

Rather than challenge Professor Donohue's expertise, Plaintiffs argue that his

testimony has "nothing to do" with the questions relevant under *Bruen*.  Donohue

Mot. at 2.  Again, they claim that in order to provide relevant testimony here,

Professor Donohue would have to be "a legal historian, or a Second Amendment or

firearms historian, []or an expert on the laws of the early Republic."  *Id.* at 5.[10]

They are wrong.  Though Professor Donohue does not address particular assault-

weapon configurations or the history of weapons regulations in the United States,

Donohue Mot. at 5–6, he provides testimony about the justifications of assault-

weapon restrictions like the AWCA, which is relevant to the Court's historical

analysis under *Bruen*.

**C.    Professor Louis Klarevas's Expert Testimony Concerning Mass
Shootings Is Relevant.**

Professor Louis Klarevas is a security policy analyst and research professor at

Teachers College, Columbia University, in New York.  Suppl. Expert Report &

Decl. of Louis Klarevas ("Klarevas Report") (Dkt. 140-2, Ex. 1) ¶ 2.  He is the

---

[10] While laws enacted during the early Republic period (i.e., around the time
that the Second Amendment was ratified) are relevant to assessing constitutional
challenges to state and local gun-safety laws, "Reconstruction Era historical
sources" enacted around the time that the Fourteenth Amendment was ratified "are
the most relevant" because they "reflect the public understanding of the right to
keep and bear arms at the very time the states made that right applicable to the state
governments."  *Nat'l Rifle Ass'n*, 61 F.4th at 1321.

author of *Rampage Nation*, a comprehensive study of high-fatality mass shootings
in the United States, and he has conducted extensive, peer-reviewed research into
the efficacy of gun-safety interventions, including restrictions on large-capacity
magazines.  *Id.* ¶¶ 2–5.[11]  Professor Klarevas provided expert testimony in *Miller v.
Bonta*, No. 3:19-cv-01537, a Second Amendment case challenging the AWCA in
the Southern District of California, and he provides similar expert testimony in this
action.

Professor Klarevas's expert report provides testimony that is directly relevant
to this Court's evaluation of the AWCA under *Bruen*.[12]  First, he testifies that
assault weapons comprise a small fraction of America's total firearms in
circulation, which is far outpaced by their representation in mass shootings.
Klarevas Report ¶ 15.  This testimony is relevant to whether those firearms are in
common use for self-defense and thus covered by the plain text of the Second
Amendment.  Second, focusing on extremely high-fatality shootings involving ten
or more victims killed (excluding group-perpetrated killings like mob violence,
riots, and battles), Professor Klarevas determined that no such incidents occurred in
United States history until after World War II.  *Id.* ¶¶ 19–20 & tbl. 5.  When they
began to occur in 1949, they remained relatively infrequent, with a cluster of
incidents in the early 1980s, followed by a dramatic increase in the number of
double-digit-fatality mass shootings after the expiration of the federal assault

---

[11] *See* Louis Klarevas et al., *The Effect of Large-Capacity Magazine Bans on
High-Fatality Mass Shootings*, 109 Am. J. of Pub. Health 1754 (2019), *available at*
https://ajph.aphapublications.org/doi/full/10.2105/AJPH.2019.305311.  This
"seminal study" on the impact of large-capacity magazine laws (which are often
enacted in conjunction with assault weapon restrictions) has had a "large impact"
on the field.  Lori Ann Post & Maryann Mason, *The Perfect Gun Policy Study in a
Not So Perfect Storm*, 112 Am. J. Pub. Health 1707, 1707 (2022),
https://ajph.aphapublications.org/doi/full/10.2105/AJPH.2022.307120.

[12] Professor Klarevas also submitted a sur-rebuttal expert report, which
Plaintiffs do not appear to challenge.

