C. D. Michel – SBN 144258
cmichel@michellawyers.com
Sean A. Brady – SBN 262007
sbrady@michellawyers.com
Matthew D. Cubeiro – SBN 291519
mcubeiro@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 East Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: 562-216-4444
Facsimile: 562-216-4445

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| STEVEN RUPP, et al.,<br><br>                              Plaintiffs,<br><br>              vs.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>                              Defendant. | Case No.: 8:17-cv-00746-JLS-JDE<br><br>**PLAINTIFFS' COMBINED REPLY TO DEFENDANT'S COMBINED OPPOSITION TO MOTIONS TO EXCLUDE TESTIMONY**<br><br>Hearing Date:     April 28, 2023<br>Hearing Time:     10:30 a.m.<br>Courtroom:         8A<br>Judge:             Josephine L. Staton |

REPLY TO DEF.'S OPPOSITION TO MOTIONS TO EXCLUDE TESTIMONY

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................ i

TABLE OF AUTHORITIES ..................................................... ii

    I.      INTRODUCTION ................................................. 1

    II.     ARGUMENT ......................................................... 1

        A.The State Misrepresents the Bruen Test in Order to Smuggle Forbidden Interest Balancing Back into the Analysis ........................... 1

        B.Ryan Busse Offers No Testimony Relevant Under *Bruen,* and has Already Proven to be Unreliable. ............................................ 5

        C.The Testimony of Klarevas, Allen, and Donohue is likewise not relevant to the *Bruen* Analysis. ........................................... 7

               1.Donohue ...................................................... 7

               2.Allen ............................................................ 7

               3.Klarevas ....................................................... 8

        D.The Portions of Dr. Cornell's Testimony Pertaining to Legal Analysis Must be Excluded. ............................................. 10

    III.    CONCLUSION ................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Caetano v. Massachusetts*,
    577 U.S. 411 (2016)........................................................................2

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)........................................................................7

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland
    Sec.*, 2023 U.S. Dist. LEXIS 51322 (2023).......................................3

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)...............................................................2, 3, 8

*Duncan v. Becerra*,
    265 F. Supp. 3d 1106 (S.D. Cal. 2017) ...........................................8

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)........................................................................6

*Marria v. Broaddus*,
    200 F. Supp. 2d 280 (S.D.N.Y. 2002) ............................................7

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010)........................................................................2

*N.Y. State Rifle & Pistol Ass'n. v. Bruen*,
    142 S.Ct. 2111 (2022).............................................................passim

*Thompson v. Va. Dep't of Game & Inland Fisheries*,
    No. 1:06CV00065, 2007 U.S. Dist. LEXIS 23521, (W.D. Va.
    Mar. 30, 2007) ...............................................................................6

**Other Authorities**

Emily Guskin, Aadit Tambe, and Jon Gerberg, The Washington Post,
    *Why do Americans own AR-15s?* (March 27, 2023) (available at
    bit.ly/3G0vbG9)...............................................................................2

**I.    INTRODUCTION**

The State's opposition bends the *Bruen* analysis in order to allow it to engage in interest balancing arguments that it is no longer supposed to engage in. The experts that Plaintiffs seek to disqualify offer no opinions that are relevant under *Bruen*. And the indicated provisions of Dr. Cornell's testimony are either not appropriate expert opinion (but legal argument) or address subject matter that he has not established himself as an expert in. Such testimony should not be considered by this Court under Rule 702.

**II.    ARGUMENT**

### A. The State Misrepresents the Bruen Test in Order to Smuggle Forbidden Interest Balancing Back into the Analysis

None of the testimony that Plaintiffs seek to have disqualified informs the analysis that *Bruen* demands. The State misrepresents the *Bruen* test multiple ways to try to frame its proffered expert testimony as relevant. This Court should not allow it.