1   weapons ban in 2004, when 20 out of the 30 double-digit-fatality mass shootings in
2   American history occurred.  *Id.* ¶¶ 20–23.  These social developments, born of 21st-
3   century advances in firearms technology, bear directly on *Bruen*'s questions of
4   whether a more nuanced analogical approach is called for due to "unprecedented
5   societal concerns" and "dramatic technological advances," *Bruen*, 142 S. Ct. 2131–
6   32, and whether assault-weapon restrictions are comparably justified to historical
7   analogues.  Professor Klarevas's report also describes the disturbing trend of rising
8   mass shootings, the role of assault weapons in contributing to greater numbers of
9   deaths and injuries in mass shootings, and the efficacy of assault weapon
10  restrictions in reducing the incidence and lethality of mass shootings.  *Id.* ¶¶ 13–23,
11  28–39.  This testimony supports the present-day justifications for assault-weapon
12  restrictions like the AWCA, which is part of *Bruen*'s historical analysis.
13  Accordingly, Professor Klarevas's testimony is relevant to both the textual and
14  historical stages of the *Bruen* analysis.

15
16      **D.   Lucy Allen's Testimony Concerning Defensive Gun Use and
             Mass Shootings Is Relevant.**

17          Lucy Allen is an economist, a Managing Director of NERA Economic
18  Consulting, a member of NERA's Securities and Finance Practice, and Chair of
19  NERA's Product Liability and Mass Torts Practice.  Suppl. Expert Report and
20  Decl. of Lucy P. Allen ("Allen Report") (Dkt. 141-2, Ex. 1) ¶ 3.  She holds an A.B.
21  from Stanford University, an M.B.A. from Yale University, and M.A. and M. Phil.
22  degrees in Economics, also from Yale University.  *Id.* ¶ 5.  Prior to joining NERA,
23  Ms. Allen served on the Council of Economic Advisers for both President George
24  H.W. Bush and President Bill Clinton.  *Id.*  She has provided expert statistical
25  analysis on defensive gun uses and mass shootings in numerous Second
26  Amendment cases, including an expert report in the pre-remand proceedings in this
27  case.  Dkt. 76-6; *see Rupp*, 401 F. Supp. 3d at 991 (crediting Ms. Allen's initial

28

report).  Under *Bruen*'s text-and-history standard, Ms. Allen's testimony is relevant at both stages of the analysis.[13]

Consistent with her prior expert report, Ms. Allen's supplemental expert report explains that individuals who use firearms in self-defense do not fire more than two rounds on average.  Allen Report ¶¶ 13, 20.  Ms. Allen also examined the Heritage Foundation's "Defensive Gun Uses in the U.S." database and determined that individuals rarely use rifles for self-defense—let alone semiautomatic, centerfire rifles or such rifles that qualify as assault weapons under the AWCA.  *Id.* ¶¶ 23–28. This testimony is relevant to whether rapid-fire semiautomatic rifles with military features are needed for lawful self-defense and thus qualify as protected "Arms" at the textual stage of the *Bruen* analysis and, separately, whether the AWCA imposes a comparable burden on the right to armed self-defense at the historical stage. Finally, Ms. Allen analyzed the use of assault weapons in mass shootings, including incidents identified by two additional sources from those used in her prior report (the Washington Post and The Violence Project).  *Id.* ¶ 29.  Consistent with her prior analysis, and similar studies, Ms. Allen found that casualties and fatalities were higher on average in mass shootings involving assault weapons, and particularly assault weapon rifles, than those without such weapons.  *Id.* ¶¶ 36–37, 42.  This testimony was previously credited by this Court, *see Rupp*, 401 F. Supp. 3d at 991, and it remains relevant to establishing the present-day justifications of the AWCA under *Bruen*.

## II.   THE CHALLENGED EXPERT TESTIMONY IS RELIABLE AND OTHERWISE ADMISSIBLE.

In addition to raising relevance objections to the challenged expert testimony under *Bruen*—all of which are unavailing—Plaintiffs also claim that certain expert

---

[13] Ms. Allen also submitted a supplemental sur-rebuttal report, which Plaintiffs do not appear to challenge.

testimony is unreliable, speculative, biased, or otherwise inadmissible.  None of
these arguments has merit.