**First**, the State argues that this case does not implicate the Second Amendment at all because the Banned Rifles are so similar to the M-16 military machine gun that they fall outside the scope of the right to keep and bear arms. State's Opp. at 9. Even if that was a valid argument, which Plaintiffs dispute, none of the experts that Plaintiffs seek to disqualify offers any opinions explaining why the Banned Rifles are so similar to the M-16. Nor do any claim to be experts in military arms like the M-16, or to even have any experience in using such arms. The only witness that the State has proposed with experience using such weapons is Colonel Tucker, whom Plaintiffs do not seek to disqualify; even though they consider much of his testimony inaccurate and will rebut it.

Regardless, the Supreme Court has already resolved the analysis in Plaintiffs' favor. "[T]he Second Amendment protects the possession and use of weapons that are 'in common use [today].'" *N.Y. State Rifle & Pistol Ass'n. v. Bruen*, 142 S.Ct.

1

2111, 2128 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008)); *McDonald v. City of Chicago*, 561 U.S. 742 (2010) (incorporating Second Amendment). "[A]ll instruments that constitute bearable arms, even those that were not in existence at the time of the founding," come within the ambit of the Second Amendment. *Heller,* 554 U.S. at 582, 624-25. If an arm is "typically possessed by law-abiding citizens for lawful purposes" today, then it may not be banned. *Id*. That is the irreducible minimum of the fundamental "right of the people to keep and bears Arms." See U.S. Const. amend. II. A state may not "prohibit[] … an entire class of 'arms' that is overwhelmingly chosen by American society for [a] lawful purpose." *Heller*, 554 U.S. at 628 That makes this an easy case, because that is exactly what California has done. The Supreme Court has made clear that when a court confronts a flat ban on the possession of a type of arm, the only question is whether the arm at issue is "typically possessed by law-abiding citizens for lawful purposes." *Id*. at 625. If the answer is yes, then the ban is unconstitutional, because a state cannot prohibit ordinary law-abiding Americans from possessing what the Constitution explicitly entitles them to "keep."

Banned Rifles are commonly owned by millions of Americans and thus presumptively protected by the Second Amendment. According to recent research by the Washington Post, 6% of American adults (approximately 16 million citizens) own an AR-15-style rifle. Emily Guskin, Aadit Tambe, and Jon Gerberg, The Washington Post, *Why do Americans own AR-15s?* (March 27, 2023) (available at bit.ly/3G0vbG9). And of course, the AR-15 represents just one type of rifle affected by the State's expansive law. Yet even if only AR-15s were affected, these numbers are easily sufficient to earn presumptive Second Amendment protection. When it comes to whether a particular arm is covered by the Second Amendment, the number in circulation among civilians is the "relevant statistic". *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring). And given that just "hundreds of thousands" of stun guns were sufficiently in common use to earn

REPLY TO DEF.'S OPPOSITION TO MOTIONS TO EXCLUDE TESTIMONY

protection, *id.*, then certainly the most common rifle in the country qualifies. None of the testimony that Plaintiffs challenge address the commonality of Banned Rifles. The State points to paragraph 15 of Klarevas's report. State's Opp. at 12. But nothing in that paragraph discusses commonality. It merely discusses the supposedly disproportionate use of Banned Rifles in comparison to its levels of ownership.

Given that none of the challenged experts actually offer any opinion on either the supposed similarities of the Banned Rifles with the M-16 machine gun or on the commonality of the Banned Rifles, their testimony is not relevant even assuming the State's arguments are valid. The State quite obviously wants to include such testimony in order to smuggle in forbidden interest balancing arguments under the guise of a plain text analysis. It shouldn't be allowed to do so.