### A.   Plaintiffs' Various Arguments About Reliability, Bias, and Credibility Are Unavailing.

Plaintiffs' motions raise a variety of arguments related to the reliability and
credibility of the challenged expert witnesses, but none of these arguments warrants
exclusion of these experts under Federal Rule of Evidence 702.  Under *Daubert*,
expert opinion testimony is reliable "if the knowledge underlying it has a reliable
basis in the knowledge and experience of the relevant discipline." *Elosu*, 26 F.4th
at 1024 (quotation marks omitted).  And as a general matter, arguments questioning
an expert's impartiality or credibility go to "the weight of the [expert's] testimony,"
"not its admissibility." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d
960, 969–70 (9th Cir. 2013).  Plaintiffs' objections regarding reliability, bias, and
credibility are therefore not appropriate bases for a Rule 702 motion.

### 1.   Ryan Busse

Plaintiffs claim that Ryan Busse's testimony about the dangers of centerfire
AR-platform rifles is "misleading," including a lengthy discussion of their view that
the .223 Remington (and 5.56 NATO) cartridge commonly chambered in AR-
platform rifles is "one of the weaker centerfire rifle cartridges." Busse Mot. at 5–6.
As Plaintiffs acknowledge, however, Mr. Busse's testimony concerns the *velocity*
at which these rounds can be fired by these weapons and not just the caliber of the
rounds. *Id.* at 5 (quoting Busse Report ¶ 11).[14]  If Plaintiffs believe Mr. Busse has

---

[14] Mr. Busse's opinions concerning .223 ammunition are supported by other
expert testimony in this case and other sources. *See, e.g.*, *The Blast Effect: This Is
How Bullets from an AR-15 Blow the Body Apart*, Wash. Post, Mar. 27, 2023,
https://www.washingtonpost.com/nation/interactive/2023/ar-15-damage-to-human-
body/ ("The calculation that a .223 round fired from an AR-15 can reach speeds of
up to six football fields in a second was made using a 55 grain .223 Remington full
metal case round fired at a horizontal trajectory.  The muzzle velocity of this round

"le[ft] out" facts that are relevant to this case (he has not), *id.*, they are free to point

that out to the Court in merits briefing.  *See Elosu,* 26 F.4th at 1024 ("[S]haky but

admissible evidence is to be attacked by cross examination, contrary evidence, and

attention to the burden of proof, not exclusion." (quoting *Primiano*, 598 F.3d at

564); *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2021 WL 4913509, at *3 (C.D.

Cal. Sept. 8, 2021) ("Arguments that an expert's testimony is based on facts

contrary to the actual record are more appropriate for impeachment than

inadmissibility." (internal quotation marks and citation omitted)).  While credibility

may factor into the *weight* given to Mr. Busse's testimony at some later point, it

does not affect the *admissibility* of his testimony, especially where such testimony

is clearly founded in his professional expertise.  And Plaintiffs' claim that Mr.

Busse has a "bias against Second Amendment rights," Busse Mot. at 6, is belied by

his lifelong use and study of firearms, Busse Report ¶ 2, and is not a proper basis

for excluding his testimony.  *See, e.g.*, *Elosu,* 26 F.4th at 1028 (holding that

"concerns" that an expert report "was not sufficiently corroborated" or that an

expert "was biased towards [a party], financially or otherwise . . . . go to the weight

of the testimony and its credibility, not its admissibility" (internal quotation marks

and citation omitted)).

### 2.    Professor Donohue

Plaintiffs challenge the reliability of Professor Donohue's expert report,

arguing that two statements in his report lack a factual predicate.  One statement is

Professor Donohue's opinion that mass shootings in Parkland, Florida and Uvalde,

Texas, "where police delayed entering [a] school during a shooting," "vividly

underscored how police responses to violence are impaired when the officers are

confronted by a shooter armed with an assault rifle."  Donohue Report ¶ 18.

Professor Donohue supports this opinion with a discussion of related academic

is 3,240 feet per second.").

research concerning the "instrumentality effect" of the type and power of a weapon used in a shooting.[15]  The other statement is Professor Donohue's opinion that the increased lethality of assault weapons warrants government regulation, *id.* ¶ 26, which is predicated on his original econometric analysis and related conclusions that state and federal restrictions on assault weapons and large-capacity magazines are associated with statistically significant decreases in per capita rates of deaths and casualties from mass shootings.  *Id.* ¶¶ 28–30 & tbl. 1.  Neither example cited by Plaintiffs lacks foundation.