**Second**, the State misconstrues *Bruen* as only protecting firearms commonly *used* today for self-defense. State's Opp. at 12. Individual self-defense is, of course, the "central component" of the Second Amendment right, *Bruen*, 142 S. Ct. at 2118, constituting its "core." *Id*. But *Heller* recognized not only that the Second Amendment protects firearm related conduct beyond self-defense for other "traditionally lawful purposes" but also protects arms that are "typically *possessed* by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625, 627 (bold added). Whether they are actually used for that purposes is irrelevant, it only matters why Americans choose to own them. *See Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 2023 U.S. Dist. LEXIS 51322, at *16-17 (2023). ("[T]he relevant question here is 'what the people choose' for lawful purposes, rather than a weapon's objective suitability for those purposes…consequently, I do not think it matters, for the purposes of this analysis, that assault weapons are seldom fired in self-defense. What matters is that they are commonly owned for the purpose of self-defense..." ).

Thus, any expert testimony that is intended to discuss whether or not the firearms at issue are actually *used* for self-defense is not relevant, both because other

3

1  lawful purposes exist (as none of the State's experts suggest these firearms aren't

2  used for sporting purposes), and because they are commonly *owned* for the purpose

3  of self-defense, regardless of whether they are actually used for that purpose. But

4  even if such testimony were relevant, the experts Plaintiffs seek to disqualify offer

5  no relevant testimony on this point because they do not claim to be experts in self-

6  defense or what firearms are best suited for self-defense. Nor has any of the

7  produced credentials to suggest they have such expertise.

8       **Third**, the testimony of the State's experts that Plaintiffs challenge is not

9  relevant to establishing whether a "more nuanced approach" is necessary here.

10 *Bruen*, 142 S. Ct. at 2132. While "cases implicating unprecedented societal concerns

11 or dramatic technological changes may require a more nuanced approach" that

12 permits analogizing to other laws that make the challenged law "comparably

13 justified" with those historical analogues, the State's experts offer no opinion that

14 mass killings (including shootings) are "unprecedented" nor that the Banned Rifles

15 constitute dramatic technological changes. The State seems to assume both of those

16 conclusions without any basis. To be sure, some of the experts opine that the use of

17 Banned Rifles increases the number of mass killings and make such events worse.

18 But the standard is "unprecedented" concerns. And each of the experts is silent on

19 how the Banned Rifles are dramatic technological changes from the past; because

20 none of them even purports to have the background on that subject.

21      At bottom, the experts that Plaintiffs seek to disqualify testimony pertaining

22 only to forbidden interest balancing that does not help the State establish that there is

23 an "*unprecedented* societal concern" or a "dramatic technological change" that make

24 the law at issue "comparably justified" with historical analogues that the State may

25 later propose.[1] Their testimony thus does not "help the trier of fact to understand the

26 evidence or to determine a fact in issue" and should be excluded. Fed. R. Evid. 702.

27

28

---

[1] With the exception of Dr. Cornell, as Plaintiffs seek to exclude portions of his report for inappropriately offering legal opinions.

REPLY TO DEF.'S OPPOSITION TO MOTIONS TO EXCLUDE TESTIMONY

## B. Ryan Busse Offers No Testimony Relevant Under *Bruen,* and has Already Proven to be Unreliable.

The State acknowledges that Mr. Busse offers no historical testimony, but argues that he addresses several issues still relevant under *Bruen*. The State says Mr. Busse's testimony is relevant to whether the firearms at issue are covered by the plain text of the Second Amendment. State's Opp. at 9. But as established above, that is an open-and-shut question. And while Mr. Busse includes some discussion of the features of so-called "assault weapons" he does not opine on whether those features represent a "dramatic technological change" that would allow the State to engage in the "more nuanced approach." *Bruen*, 142 S. Ct. at 2132.