Plaintiffs also appear to argue that Professor Donohue's testimony is not credible or impartial, characterizing his supplemental report as "screed" and noting that the Delaware Chancery Court, in a derivative suit nearly two decades ago, viewed his testimony as having "little value."  Donohue Mot. at 7 (quoting *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 742 (Del. Ch. 2005)).  In that securities case, Professor Donohue provided testimony that certain conduct amounted to gross negligence or malfeasance, which the court discounted after "weighing all of the evidence."  *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d at 741.  Notably, that court did not exclude Professor Donohue's testimony.  If anything, Plaintiffs' arguments are directed at the weight to be accorded to Professor Donohue's testimony, not its admissibility.

### 3.   Professor Klarevas

Plaintiffs add boilerplate language about reliability to their motion to exclude Professor Klarevas's testimony, claiming that his opinions are "neither the product of reliable principles and methods nor are they based on sufficient facts or data."

---

[15] Professor Donohue's assessment of the Uvalde shooting in his January 6, 2023 expert report was subsequently confirmed by reporting on law enforcement reluctance to engage the shooter due to the shooter's use of an AR-platform rifle. *See* Zach Despart, *"He Has a Battle Rifle": Police Feared Uvalde Gunman's AR-15*, Tex. Tribune, Mar. 20, 2023, https://www.texastribune.org/2023/03/20/uvalde-shooting-police-ar-15/.

1   Klarevas Mot. at 4 (citing Fed. R. Evid. 702).  Plaintiffs fail to explain how

2   Professor Klarevas's conclusions or methodology are unreliable, and their

3   arguments appear to be premised on their baseless relevance objections.  Contrary

4   to Plaintiffs' vague reliability objections, Professor Klarevas discloses the source

5   materials on which he relied to form his opinions about mass shootings, which

6   includes publicly available data compiled by The Violence Project and the Gun

7   Violence Archive.  Klarevas Report ¶ 12 n.5; *id.*, Exs. B, C.  Professor Klarevas

8   also relied on data from the National Shooting Sports Foundation to determine that

9   assault-weapon rifles are used disproportionately in mass shootings relative to their

10  ownership rates. *Id.* ¶ 15 n.6.  He also describes in detail his methods for analyzing

11  this data, explaining definitions, time periods, and other assumptions underlying his

12  analysis; Plaintiffs can point to no issue with the clarity or correctness of these

13  methods, which amply satisfy the reliability standards of Federal Rule of Evidence

14  702. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–51 (1999) (noting that

15  traditional standards of scientific reliability do not apply to all forms of expert

16  testimony).

17          **4.   Lucy Allen**

18          Plaintiffs claim that Lucy Allen's testimony is not the product of reliable

19  principles and methods.  Plaintiffs take issue with how Ms. Allen limited her

20  analysis of the number of rounds used in self-defense to existing sources of news

21  articles, given the absence of any systemically maintained records on this subject

22  and the obvious ethical limitations of ascertaining this information through

23  controlled experimentation.  Allen Mot. at 6; *see also* Eugene Volokh,

24  *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical*

25  *Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1465 (2009) ("There

26  are no controlled experiments that can practically and ethically be run.").

27  Plaintiffs' claim that this limitation somehow renders all of her expert opinions

28  unreliable misapprehends the proper scope and basis of expert testimony. *See Gen.*

*Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Trained experts commonly

extrapolate from existing data.").  Plaintiffs also contend that the sources of news

articles that Ms. Allen canvassed to determine how many shots are typically fired in

defensive situations—news articles compiled by the NRA in its "Armed Citizen"

database and the Factiva journalist database—are inherently unreliable because it is

unknown whether they include all defensive gun use incidents or whether Ms.