The State also exposes its shocking ignorance about the very firearms it regulates when it attempts to equate only caliber with power, while suggesting both of those are apparently unrelated to velocity. State's Opp. at 15-16. Every child in this country at some point learns Newton's second law, which is that force equals mass times acceleration. The caliber of a bullet pertains to its mass (though is not totally determinative of it, as .223 and .22LR have similar calibers but very different projectile weights), and the speed at which a particular mass moves determines how forcefully it impacts the intended target. It is not Plaintiffs' "view" that .223 Remington is one of the weaker centerfire cartridges, State's Opp. at 15. It is an indisputable *fact* that it is.[2] That is why, as Plaintiffs showed in their motion, a handful of states actually banned .223 for deer hunting out of fear it was not

---

[2] David Kopel, a renowned scholar whose work was cited favorably in *Bruen*, recently published an article on the relative power of AR rifle ammunition. He explained: "As with all centerfire rifle bullets, AR bullets strike with much higher kinetic energy than handgun bullets. But among rifle bullets, the .223 and 5.56 bullets strike with much *less* kinetic energy, despite their higher velocity. This is due to their smaller bullet size. For example, common hunting caliber bullets (.270, .308, .30-06) strike with around twice the energy of AR bullets. Larger rifle bullets (.300 Win Mag, .338 Win Mag, .338 Lapua Mag) strike with three or more times the energy of AR bullets." David Kopel, *AR rifle ammunition is less powerful than most other rifle ammunition*, Reason Magazine, (April 11, 2023, 9:24 P.M.), <https://reason.com/volokh/2023/04/11/ar-rifle-ammunition-is-less-powerful-than-most-other-rifle-ammunition/?post_type=volokh-post&utm_medium=email> (As of April 12, 2023).

REPLY TO DEF.'S OPPOSITION TO MOTIONS TO EXCLUDE TESTIMONY

powerful enough to reliably kill a deer, unlike far more powerful common centerfire rifle rounds like .308. *See., e.g. Thompson v. Va. Dep't of Game & Inland Fisheries*, No. 1:06CV00065, 2007 U.S. Dist. LEXIS 23521, at *12-13 (W.D. Va. Mar. 30, 2007) (Virginia argued that their caliber regulation is necessary because the use of rifles of a caliber less than .23 to dispatch deer would result in an unacceptable number of crippled wounded and/or lost deer.).

Mr. Busse knows all of this. On his Twitter account on July 5, 2022, he explained that "the typical hunting gun fires a much larger bullet (might be 200 grains or more) some at similarly [to .223] fast speeds. Those rifles are technically MUCH more powerful than an AR15."[3] Just this week, on April 12, 2023, Mr. Busse similarly tweeted that "The AR15 does not fire particularly high-power rifle rounds when compared to single rounds of most hunting rifles. Single .223/5.56 cartridges of the AR15 are only fractionally 'as powerful' as a cartridge like the .30-06."[4] Perhaps Plaintiffs should have retained Mr. Busse to rebut Mr. Busse.

Given his knowledge, his effort to deceive this Court by comparing the centerfire .223 round to the far weaker rimfire .22LR, a much slower and smaller round typically used for hunting small game or low-recoil target shooting, demonstrates Busse's unreliability as an expert witness.[5] And contrary to the State's claim that reliability, bias, and credibility are not grounds for exclusion, "Federal Rules 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the 'assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.' " *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*,

---

[3] https://twitter.com/ryandbusse/status/1544334684456247298, (last accessed April 12, 2023.)

[4] https://twitter.com/ryandbusse/status/1646178717222445056, (last accessed April 12, 2023.)

[5] And, of course, the State's law doesn't even ban .223/5.56 ammunition anyway. It just bans certain firearms that shoot it, while it remains legal to shoot .223 in other firearms not covered by the ban. Mr. Busse's testimony as to .223's capabilities is irrelevant for that reason too.

REPLY TO DEF.'S OPPOSITION TO MOTIONS TO EXCLUDE TESTIMONY

509 U.S. 579, 592 (1993)). By misleading this Court, Mr. Busse shows that regardless of his actual knowledge and experience, he cannot be relied upon to provide honest testimony. *Marria v. Broaddus*, 200 F. Supp. 2d 280, 291 (S.D.N.Y. 2002) (concluding that "because the [expert's] Report is misleading, unhelpful to the trier of fact, and founded on biased and therefore unreliable evidence, [expert's] testimony is inadmissible.").