Allen searched them comprehensively.  Allen Mot. 6–7.[16]  Setting aside the fact

that no single, complete catalogue of defensive gun uses exists and that Ms. Allen

disclosed in extensive detail her methodology in evaluating the collected data,

Plaintiffs' objection "go[es] to the weight of the expert's opinion, not the

admissibility."  *SPS Techs., LLC*, 2021 WL 4913509, at *2.  In crediting similar

testimony of Ms. Allen in the pre-remand proceedings, this Court observed that

other courts have rejected similar reliability objections to her testimony.  *See Rupp*,

401 F. Supp. 3d at 991 & n.9.  As it was previously, Ms. Allen's expert testimony is

reliable and admissible.

### B.  Professor Saul Cornell's Testimony About the History of Firearms Regulation Is Admissible.

The Court should deny Plaintiffs' motion to exclude or strike certain portions

of the Supplemental Expert Report and Declaration of Saul Cornell ("Cornell

Report") (Dkt. 138-2, Ex. 1).  Professor Cornell is a historian and professor at

Fordham University and is a preeminent authority on the history of firearms

regulation.  *Id.* ¶ 3 & Ex. 1.  Plaintiffs do not contend that Professor Cornell is not a

proper expert in this case, nor could they; Professor Cornell's credentials speak for

themselves.  Instead, Plaintiffs contend that certain limited portions of his expert

report "consist of him opining on ultimate legal questions" or are outside his

---

[16] Interestingly, one of the Plaintiffs in this case, the California Rifle and
Pistol Association, is the California affiliate of the NRA, which Plaintiffs argue is
an unreliable source of stories depicting defensive gun uses.

1   expertise.  Cornell Mot. at 4–5.  As Plaintiffs' cited authority makes clear, motions

2   to strike portions of an expert report "are strongly disfavored," and Plaintiffs "must

3   carry a 'formidable burden.'"  *Barnes v. District of Columbia*, 289 F.R.D. 1, 6

4   (D.D.C. 2012) (citation omitted); Cornell Mot. at 4 n.1 (citing *Barnes*, 289 F.R.D.

5   1).  Plaintiffs have failed to show that any portion of Professor Cornell's expert

6   report should be struck.

7        Plaintiffs claim that nine paragraphs in Professor Cornell's expert report—out

8   of a total of 61 paragraphs—include impermissible legal conclusions about relevant

9   Supreme Court opinions, including *Bruen*.  Cornell Mot. at 4.  It is true that

10  Professor Cornell discusses some Supreme Court opinions in his report, but he does

11  so merely to provide relevant background and context for his opinions about the

12  history of firearms regulation, including his discussion of numerous historical

13  analogues to the AWCA.  *See SPS Techs., LLC*, 2021 WL 4913509, at *2 ("'[A]

14  witness may properly be called upon to aid the [trier of fact] in understanding the

15  facts in evidence even though reference to those facts is couched in legal terms,'

16  where the witness's references to the law are 'ancillary' to an ultimate issue in the

17  case." (quoting *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017

18  (9th Cir. 2004)))).  In paragraph 9 of his report, Professor Cornell repeats Justice

19  Kavanaugh's statement regarding the "well established historical tradition of

20  prohibiting the carrying of dangerous and unusual weapons" as context for his

21  (non-legal) opinion that "the Second Amendment and its state constitutional

22  analogues at the time of their adoption in the Founding period forged an

23  indissoluble link between the right to keep and bear arms with the goal of

24  preserving the peace."  Cornell Report ¶ 9.  Similarly, paragraphs 12 through 16

25  describe the historical inquiry discussed in *Bruen*, *Heller*, and *McDonald* as

26  background for the opinions stated in the following paragraphs.  *See id.* ¶¶ 12–21.