Mr. Busse's testimony should thus be excluded both because it does not offer anything relevant to the *Bruen* analysis, and, even if it did, it is unreliable.

### C. The Testimony of Klarevas, Allen, and Donohue is likewise not relevant to the *Bruen* Analysis.

Klarevas, Allen, and Donohue do not offer historical testimony and instead focus on mostly statistical arguments that are not relevant to the *Bruen* analysis.

#### 1. Donohue

The State argues that Donohue "provides testimony about the justifications of assault weapon restrictions like the AWCA." State's Opp. at p. 11. But that says nothing about whether "assault weapons" are a "*dramatically*" new technology or whether mass shootings are an "*unprecedented*" societal concern. Instead, he is offering his proposed *policy solutions* for addressing societal concerns. That is a quintessential interest balancing argument that is irrelevant under *Bruen* and should thus be excluded. Donohue also oddly opines about the January 6th capitol riot and speculates about how it would have been worse if more rioters were armed, as if that has anything to do with the *Bruen* analysis. Donohue Report, at ¶ 33. This plainly is not testimony that helps the trier of fact "to understand the evidence or to determine a fact in issue" and it should be excluded. Fed. R. Evid. 702. What's more, such a strange, nakedly political statement also calls into question Donohue's credibility and thus his reliability.

#### 2. Allen

Allen's testimony fares no better. A large chunk of it pertains to the number of

REPLY TO DEF.'S OPPOSITION TO MOTIONS TO EXCLUDE TESTIMONY

rounds used for self-defense. Allen Report, at ¶¶ 9-22 (*see also* ¶¶ 38-41 pertaining to the "use of large-capacity magazines in public mass shootings). That has absolutely no relevance to this case, even when considering the State's stretched justifications for including modern policy arguments. Again, <u>magazine capacity is not at issue in this case</u>. At minimum, even if this Court concludes Ms. Allen's other testimony should be allowed, those portions of the testimony should clearly be excluded as irrelevant.

Her other testimony as to self-defense incidents involving rifles at least involves the correct subject matter, but still only supports forbidden interest balancing argumentation. Essentially, Ms. Allen says that based on a Heritage Foundation database that rifles were used in 51 out of 1,241 self-defense incidents in which the type of firearm used was known. Allen Report, at ¶ 27. Based on that, she asserts it is "rare for a rifle to be used in self-defense." *Id*. at 23. In other words, Ms. Allen is assisting the State in arguing that the relative *burden* on self-defense is light, while later claiming the State's *need* for restrictions is high due to mass shootings. Again, this is exactly the type of interest balancing that the Supreme Court forbade. <u>Bruen</u>, 142 S. Ct. at 2131 (citing *Heller*, 554 U. S., at 635). And of course, it entirely ignores the other lawful purposes like target shooting and hunting that receive Second Amendment protection.

Finally, it is worth noting that even in a case involving magazine capacity, Allen's testimony was deemed unreliable because she "acknowledges the shoddy state of empirical research on large capacity magazine use." <u>Duncan v. Becerra</u>, 265 F. Supp. 3d 1106, 1129 (S.D. Cal. 2017). Here, Ms. Allen is using similar sources, including NRA data that she acknowledged is "not compiled scientifically." *Id*.

### 3. Klarevas

As for Klarevas, the State almost comes right out and admits it seeks to include him for the purposes of interest balancing arguments, noting that: "he has conducted extensive, peer-reviewed research into the efficacy of gun-safety

REPLY TO DEF.'S OPPOSITION TO MOTIONS TO EXCLUDE TESTIMONY

1   interventions, including restrictions on large-capacity magazines."[6] State's Opp. at

2   12. The "efficacy of gun-safety interventions" has no bearing on the *Bruen* analysis.