27  Professor Cornell's reference to "*Bruen*'s methodology" at the beginning of

28  paragraph 24 merely sets the stage for his opinion that there are "a series of myths

about guns and regulation" that "cloud legal discussions of American gun policy

and Second Amendment jurisprudence." *Id.* ¶ 21.  And paragraphs 60 and 61 do

not discuss legal standards at all.  In short, none of Professor Cornell's statements

constitute improper legal conclusions that "attempt to instruct the [Court] on the

law." *SPS Techs., LLC*, 2021 WL 4913509, at *2 (quoting *United States v. Diaz*,

876 F.3d 1194, 1199 (9th Cir. 2017)).

In addition, Plaintiffs argue that eight other paragraphs in Professor Cornell's

expert report exceed the scope of his expertise as a historian, even though those

paragraphs *do* "relate[] to history."  Cornell Mot. at 5.  In Section 5, Professor

Cornell describes the history of assault-weapon regulation across the country,

beginning with the AWCA in 1989, and ties these regulations to the "long Anglo-

American tradition of limiting public access to weapons capable of provoking

terror."  Cornell Report ¶¶ 52–53.  Professor Cornell goes on to describe the "well-

worn path" that firearms regulation has followed throughout American history:

"Technological innovation is only part of this equation.  In addition, weapons must

also achieve sufficient market penetration to create a potential for criminal abuse.

At this point legislatures attempt to find a means to address the problem posed by

these weapons without trenching on constitutionally protected liberties." *Id.* ¶ 54;

*see also id.* ¶ 58 ("[F]ocusing exclusively on technology and ignoring the social

history of these weapons, their popularity and potential for abuse, misses an

important point about the history of firearms technology and government

regulation.  The history and tradition of arms regulation has always recognized that

weapons that had the ability to inspire *terrorem populi* is a legitimate justification

for regulation.").  This testimony fits squarely within Professor Cornell's historical

expertise.

To the extent Professor Cornell cites underlying background facts about

assault weapons as a basis for his historical opinions, *see* Cornell Mot. at 5, it is

entirely proper for him to do so.  If Plaintiffs believe any facts on which Professor

1    Cornell relies are incorrect, they are free to argue that his opinions are erroneous.

2    But Professor Cornell's citation to underlying background facts—a practice

3    common in scholarship—does not render his opinions about the history of firearm

4    regulation inadmissible.  *See SPS Techs., LLC*, 2021 WL 4913509, at *3

5    ("Arguments that an expert's testimony is based on facts contrary to the actual

6    record are more appropriate for impeachment than inadmissibility." (internal

7    quotation marks and citation omitted)).  Plaintiffs have failed to show that any

8    portion of Professor Cornell's expert report should be struck.

9                                              **CONCLUSION**

10          The Court should deny Plaintiffs' motions to exclude any portion of the

11   testimony of Ryan Busse, Saul Cornell, John Donohue, Louis Klarevas, or Lucy

12   Allen.

13   Dated:  April 7, 2023                    Respectfully submitted,

14                                            ROB BONTA
                                              Attorney General of California
15                                            P. PATTY LI
                                              Supervising Deputy Attorney
16                                            General
                                              ANNA FERRARI
17                                            CHRISTINA R.B. LÓPEZ
                                              Deputy Attorneys General
18

19                                            *s/ John D. Echeverria*

20

21                                            JOHN D. ECHEVERRIA
                                              Deputy Attorney General
22                                            *Attorneys for Defendant Rob Bonta,*
                                              *in his official capacity*

23

24

25

26

27

28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Rob Bonta, in his official capacity as Attorney General of California, certifies that this brief contains 6,862 words, which complies with the word limit of L.R. 11-6.1.

Dated:  April 7, 2023                      Respectfully submitted,

ROB BONTA
Attorney General of California
P. PATTY LI
Supervising Deputy Attorney General
ANNA FERRARI
CHRISTINA R.B. LÓPEZ
Deputy Attorneys General


*s/ John D. Echeverria*

JOHN D. ECHEVERRIA
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his official capacity*

23

## CERTIFICATE OF SERVICE

Case Name: __*Rupp, et al. v. Bonta, et al.*__   Case No. __8:17-cv-00746-JLS-JDE__

I hereby certify that on <u>April 7, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S COMBINED OPPOSITION TO PLAINTIFFS'
MOTIONS TO EXCLUDE TESTIMONY UNDER FEDERAL RULE
OF EVIDENCE 702**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished electronically by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct.

Executed on <u>April 7, 2023</u>, at San Francisco, California.

| | |
|---|---|
| Vanessa Jordan | *Vanessa Jordan* |
| Declarant | Signature |