3   Under *Bruen*, experts can discuss relevant history, or whether an "unprecedented

4   societal concern" or "dramatic technological change" is present that allows the State

5   to engage in analogical reasoning without being limited to "distinctly similar"

6   historical laws. *Bruen*, 142 S. Ct. at 2132.. That's it. Their opinions on policy

7   efficacy are not a part of what this Court must (or even may) consider.

8        The State counters that Professor Klarevas's opinion that mass shootings are

9   rising is relevant to establishing a new societal concern. State's Opp. at 13. But

10  increased frequency of an event does not mean that the event was "unprecedented,"

11  which is the standard under *Bruen*. Klarevas nowhere says mass killings (even with

12  firearms) are unprecedented concerns in American society.

13       In any event, Klarveas's testimony as to the increased prevalence of mass

14  shootings is just a small part of his report. Klarevas Report, ¶ 13. The rest uses a

15  tortured definition of "mass shooting" (including the rare incidents involving only

16  six or more killed) to argue that "assault weapons" are responsible and thus should

17  be banned. Klarevas even argues that "assault weapons" are used in "100% of all

18  high-fatality mass shootings resulting in more than 40 deaths," *Id*. at ¶ 16, neglecting

19  to mention that there were only two such tragedies since 9/11. (And the third worst

20  shooting after those, Virginia Tech, involved 32 people being killed using just

21  handguns). *Id*. at ¶ 13.

22       Like Allen, Klarevas argues that "assault weapons" are almost never used in

23  self-defense, although he specifies it even further by saying they are almost never

24  used in self-defense *during active shootings*. *Id*. at ¶¶ 24-27. While such testimony is

25  not relevant to the *Bruen* analysis for the same reasons already discussed previously,

---

26  [6] It's truly puzzling why the State and its experts keep bringing up magazine
27  capacity in a case that does not involve magazine capacity restrictions. If this Court
    agrees with Plaintiffs that California's "assault weapon" ban is unconstitutional, that
28  would have no bearing on whether or not its magazine capacity restrictions are
    permissible.

REPLY TO DEF.'S OPPOSITION TO MOTIONS TO EXCLUDE TESTIMONY

it should be noted that Klarevas really takes interest balancing to a new level by implying that the burden on the Second Amendment right is small because mass shootings are not stopped frequently enough by people armed with "assault weapons."

Finally, Klarevas concludes with data purportedly showing that states without "assault weapon" bans have higher amounts of annual deaths in "high-fatality mass shootings" per 100 million people. Klarevas Report, at Table 6. While this is itself yet another interest balancing argument, even if Professor Klarevas's figures are correct, they do not actually identify what he contends the specific reasons for the lower death rate are, given he constantly conflates magazine capacity limits with "assault weapon" bans (and only the latter is at issue in this case).

In sum, Donohue, Allen, and Klarevas all make veiled interest balancing arguments that are forbidden by *Bruen*. They also frequently conflate magazine restrictions with "assault weapon" bans, even though the former has no relevance to this case. They offer no historical testimony nor any opinions to help the state establish that "unprecedented societal concerns" exist to open the door to analogical inquiry. Nor do any of them discuss any technological advances that would justify that "more nuanced approach." *Bruen*, 142 S. Ct. at 2132. Their testimony should thus be excluded.

### D. The Portions of Dr. Cornell's Testimony Pertaining to Legal Analysis Must be Excluded.

The Parties agree that much of Dr. Cornell's testimony is admissible under Rule 702, which is why Plaintiffs never sought to exclude his whole report. But the portions of that report that pertain to legal analysis or conclusions have no place in his testimony nor anyone else's. And Dr. Cornell is not a modern historian, criminologist, or sociologist, so he is not qualified to discuss modern-day gun regulations like the 1989 origins of the "assault weapon" ban at issue in this case. Yet, he does so anyway. Those portions of his testimony should be disallowed.

1    The State suggests that Dr. Cornell is merely providing background
2 information. State's Opp. at 20. But his report attempts to persuade the Court in how
3 to properly apply *Bruen*, arguing that "*Bruen* differentiates between cases in which
4 contested regulations are responses to long standing problems and situations in
5 which modern regulations address novel problems with no clear historical analogues
6 from the Founding era or the era of the Fourteenth Amendment." Cornell Report, at
7 ¶ 13. While allowing expert testimony on questions of law is never appropriate
8 because that is the "job of judges", *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.
9 Ct. 2111, 2130 n.6 (2022), it would be particularly inappropriate in this circumstance
10 because Dr. Cornell is extremely biased and only ever testifies in favor of gun
11 control laws. Indeed, he has authored an article in which he does not merely disagree
12 with the *Bruen* ruling, but is downright enraged at the Supreme Court for issuing it,
13 calling the ruling an "ideological fantasy". Saul Cornell*, Cherry-picked history and*
14 *ideology-driven outcomes: Bruen's originalist distortions*, SCOTUSblog (Jun. 27,
15 2022, 5:05 PM), https://www.scotusblog.com/2022/06/cherry-picked -history-and-
16 ideology-driven-outcomes-bruens-originalist-distortions/. Dr. Cornell continued that
17 "the distortion of the historical record, misreading of evidence, and dismissal of facts
18 that don't fit the gun-rights narrative favored by Thomas are genuinely breathtaking
19 in scope." *Id*. He criticized several other justices individually, saying that Justice
20 Alito selectively stopped reading regulations "mid-sentence" in *McDonald*, and that
21 Justices Gorsuch and Barrett had failed to disprove they were "ideological warriors
22 and political hacks" by signing on to this ruling. *Id*.
23    Even if opining on legal conclusions was the domain of experts, and it isn't,
24 Dr. Cornell's biases prevent him from offering anything useful to this Court. Indeed,
25 Plaintiffs are concerned that even his historical testimony, which they don't deny he
26 is qualified to offer, is colored by his clear antipathy towards Second Amendment
27 rights and his view that the Justices that issued *Bruen* are "hacks." While Plaintiffs
28 only seek to exclude the portions of his testimony listed in their opening papers, this

11

REPLY TO DEF.'S OPPOSITION TO MOTIONS TO EXCLUDE TESTIMONY

1  Court should keep his prior statements in mind before accepting Dr. Cornell's other
2  testimony too.

3  **III.    CONCLUSION**

4        For the reasons explained in each of the respective moving papers as well as
5  in this combined reply brief, this Court should exclude the testimony of Ryan Busse,
6  John Donohue, Louis Klarevas, Lucy Allen, and portions of the testimony of Saul
7  Cornell.

8

9  Dated: April 14, 2023                          **MICHEL & ASSOCIATES, P.C.**

10

11                                                */s/ Sean A. Brady*
                                                  Sean A. Brady
12                                                Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY TO DEF.'S OPPOSITION TO MOTIONS TO EXCLUDE TESTIMONY

## CERTIFICATE OF SERVICE
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

Case Name: *Rupp, et al. v. Bonta*
Case No.: 8:17-cv-00746-JLS-JDE

IT IS HEREBY CERTIFIED THAT:

     I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

     I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' COMBINED REPLY TO DEFENDANT'S COMBINED OPPOSITION TO MOTIONS TO EXCLUDE TESTIMONY**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Xavier Becerra
Attorney General of California
Anna Ferrari
Deputy Attorney General
Email: anna.ferrari@doj.ca.gov
Christina R.B. Lopez
Email: christina.lopez@doj.ca.gov
John D. Echeverria
Email: john.echeverria@doj.ca.gov
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

     I declare under penalty of perjury that the foregoing is true and correct.

Executed April 14, 2023.

Laura Palmerin

CERTIFICATE OF SERVICE